# APPENDIX

A1.  Order of January 6, 2015 Granting Plaintiff's Motion for Partial Summary Judgment (CR 1:119).

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
7/7/2015 9:23:00 AM
DEBBIE AUTREY
Clerk

A2.  Order of February 12, 2015 Granting Plaintiff's Motion for Summary Judgment (CR 1:192).

A3.  Order of Dismissal dated February 27, 2015 (CR 1:197).

A4.  Texas Tort Claims Act, applicable provisions.

A5.  Subchapter I, Chapter 271, Texas Local Government Code, applicable provisions.

A6.  *City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803 (Tex.App.—Austin 2013, pet. dism'd).

A7.  Plaintiff's First Amended Petition for Declaratory Judgment (CR 1:24).

A8.  Defendant's Verified Original Answer (CR 1:51).

A9.  Defendant's Original Counterclaim (CR 1:57).

A10. Plaintiff's Motion for Partial Summary Judgment (CR 1:68).

A11. Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (CR 1:107).

A12. Plaintiff's Motion for Summary Judgment (CR 1:120).

A13. Defendant's Response to Plaintiff's Motion for Summary Judgment (CR 1:172).

A14. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (CR 1:182).

A15. Defendant's Surreply to Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (CR 1:189).

# APPENDIX
# A1

**CAUSE NO. CV-14-41722**

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR | § | |
| | § | |
| Defendant. | § | **336th JUDICIAL DISTRICT** |
| | § | |

FILED FOR RECORD FANNIN COUNTY, TX 2015 JAN -7 PM 4: 07 NANCY YOUNG DISTRICT CLERK BY _____ DEPUTY

## ORDER

BE IT REMEMBERED that on this ___6___ day of ___Jan___, 2015, came to be heard Plaintiff City of Bonham's Partial Motion for Summary Judgment. The Court, after considering the Motion, all pleadings on file, and the arguments of counsel is of the opinion that said Motion is meritorious and should, in all things, be GRANTED.

It is therefore ORDERED, ADJUDGED, and DECREED that Plaintiff City of Bonham's Partial Motion for Summary Judgment be granted.

SIGNED this the ___6___ day of ___Jan___, 2015.

_____
JUDGE PRESIDING

# APPENDIX
# A2

CAUSE NO. CV-14-41722

| CITY OF BONHAM, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## ORDER

On this ___12___ day of ___Feb___, 2015, came on to be heard Plaintiff City of Bonham's Motion for Summary Judgment. After notice to all parties, and upon considering the Plaintiff's Motion, any response, the evidence, the pleadings and the arguments of counsel, if any, the Court is of the opinion that Plaintiff's Motion for Summary Judgment should be **GRANTED.**

It is therefore **ORDERED, ADJUDGED, AND DECREED** that Plaintiff City of Bonham's Motion for Summary Judgment is hereby **GRANTED.**

SIGNED this the ___12___ day of ___Feb___, 2015.

_____
HONORABLE JUDGE PRESIDING

# APPENDIX
# A3

CAUSE NO. CV-14-41722

| | | |
|---|---|---|
| CITY OF BONHAM, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## ORDER OF DISMISSAL

On the motion of the Plaintiff, it is ORDERED, ADJUDGED AND DECREED by this Court that the above-styled and numbered cause be and it is hereby dismissed with prejudice.

It is FURTHER ORDERED that all costs of the Court and all attorneys' fees are to be assessed against the party who incurred them.

Signed this __27__ day of __Feb_____, 2015.


_____
Judge Presiding

# APPENDIX
# A4



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 5. GOVERNMENTAL LIABILITY
CHAPTER 101. TORT CLAIMS
SUBCHAPTER B. TORT LIABILITY OF GOVERNMENTAL UNITS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 101.021 (2014)*

§ 101.021. Governmental Liability

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

**HISTORY:** Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985.

**NOTES:**

Legislative Note. --
 * See *Texas Litigation Guide,* Ch. 290, *Negligence*; Ch. 293, *Claims Against Governmental Entities*; Ch. 310, *Premises Liability*.

LexisNexis (R) Notes:



1 of 1 DOCUMENT

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 5. GOVERNMENTAL LIABILITY
CHAPTER 101. TORT CLAIMS
SUBCHAPTER B. TORT LIABILITY OF GOVERNMENTAL UNITS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 101.0215* (2014)

§ 101.0215. Liability of a Municipality

(a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:

(1) police and fire protection and control;

(2) health and sanitation services;

(3) street construction and design;

(4) bridge construction and maintenance and street maintenance;

(5) cemeteries and cemetery care;

(6) garbage and solid waste removal, collection, and disposal;

(7) establishment and maintenance of jails;

(8) hospitals;

(9) sanitary and storm sewers;

(10) airports, including when used for space flight activities as defined by Section 100A.001;

(11) waterworks;

(12) repair garages;

(13) parks and zoos;

(14) museums;

(15) libraries and library maintenance;

(16) civic, convention centers, or coliseums;

(17) community, neighborhood, or senior citizen centers;

(18) operation of emergency ambulance service;

(19) dams and reservoirs;

(20) warning signals;

(21) regulation of traffic;

(22) transportation systems;

(23) recreational facilities, including but not limited to swimming pools, beaches, and marinas;

(24) vehicle and motor driven equipment maintenance;

(25) parking facilities;

(26) tax collection;

(27) firework displays;

(28) building codes and inspection;

(29) zoning, planning, and plat approval;

(30) engineering functions;

(31) maintenance of traffic signals, signs, and hazards;

(32) water and sewer service;

(33) animal control;

(34) community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code;

(35) latchkey programs conducted exclusively on a school campus under an interlocal agreement with the school district in which the school campus is located; and

(36) enforcement of land use restrictions under Subchapter E, Chapter 212, Local Government Code.

(b) This chapter does not apply to the liability of a municipality for damages arising from its proprietary functions, which are those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality, including but not limited to:

(1) the operation and maintenance of a public utility;

(2) amusements owned and operated by the municipality; and

(3) any activity that is abnormally dangerous or ultrahazardous.

(c) The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a).

**HISTORY:** Enacted by Acts 1987, 70th Leg., 1st C.S., ch. 2 (S.B. 5), § 3.02, effective September 2, 1987; am. Acts 1997, 75th Leg., ch. 152 (S.B. 1697), § 1, effective September 1, 1997; am. Acts 1999, 76th Leg., ch. 1170 (S.B. 104), § 2, effective June 18, 1999; am. Acts 2001, 77th Leg., ch. 1399 (H.B. 2580), § 1, effective June 16, 2001; am. Acts 2013, 83rd Leg., ch. 50 (H.B. 278), § 1, effective September 1, 2013.

**NOTES:**

1999 Note:

Ch. 1170 applies beginning with the 1999-2000 school year. Acts 1999, 76th Leg., ch. 1170, § 3.

* See *Texas Litigation Guide,* Ch. 290, *Negligence*; Ch. 293, *Claims Against Governmental Entities*; Ch. 310, *Premises Liability*.

Applicability. --

Acts 2013, 83rd Leg., ch. 50 (H.B. 278), § 3 provides: "The change in law made by this Act applies only to a cause of action that accrues on or after the effective date of this Act [September 1, 2013]. A cause of action that accrues before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose."

2013 amendment,

added "including when used for space flight activities as defined by Section 100A.001" in (a)(10); and substituted "Subchapter E, Chapter 212" for "Subchapter A, Chapter 230" in (a)(36).

LexisNexis (R) Notes:

CASE NOTES

1. Trial court properly denied a city's plea to the jurisdiction in an inverse condemnation claim brought by property owners; the city's construction and operation of a landfill was a governmental function, subject to sovereign immunity; nevertheless, the trial court did not have jurisdiction over the property owners' request for injunctive relief involving future actions. *City of Anson v. Harper, 216 S.W.3d 384, 2006 Tex. App. LEXIS 6055, 167 Oil & Gas Rep. 16 (Tex. App. Eastland 2006).*

2. Plaintiff's theory of liability that a city was liable under the Texas Tort Claims Act (Act) and the recreational use statute for injuries to a child stemming from the city's willful, wanton, and/or grossly negligent conduct with respect to its duties and failure to repair playground equipment properly alleged a claim for which the Act, as limited by the recreational use statute, waived the city's sovereign immunity pursuant to *Tex. Civ. Prac. & Rem. Code Ann. §§*



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 5. GOVERNMENTAL LIABILITY
CHAPTER 101. TORT CLAIMS
SUBCHAPTER B. TORT LIABILITY OF GOVERNMENTAL UNITS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 101.022* (2014)

§ 101.022. Duty Owed: Premise and Special Defects.

(a) Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.

(c) If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.

**HISTORY:** Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985; am. Acts 2005, 79th Leg., ch. 281 (H.B. 2702), § 2.88, effective June 14, 2005.

**NOTES:**

Legislative Note. --
* See *Texas Litigation Guide*, Ch. 290, *Negligence*; Ch. 293, *Claims Against Governmental Entities*; Ch. 333, *Libel and Slander*.
Applicability. --
Acts 2005, 79th Leg., ch. 281 (H.B. 2702), § 8.01 provides: "*Section 101.022, Civil Practice and Remedies Code*, as amended by this Act, applies only to a cause of action that accrues on or after the effective date of this Act. A cause of action that accrued before the effective date of this Act is governed by the law in effect at the time the cause of action accrued, and that law is continued in effect for that purpose."



1 of 1 DOCUMENT

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CIVIL PRACTICE AND REMEDIES CODE
TITLE 5. GOVERNMENTAL LIABILITY
CHAPTER 101. TORT CLAIMS
SUBCHAPTER B. TORT LIABILITY OF GOVERNMENTAL UNITS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 101.025* (2014)

§ 101.025. Waiver of Governmental Immunity; Permission to Sue

(a) Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

(b) A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.

**HISTORY:** Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985.

**NOTES:**

Legislative Note. --
* See *Texas Litigation Guide,* Ch. 290, *Negligence*; Ch. 293, *Claims Against Governmental Entities*; Ch. 310, *Premises Liability.*

LexisNexis (R) Notes:

CASE NOTES

1. In a corporation's action for damages against a municipal landlord for violations of the Deceptive Trade Practices Act, *Tex. Bus. & Com. Code Ann. § 17.41* et seq., breach of express and implied warranties, and fraud in a real estate

# APPENDIX
# A5



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

LOCAL GOVERNMENT CODE
TITLE 8.  ACQUISITION, SALE, OR LEASE OF PROPERTY
SUBTITLE C.  ACQUISITION, SALE, OR LEASE PROVISIONS APPLYING TO MORE THAN ONE TYPE OF LOCAL GOVERNMENT
CHAPTER 271.  PURCHASING AND CONTRACTING AUTHORITY OF MUNICIPALITIES, COUNTIES, AND CERTAIN OTHER LOCAL GOVERNMENTS
SUBCHAPTER I.  ADJUDICATION OF CLAIMS ARISING UNDER WRITTEN CONTRACTS WITH LOCAL GOVERNMENT ENTITIES

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Local Gov't Code § 271.151  (2014)*

§ 271.151.  Definitions

In this subchapter:

(1) "Adjudication" of a claim means the bringing of a civil suit and prosecution to final judgment in county or state court and includes the bringing of an authorized arbitration proceeding and prosecution to final resolution in accordance with any mandatory procedures established in the contract subject to this subchapter for the arbitration proceedings.

(2) "Contract subject to this subchapter" means:

(A) a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity; or

(B) a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use.

(3) "Local governmental entity" means a political subdivision of this state, other than a county or a unit of state government, as that term is defined by *Section 2260.001, Government Code*, including a:

(A) municipality;

(B) public school district and junior college district; and

(C) special-purpose district or authority, including any levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, emergency service organization, and river authority.

**HISTORY:** Enacted by Acts 2005, 79th Leg., ch. 604 (H.B. 2039), § 1, effective September 1, 2005; am. Acts 2013, 83rd Leg., ch. 1138 (H.B. 3511), § 2, effective June 14, 2013.

**NOTES:**

Applicability. --
Acts 2013, 83rd Leg., ch. 1138 (H.B. 3511), § 4(c) provides: "*Sections 271.151(2) and 271.153, Local Government Code*, as amended by this Act, apply to a claim that arises under a contract executed on or after the effective date of this Act [June 14, 2013]. A claim that arises under a contract executed before the effective date of this Act is governed by the law in effect on the date the contract was executed, and the former law is continued in effect for that purpose."
2013 amendment,
added the (2)(A) designation; added (2)(B); and made a related change.

LexisNexis (R) Notes:

CASE NOTES

1. In a case involving a right of first refusal, summary judgment was properly granted to a navigation district on the issue of immunity because a contract between the district and two lessees was not governed by maritime law; therefore, under Texas law, the district was a governmental entity under *Tex. Loc. Gov't Code Ann. § 271.151*; as the district was immune, there was no need to consider whether summary judgment was properly granted on a breach of contract case. *Brown Water Marine Serv. v. Aransas County Navigation Dist. No. 1, 2008 Tex. App. LEXIS 2955 (Tex. App. Corpus Christi Apr. 24 2008).*

2. Court properly granted the city's motion for traditional summary judgment, because governmental immunity had not been waived, when the Tooke decision created a default principle of governmental immunity in contract cases that should be followed until either the Texas Legislature or the Texas Supreme Court specifically addressed the application of the proprietary-governmental dichotomy in contract cases. *Wasson Interests, Ltd. v. City of Jacksonville, 2014 Tex. App. LEXIS 7377 (Tex. App.--Tyler July 9, 2014).*

3. In a case in which a doctor alleged that a county hospital district breached its consulting agreement with him, the doctor could not rely on *Tex. Loc. Gov't Code Ann. § 271.152* to establish the hospital district waived its sovereign immunity because he failed to present evidence that the contract was executed by the hospital district. Because the jurisdictional facts affirmatively negated the existence of subject matter jurisdiction, the trial court erred by denying the hospital district's plea to the jurisdiction regarding the doctor's claim. *Sabine County Hosp. Dist. v. Packard, 2012 Tex. App. LEXIS 2914 (Tex. App. Tyler Apr. 11 2012).*



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

LOCAL GOVERNMENT CODE
TITLE 8.  ACQUISITION, SALE, OR LEASE OF PROPERTY
SUBTITLE C.  ACQUISITION, SALE, OR LEASE PROVISIONS APPLYING TO MORE THAN ONE TYPE OF LOCAL GOVERNMENT
CHAPTER 271.  PURCHASING AND CONTRACTING AUTHORITY OF MUNICIPALITIES, COUNTIES, AND CERTAIN OTHER LOCAL GOVERNMENTS
SUBCHAPTER I.  ADJUDICATION OF CLAIMS ARISING UNDER WRITTEN CONTRACTS WITH LOCAL GOVERNMENT ENTITIES

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Local Gov't Code § 271.152  (2014)*

§ 271.152.  Waiver of Immunity to Suit for Certain Claims

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

**HISTORY:** Enacted by Acts 2005, 79th Leg., ch. 604 (H.B. 2039), § 1, effective September 1, 2005.

**NOTES:**

Applicability. --
Acts 2005, 79th Leg., ch. 604 (H.B. 2039), § 2 provides:"*Sections 271.152, 271.153*, and *271.154, Local Government Code, as added* by this Act, apply to a claim that arises under a contract executed before the effective date of this Act only if sovereign immunity has not been waived with respect to the claim before the effective date of this Act. A claim that arises under a contract executed before the effective date of this Act and with respect to which sovereign immunity has been waived is governed by the law in effect on the date the contract was executed, and the former law is continued in effect for that purpose."

LexisNexis (R) Notes:

# APPENDIX
# A6



City of Georgetown, Texas, Appellant v. Lower Colorado River Authority, Appellee

NO. 03-12-00648-CV

COURT OF APPEALS OF TEXAS, THIRD DISTRICT, AUSTIN

*413 S.W.3d 803*; *2013 Tex. App. LEXIS 10665*

**August 23, 2013, Filed**

**SUBSEQUENT HISTORY:** Related proceeding at *City of Seguin v. Lower Colo. River Auth., 2014 Tex. App. LEXIS 401 (Tex. App. Austin, Jan. 15, 2014)* Petition for review dismissed by, Motion granted by, Settled by *City of Georgetown v. Lower Colo. River Auth., 2014 Tex. LEXIS 438 (Tex., May 30, 2014)*

**PRIOR HISTORY:**     [**1] FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT. NO. D-1-GN-12-002982, HONORABLE TIM SULAK, JUDGE PRESIDING.

**DISPOSITION:** Affirmed.

**COUNSEL:** For appellant: Mr. Lambeth Townsend, Mr. Jose De La Fuente, Mr. Daniel Gonzales, Ms. Amy M. Emerson, Lloyd, Gosselink, Rochelle & Townsend, PC, Austin, TX.

For appellee: Mr. John W. Rubottom, Mr. James N. Rader, Lower Colorado River Authority, Associate General Counsel, Austin, TX; Mr. Kennon L. Wooten, Mr. Stephen E. McConnico, Ms. Jane M. N. Webre, Scott, Douglass & McConnico, LLP, Austin, TX.

**JUDGES:** Before Chief Justice Jones, Justices Goodwin and Field. Dissenting Opinion by Justice Goodwin.

**OPINION BY:** Scott K. Field

**OPINION**

[*805]  In this interlocutory appeal, appellant City of Georgetown (the City) challenges the trial court's order denying its plea to the jurisdiction based on governmental immunity. The underlying controversy concerns the City's long-term contract to purchase electricity from appellee, the Lower Colorado River Authority (the LCRA). The LCRA sought declaratory relief concerning the parties' rights and obligations under the contract, and the City filed a plea to the jurisdiction, asserting that the LCRA's pleadings fail to demonstrate a valid waiver of governmental immunity. Because we conclude that the City has no immunity from this suit, we affirm the trial court's order denying the City's plea to the jurisdiction.

**BACKGROUND**

According to its pleadings, the LCRA entered into standard "Wholesale Power Agreements" with various municipalities, including the City, in 1974. Under the terms of the Wholesale Power Agreement, the City would purchase 100% of its [**2] electricity from the LCRA and then resell that electricity to the City's retail customers through its municipal utility. The Wholesale Power Agreement is set to expire June 25, 2016, and the City has given LCRA notice of its intent not to renew the contract.

[*806]  The LCRA asserts that on June 28, 2012, the City sent a letter to the LCRA in which it alleged that the LCRA had breached the terms of the Wholesale Power Agreement by selling electricity to other customers at a lower rate. According to the LCRA, the letter stated that

the City would terminate the Wholesale Power Agreement within thirty days unless the LCRA cured the alleged breach. On August 13, 2012, the City sent a follow-up letter in which it declared that the Wholesale Power Agreement was terminated.

In response, the LCRA filed this underlying action, seeking a declaratory judgment that it has not materially breached the Wholesale Power Agreement.[1] The City filed a plea to the jurisdiction, asserting that the LCRA's pleadings fail to affirmatively demonstrate a waiver of the City's governmental immunity. In its amended pleadings, the LCRA asserts that the City has no governmental immunity because this case arises out of the [**3] City's proprietary function, rather than its governmental function. Alternatively, the LCRA asserts that if the City has governmental immunity, that immunity has been waived by statute. *See Tex. Loc. Gov't Code § 271.152* (waiving sovereign immunity for breach of contract claims "subject to the terms and conditions of this subchapter"). Following a hearing, the trial court denied the City's plea to the jurisdiction. This interlocutory appeal followed. *See Tex. R. App. P. 51.014(a)(8)* (permitting interlocutory appeal from denial of plea to jurisdiction).

> 1 The LCRA also sought injunctive relief "commanding [the City] to desist and refrain from taking any further action to prematurely terminate the [Wholesale Power Agreement]." The trial court did not rule on the LCRA's request for injunctive relief, and that claim is not part of this interlocutory appeal.

**STANDARD OF REVIEW**

A plea to the jurisdiction is a dilatory plea that challenges the trial court's authority to determine the subject matter of a specific cause of action. *See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 553-54 (Tex. 2000)*. Governmental immunity from suit deprives a court of subject-matter jurisdiction and therefore [**4] is properly asserted in a plea to the jurisdiction. *State v. Lueck, 290 S.W.3d 876, 880 (Tex. 2009)*. Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Westbrook v. Penley, 231 S.W.3d 389, 394 (Tex. 2007)*. When, as here, the plea to the jurisdiction challenges the pleadings, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Texas Dep't of Parks & Wildlife v. Miranda, 133*

*S.W.3d 217, 226-27 (Tex. 2004)*.

Some of the issues in this case concern interpretation of statutes, which is a question of law that we review de novo. *See First Am. Title Ins. Co. v. Combs, 258 S.W.3d 627, 631 (Tex. 2008)*. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Id. at 631-32*. In determining legislative intent, we first consider the plain language of the statute. *GMC v. Bray, 243 S.W.3d 678, 685 (Tex. App.--Austin 2007, no pet.)*. When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result. *Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009)*. [**5] Our analysis of the statute is also informed by the presumption that "the entire statute is intended to be effective" and that "a just and reasonable result is intended." *Tex. Gov't Code § 311.021(2), (3)*. We may consider such matters as "the object [*807] sought to be attained," "the circumstances under which the statute was enacted," legislative history, and "common law or former statutory provisions, including laws on the same or similar subjects." *Id. § 311.023(1)-(4)*.

**DISCUSSION**

A municipality performs a governmental function when it acts "as the agent of the State in furtherance of general law for the interest of the public at large." *Gates v. City of Dallas, 704 S.W.2d 737, 738-39 (Tex. 1986)* (internal quotations omitted), *superseded by statute on other grounds as stated in City of Terrell v. McFarland, 766 S.W.2d 809, 813 (Tex. App.--Dallas 1988, writ denied)*. Given that the municipality is effectively acting on behalf of the state when it performs a governmental function, it is imbued with the state's sovereign immunity, and therefore is entitled to governmental immunity.[2] *Id.* By contrast, "[p]roprietary functions are those functions performed by a city, in its discretion, primarily [**6] for the benefit of those within the corporate limits of the municipality." *Id.* Because the municipality is not acting on behalf of the state when it performs proprietary functions, the municipality traditionally is not entitled to governmental immunity for those functions, and thus has "the same duties and liabilities as those incurred by private persons or corporations." *Id.*; *see also Bailey v. City of Austin, 972 S.W.2d 180, 192-93 (Tex. App.--Austin 1998, pet. denied)* (concluding that city's provision of health insurance to its

employees is proprietary function for which governmental immunity does not apply).

> 2    Courts frequently use the terms sovereign immunity and governmental immunity interchangeably, but the terms technically involve two distinct concepts. *See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003)*. "Sovereign immunity refers to the State's immunity from suit and liability," which extends to "the various divisions of the state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts." *Id.* (internal [**7] citations omitted). Although this distinction does not affect our analysis in this case, it is worth noting that when we refer to the City's immunity, or lack thereof, we are referring to governmental immunity. *See id.*

The LCRA asserts that when the City contracted to purchase power as a municipal utility, the City performed a proprietary function rather than a governmental function. *See Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1)* (defining "operation or maintenance of a public utility" as proprietary function for purposes of Texas Tort Claims Act). Therefore, according to the LCRA, the City has no governmental immunity from this suit, which arises out of its operation of a municipal utility.

The City asserts that "the proprietary-governmental function dichotomy is a creature of tort law" that does not apply to contract claims. Specifically, the City argues that because *section 271.152 of the Local Government Code*--the statute that waives sovereign immunity for certain contract claims--does not mention the proprietary-governmental dichotomy, the legislature intended for the dichotomy not to apply to contract claims. Therefore, according to the City, municipalities have governmental immunity [**8] for contract claims regardless of whether the claim arises out of their proprietary or governmental functions. As a result, the City asserts that it has governmental immunity from LCRA's claims and that LCRA cannot demonstrate a clear and unambiguous waiver of the City's immunity. *See Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006)* (noting that legislature must clearly and

unambiguously waive sovereign immunity).

[*808] The arguments in this case primarily concern whether the proprietary-governmental dichotomy applies to contract claims. As we will explain, this issue involves two separate legal questions: (1) does the proprietary-governmental dichotomy apply to contract claims under the common law and (2) if so, has the legislature abrogated the common law? In making these determinations, we first discuss the history and underlying rationale for treating proprietary functions differently than governmental functions. Next, we consider whether the common law applies the proprietary-governmental dichotomy to contract claims. Finally, we determine whether the legislature has abrogated common-law precedent, thereby ending the application of the dichotomy to contract claims.

### History and [**9] rationale for proprietary-governmental dichotomy

Texas has long recognized sovereign immunity as the bedrock principle that "'no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent.'" *See Tooke, 197 S.W.3d at 331* (quoting *Hosner v. DeYoung, 1 Tex. 764, 769 (1847))*. This immunity extends to the various divisions of the state government as well as its political subdivisions, such as the City. *See supra* n.2. "[G]overnmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke, 197 S.W.3d at 332*. When a governmental entity enters into a contract it "necessarily waives immunity from liability, . . . but it does not waive immunity from suit." *Id.* Thus, when governmental immunity applies, a governmental entity may not be sued for breach of contract unless its immunity from suit has been waived. *Id.* We defer to the legislature to waive immunity from suit by statute or resolution. *Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 695-96 (Tex. 2003)*. The legislature's waiver of immunity [**10] from suit must be clear and unambiguous. *Tooke, 197 S.W.3d at 332-33*. These principles of immunity from suit and waiver of immunity are well established.

However, it is also well established that before a court considers whether governmental immunity has been waived, the court must determine whether governmental immunity exists in the first place. *See, e.g., City of El*

*Paso v. Heinrich, 284 S.W.3d 366, 371-72 (Tex. 2009)* (explaining that ultra vires claims are not against state and therefore do not implicate sovereign immunity). "[T]he distinction between waiving immunity and finding it nonexistent is a fine one that yields the same effect and, '[d]ue to the risk that the latter could become a ruse for avoiding the Legislature, courts should be very hesitant to declare immunity nonexistent in any particular case.'" *Nueces Cnty. v. San Patricio Cnty. 246 S.W.3d 651, 652 (Tex. 2008)* (quoting *City of Galveston v. Texas, 217 S.W.3d 466, 471 (Tex. 2007)).* Therefore, courts generally presume that governmental immunity applies. *See id.* With these principles in mind, we turn to the history of the proprietary-governmental dichotomy.

Over 125 years ago, the Texas Supreme Court considered the extent [**11] to which governmental immunity applies to municipalities. *City of Galveston v. Posnainsky, 62 Tex. 118 (1884).* In *Posnainsky*, a father sued a municipality for injuries resulting from his minor child's fall into an uncovered drain on a public street. *Id. at 122-23.* The court held that because the municipality constructed and maintained the streets for its "own advantage or emolument," it was not immune from suit for [*809] negligently maintaining those streets. *Id. at 131.* As the court explained, when a municipality "exercises powers exclusively public in their character, forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against" the municipality unless the state has waived immunity from suit. *Id. at 125.* However, when municipalities "exercise power not of this character, voluntarily assumed--powers intended for the private advantage and benefit of the locality and its inhabitants,--there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual [**12] or private corporation" would be held. *Id.*

*Posnainsky* established what has become the proprietary-governmental dichotomy. When a municipality exercises powers, public in nature, at the direction of the state, it performs a governmental function for which it has governmental immunity. But when a municipality acts within its discretion, primarily for the benefit of those within its corporate limits, it performs a proprietary function for which it has no immunity. *See Nueces Cnty., 246 S.W.3d at 652-53 (citing Posnainsky,*

*62 Tex. at 125).*

The courts have traditionally been left to determine which municipal functions are proprietary and which are governmental. *See, e.g., Gates, 704 S.W.2d at 739.* However, in 1987, the Texas Constitution was amended to give the legislature the authority to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." *Tex. Const. art. XI, § 13(a).* Thus, the legislature may, through statute, change the common-law classifications of municipal functions, effectively "grant[ing] municipalities immunity [**13] from certain suits that could have been maintained at common law." *City of Tyler v. Likes, 962 S.W.2d 489, 503 (Tex. 1997).*

The legislature has exercised its authority to reclassify proprietary functions as governmental functions almost exclusively in the Tort Claims Act.[3] *See Tex. Civ. Prac. & Rem. Code § 101.0215; see also Likes, 962 S.W.2d at 502* (noting that Tort Claims Act reclassified maintenance of storm sewers as governmental function even though considered proprietary function at common law). As noted above, the Tort Claims Act specifically defines the "operation and maintenance of a public utility" as a proprietary function, thereby affirming its common-law classification, at least with respect to tort claims. *See Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1); San Antonio Indep. Sch. Dist. v. City of San Antonio, 550 S.W.2d 262, 264 (Tex. 1976)* (noting that operation of public utility is proprietary function at common law).

3 The legislature has also specified that certain public operations and government agencies perform only governmental functions. *See, e.g., Tex. Transp. Code § 452.0561(b)* (stating that operations of public transportation entity are governmental functions); [**14] *Tex. Water Code § 67.0105(b)* ("The furnishing of a water supply and fire hydrant equipment by a governmental entity or a volunteer fire department. . . is an essential governmental function . . . ."); *Tex. Spec. Dist. Code § 3503.002(b)* (stating that operations of "TexAmericas Center" are governmental functions for all purposes). The City's contract with the LCRA does not implicate any of these

provisions, and therefore these statutes are not applicable to the case before us.

## The common-law rule and *Tooke v. City of Mexia*

*Posnainsky* applied the proprietary-governmental dichotomy to a tort [*810] claim. *See 62 Tex. at 125.* Prior to *Tooke, 197 S.W.3d at 343-44*, the Texas appellate courts--including this Court--also unanimously applied the proprietary-governmental dichotomy to claims for contract damages. *See Bailey, 972 S.W.2d at 192.*[4] Although some of these opinions acknowledged that the dichotomy was originally applied to tort claims, the opinions mostly assumed, without explanation, that "the dichotomy applies with equal force to contract claims." *See City of Mexia v. Tooke, 115 S.W.3d 618, 624-25 (Tex. App.--Waco 2003), aff'd, 197 S.W.3d at 347.*

4    *See also Temple v. City of Houston, 189 S.W.3d 816, 819-20 (Tex. App.--Houston [1st Dist.] 2006, no pet.)*; [**15] *City of Roman Forest v. Stockman, 141 S.W.3d 805, 811 (Tex. App.--Beaumont 2004, no pet.)*; *City of Mexia v. Tooke, 115 S.W.3d 618, 624-25 (Tex. App.--Waco 2003), aff'd, 197 S.W.3d 325, 347 (Tex. 2006)*; *Williams v. City of Midland, 932 S.W.2d 679, 683-84 (Tex. App.--El Paso 1996, no writ)*; *City of Houston v. Southwest Concrete Constr., Inc., 835 S.W.2d 728, 732-33 (Tex. App.--Houston [14th Dist.] 1992, writ denied)*; *City of Dallas v. Moreau, 718 S.W.2d 776, 779-80 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.)*; *International Bank of Commerce of Laredo v. Union Nat. Bank of Laredo, 653 S.W.2d 539, 546 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.)*; *Blythe v. City of Graham, 287 S.W.2d 527, 530 (Tex. App.--Fort Worth 1956, writ ref'd n.r.e.)*; *Boiles v. City of Abilene, 276 S.W.2d 922, 925 (Tex. App.--Eastland 1955, writ ref'd)*; *City of Crosbyton v. Texas-New Mexico Util. Co., 157 S.W.2d 418, 420-21 (Tex. App.--Amarillo 1941, writ ref'd w.o.m.)*; *Texas One P'ship v. City of Dallas*, No. 05-92-01097-CV, 1993 WL 11621, at *3 (Tex. App.--Dallas Jan. 15, 1993, writ denied) (not designated for publication). The parties do not cite to, and we could not find, any cases from the Texarkana or Tyler [**16] Courts of Appeals applying or refusing to apply the proprietary-governmental dichotomy to a contract claim prior to *Tooke v. City of Mexia, 197 S.W.3d*

*at 343-44.*

However, the supreme court's opinion in *Tooke* has brought that uniform assumption into question. In *Tooke*, the supreme court stated that the "proprietary-governmental dichotomy has been used to determine a municipality's immunity from suit for tortious conduct. . . . [b]ut we have never held that this distinction determines whether immunity from suit is waived for breach of contract claims . . . ,"[5] *197 S.W.3d at 343*. The court explained that it "need not determine that issue" because the case involved a governmental function, and thus, even assuming that the dichotomy applied, the municipality had governmental immunity. *Id*. Nevertheless, *Tooke*arguably called into question the vitality of the longstanding assumption that the proprietary-governmental dichotomy applies with equal force to contract claims as it does to tort claims. *See East Houston Estate Apartments, L.L.C. v. City of Houston, 294 S.W.3d 723, 731-32 (Tex. App.--Houston [1st Dist.] 2009, no pet.)* (discussing appellate courts' *post-Tooke* treatment of proprietary-governmental [**17] dichotomy for contract claims). However, until the supreme court answers this question, we rely on this Court's precedent, as well as the [*811] nearly unanimous opinions of our sister courts, to conclude that the proprietary-governmental dichotomy applies to contract claims under the common law.

5    Immediately following this sentence, the court in *Tooke* cited *Gates v. City of Dallas*, a previous supreme court opinion in which the court noted that "[c]ontracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals." *See Tooke, 197 S.W.3d at 343 n.89* (citing *Gates, 704 S.W.2d 737, 738-39 (Tex. 1986)).* Given that the disposition in Gates appears to have required an application of the proprietary-governmental dichotomy to a contract claim, it is not entirely clear what the court in *Tooke* meant when it said, in dicta, that it had never held that the dichotomy applies to such claims. *See id.*; *see also City of San Antonio ex. rel. City Pub. Serv. Bd. v. Wheelabrator Air Pollution Control, Inc., 381 S.W.3d 597, 604 (Tex. App.--San Antonio 2012, pet. filed)* (concluding *Tooke* brings *Gates* into question). Nevertheless, [**18] we will take at face value the supreme court's conclusion that it has never

expressly held that the proprietary-governmental dichotomy applies to contract claims.

Prior to *Tooke*, the appellate courts unanimously applied the proprietary-governmental dichotomy to contract claims. *See supra* n.3. Following *Tooke*, several appellate courts, including this Court, have assumed without deciding that the dichotomy continues to apply to contract claims. *See, e.g.*, *East Houston Estate Apartments, L.L.C.*, 294 S.W.3d at 731-32; *Smith v. City of Blanco, No. 03-08-00784-CV, 2009 Tex. App. LEXIS 7889, 2009 WL 3230836, at *3 (Tex. App.--Austin Oct. 8, 2009, no pet.)* (mem. op.). At least one of our sister courts has continued to expressly apply the proprietary-governmental dichotomy to contract claims *post-Tooke. See Casso v. City of McAllen, No. 13-08-00618, 2009 Tex. App. LEXIS 2049, 2009 WL 781863, at *5-7 (Tex. App.--Corpus Christi Mar. 26, 2009, pet. denied)* (mem. op.) (concluding municipality's provision of health insurance to its employee is proprietary function for which it had no immunity from contract claim). These opinions did not engage in substantial analysis of why the dichotomy was equally applicable to contracts, perhaps because they did not [**19] think such analysis was necessary.

Although *Tooke* brought this issue into question, it did not suggest, and we have not found, any principled reason why the proprietary-governmental dichotomy should apply to tort claims but not contract claims under the common law.[6] *See 197 S.W.3d at 343-44*. Without such a principled reason or guidance from the supreme court, we are reluctant to overturn our own precedent or disagree with persuasive authority from the majority of our sister courts on the issue. *See Grapevine Excavation, Inc. v. Maryland Lloyds, 35 S.W.3d 1, 5 (Tex. 2000)* ("Adhering to precedent fosters efficiency, fairness, and legitimacy."); *see also Bailey, 972 S.W.2d at 192*; *supra* n.3. The proprietary-governmental dichotomy exists because we have determined that when a municipality does not act on behalf of the state, it is not imbued with the state's immunity. Thus, the underlying rationale for the dichotomy is the relationship, or lack thereof, between the municipality and the state, not the relationship between the municipality and the party bringing suit. *See Posnainsky, 62 Tex. at 126-128*.

6 The City argues that we should be hesitant to conclude that governmental immunity does [**20] not exist in this context because such

arguments can be used as a "ruse" to circumvent the legislature. *See Nueces Cnty. v. San Patricio Cnty., 246 S.W.3d 651, 652 (Tex. 2008)*. While we agree that courts should not make this determination lightly, the proprietary-governmental dichotomy has existed for over 125 years and has been applied to contract claims for at least 70 years. *See City of Galveston v. Posnainsky, 62 Tex. 118 (1884)*; *City of Crosbyton, 157 S.W.2d at 420-21*. Therefore, we disagree with the City's assertion that applying the proprietary-governmental dichotomy to contract claims is a ruse to avoid the legislature; rather, it is a reasonable application of jurisprudence that is nearly as old as the state itself. *See Posnainsky, 62 Tex. at 127-28*.

In its brief, the City primarily relies on the San Antonio Court of Appeals' recent holding in *City of San Antonio ex. rel. City Public Service Board v. Wheelabrator Air Pollution Control, Inc., 381 S.W.3d 597, 603-05 (Tex. App.--San Antonio 2012, pet. filed)*. In that case, the court held that the legislature's failure to include the proprietary-governmental dichotomy in "the contract-claim scheme" meant that the dichotomy did [**21] not apply. *Id. at 605*. In reaching this conclusion, the court did not expressly state whether the legislature abrogated the common-law rule that would have applied the dichotomy to contract claims. However, the court noted that *Tooke* brought *Gates*--a previous supreme [*812] court opinion that applied the proprietary-governmental dichotomy to a contract claim--into question because *Tooke* "used a compare signal when citing *Gates* right after explicitly stating it has never held that the proprietary/governmental distinction applies to determine whether immunity is waived for breach of contract claims. . . " *Wheelabrator, 381 S.W.3d at 604* (citing *Tooke, 197 S.W.3d at 343 n.89*). To the extent *Wheelebrator's* analysis suggests that *Tooke* changed the common law, we respectfully disagree.

We agree that *Tooke's* citation to *Gates* could be read to mean that *Gates* did not expressly hold that the proprietary-governmental dichotomy applies to contract claims, and thus there is no binding precedent from the supreme court that answers this question. *See supra* n.4. Nevertheless, we do not agree with *Wheelebrator's* intimation that *Tooke* changed the common law or somehow called the holding of *Gates* into question.

[**22] By its own terms, *Tooke* assumed without deciding that the proprietary-governmental dichotomy applied to contract claims and therefore did not overrule any prior precedent. *See 197 S.W.3d at 343*. Furthermore, the underlying analysis in *Tooke* primarily concerned whether the phrase "plead and be impleaded" within the local government code was a clear and unambiguous waiver of sovereign immunity. *See id. at 342-43*. As we have explained, the proprietary-governmental dichotomy concerns whether a municipality has governmental immunity in the first place, not whether that immunity has been waived. Therefore, *Tooke's* analysis of waiver of immunity has little bearing on the proprietary-governmental dichotomy, and the more relevant precedents are those cases addressing whether governmental immunity exists in the first instance. *See, e.g.*, *Heinrich, 284 S.W.3d at 371-72*; *Nueces Cnty. 246 S.W.3d at 652-53*.

For the foregoing reasons, we adhere to our precedent and conclude that the proprietary-governmental dichotomy does apply to contract claims under the common law. *See Bailey, 972 S.W.2d at 192*. Having made this determination, we next consider whether the legislature has abrogated that common-law [**23] rule.

**Legislative intent**

In its brief, the City argues that the legislature's failure to expressly adopt the propriety-governmental dichotomy for contract claims indicates that the dichotomy does not apply. As we have noted, the legislature has the authority to reclassify a municipality's functions as either proprietary or governmental, thereby abrogating their common-law classifications. *See Tex. Const. art. XI, § 13(a)*. The legislature has exercised this authority almost exclusively in the Tort Claims Act, in which it provided non-exhaustive lists of proprietary and governmental functions. *See Tex. Civ. Prac. & Rem. Code § 101.0215*; *supra* n.3. *Section 271.152 of the Local Government Code*--the section that waives local governmental entities' immunity from suit for certain contract claims--does not reference the proprietary-governmental dichotomy. Given that chapter 271 does not mention the proprietary-governmental dichotomy in any respect, there is no plain statutory text from which we can determine whether the legislature intended to abandon the dichotomy for contract claims.

The City asserts that we should take the legislature's silence to mean that the proprietary-governmental dichotomy [**24] no longer applies to contract claims. The City again relies on the analysis in *Wheelebrator*, in which the San Antonio Court of Appeals stated the following:

> The Legislature easily could have included the proprietary/governmental dichotomy it used in the tort-claims context [*813] in the contract-claim scheme, but chose not do so. As it is solely the Legislature's role to clearly and unambiguously waive governmental immunity from suit, and it has not done so for quantum meruit claims, we hold [the municipality] is immune from suit on Wheelebrator's quantum meruit claim.

See *381 S.W.3d at 605* (internal quotation omitted). Because we conclude that this analysis incorrectly places the burden on the legislature to affirmatively adopt the common-law rule, we respectfully disagree.

We are mindful of the fact that although "silence can be significant . . . . legislatures do not always mean to say something by silence. Legislative silence may be due to mistake, oversight, lack of consensus, implied delegation to courts or agencies, or an intent to avoid unnecessary repetition." *PPG Indus., Inc. v. JMB/Houston Ctr. Partners Ltd. P'ship, 146 S.W.3d 79, 84 (Tex. 2004)*. Therefore, in order to give effect [**25] to the legislature's intent, we must utilize other tools of statutory construction. *See Tex. Gov't Code § 311.023*. In particular, we consider the common law's treatment of the proprietary-governmental dichotomy prior to the adoption of *section 271.152*, as well as the legislative history and purpose behind that section's adoption. *See id. § 311.023(3)-(4)*; *Tex. Loc. Gov't Code § 271.152*.

*Section 271.152* was signed into law on June 17, 2005, just over one year before the supreme court issued its opinion in *Tooke*. *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, §§ 1-2, 2005 Tex. Gen. Laws 1548, 1549; *see also Tooke, 197 S.W.3d at 325*. At the time the legislature considered and adopted *section 271.152*, the appellate courts unanimously applied the proprietary-governmental dichotomy to contract claims in the same manner that they applied the dichotomy to torts. *See supra* n.3. We presume that the legislature was aware of the state of the common law when it adopted *section 271.152*. *See Shook v. Walden, 304 S.W.3d 910, 917 (Tex.*

*App.--Austin 2010, no pet.).* The legislature did not express any disagreement with that precedent; therefore we presume that the legislature did not intend to abrogate [**26] the common law. *See Cash Am. Int'l Inc. v. Bennett, 35 S.W.3d 12, 16 (Tex. 2000)* ("Abrogating common-law claims is disfavored and requires clear repugnance between the common law and statutory causes of action.") (internal quotations omitted). Furthermore, although the legislature could have repeated the list of proprietary and governmental functions from the Tort Claims Act in some part of chapter 271 of the Local Government Code, it could have reasonably concluded that such repetition was unnecessary. *See Tex. Civ. Prac. & Rem. Code § 101.0215*; *PPG Indus., Inc., 146 S.W.3d at 84* (noting legislative silence may indicate intent to avoid unnecessary repetition); *see also Tooke, 197 S.W.3d at 343-44* (concluding that there is "no reason to think that the classification [of proprietary and governmental functions] would be different under the common law ").

Similarly, the history behind *section 271.152* indicates that it was adopted to expand, rather than limit, plaintiffs' ability to sue municipalities for contract damages. As *section 271.158 of the Local Government Code* makes clear, nothing in *section 271.152* "shall constitute a grant of immunity to suit to a local governmental entity." [**27] This is consistent with the bill analysis for *section 271.152*, which states that it "clarifies and re-expresses the legislature's intent that all local governmental entities that are given the statutory authority to enter into contracts shall not be immune from suits arising from contracts, subject to the limitations set forth in C.S.H.B. 2039." House Comm. On Civil Practices, [*814] Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. 2005. Thus, the legislative history strongly indicates that *section 271.152* was adopted to expand--or at a minimum not reduce--access to the courthouse.[7] It would be entirely inconsistent with this purpose to treat *section 271.152* as an abrogation of the proprietary-governmental dichotomy for contract claims. *See Likes, 962 S.W.2d at 503* (noting that when legislature reclassifies proprietary function as governmental function, it expands governmental immunity beyond common law).

7 As our sister court explained, *section 271.152* was adopted to overrule various appellate court cases that found that governmental entities' immunity from suit had not been waived for

various contract claims. *See Clear Lake City Water Auth. v. MCR Corp., No. 01-08-00955-CV, 2010 Tex. App. LEXIS 2194, 2010 WL 1053057, at *9 n.6 (Tex. App.--Houston [14th Dist.] March 11, 2010, pet. denied)* [**28] (mem. op.).

Finally, as we have explained, the proprietary-governmental dichotomy concerns whether governmental immunity exists in the first place, not whether it has been waived. Therefore, the statutory provision that waives governmental immunity in chapter 271 does not logically implicate the proprietary-governmental dichotomy, which applies before consideration of waiver. As a result, the legislature could have reasonably believed it did not need to reiterate the validity of the dichotomy in *section 271.152*. This interpretation is directly supported by *section 271.158*, in which the legislature expressly stated that nothing in *section 271.152* "shall constitute a grant of immunity to suit to a local governmental entity."

Therefore, we find that *Wheelebrator's* interpretation of the legislature's silence is inconsistent with legislative history and the purpose of *section 271.152*. We conclude that the legislature did not intend *section 271.152* to abrogate the common law's treatment of the proprietary-governmental dichotomy. Having concluded that the common law applies that dichotomy to contract claims, and that the operation of a municipal utility is a proprietary function, we further [**29] conclude that the City was acting in its proprietary capacity when it entered into its contract with the LCRA. *See Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1)* (listing operation and maintenance of municipal utility as proprietary function); *Tooke, 197 S.W.3d at 344* (using classification of municipal function in Tort Claims Act in application to contract claim). Therefore, the City has no governmental immunity from the LCRA's claims, and the trial court did not err in denying the City's plea to the jurisdiction on this basis.[8]

8 Having concluded that the City has no governmental immunity, we need not address the LCRA's alternative argument that the City's immunity has been waived.

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction.

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Dissenting Opinion by Justice Goodwin

Affirmed

Filed: August 23, 2013

**DISSENT BY:** Melissa Goodwin

**DISSENT**

Because I would conclude that the Lower Colorado River Authority (LCRA) failed to allege a valid waiver of governmental immunity from suit by the City of Georgetown (the City), I respectfully dissent. *See McCandless v. Pasadena Indep. Sch. Dist., No. 03-09-00249-CV, 2010 Tex. App. LEXIS 2383, 2010 WL 1253581, at *3 (Tex. App.--Austin Apr. 2, 2010, no pet.)* (mem. op.) ("Plaintiff bears the burden to affirmatively demonstrate the trial court's jurisdiction by alleging a valid waiver of immunity, [**30] which may be either by reference to a statute or to express [*815] legislative permission." (citing *Texas Dep't of Transp. v. Jones, 8 S.W.3d 636, 637 (Tex. 1999)*))).

The majority concludes that the "City has no immunity from this suit" based upon its conclusion that "the City was acting in a proprietary capacity when it entered into its contracts with the LCRA." This conclusion, however, ignores the well-established doctrine of governmental immunity that protects political subdivisions of the state, including cities, from suit. *See Ben Bolt v. Texas Political Subdivisions, 212 S.W.3d 320, 324 (Tex. 2006); Tooke v. City of Mexia, 197 S.W.3d 325, 328 (Tex. 2006); Multi-County Water Supply Corp. v. City of Hamilton, 321 S.W.3d 905, 907 (Tex. App.--Houston [14th Dist.] 2010, pet. denied).* "A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Ben Bolt, 212 S. W.3d at 324* (citing *Texas Natural Res. Conserv. Comm'n v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002)); Multi--County Water Supply, 321 S.W.3d at 907* ("Immunity from suit deprives the trial court of subject-matter jurisdiction and bars an action against the governmental unit in the absence of express, clear, and unambiguous consent to suit." (citing *Tex. Gov't Code § 311.034; Tooke, 197 S.W.3d at 332-33*)).

The majority's analysis of the proprietary-governmental dichotomy also glosses over LCRA's pleadings. In its pleadings, LCRA does not allege a breach of contract claim but seeks declaratory relief. *See Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (UDJA); see, e.g., East Houston Estate Apartments, L.L.C. v. City of Houston, 294 S.W.3d 723, 731 (Tex. App.--Houston [1st Dist.] 2009, no pet.)* (noting that courts of appeals have "applied the governmental-proprietary dichotomy to breach of contract cases"). The UDJA "does not enlarge a trial [**31] court's jurisdiction." *City of El Paso v. Heinrich, 284 S.W.3d 366, 370 (Tex. 2009).* Except for suits challenging statutes or ordinances, the UDJA does not waive governmental entities' immunity from suit. *See id.; IT-Davy, 74 S. W.3d at 855-56; Multi-County Water Supply, 321 S.W.3d at 907* (noting that UDJA "is not a general waiver of governmental immunity" and that "[b]y entering into a contract, a governmental entity waives immunity from liability but does not waive immunity from suit"); *Lower Colorado River Auth. v. Riley, No. 10-10-00092-CV, 2011 Tex. App. LEXIS 10236, 2011 WL 6956136, at *2 (Tex. App.--Waco Dec. 28, 2011, no pet.)* (mem. op.) (UDJA "not general waiver of sovereign immunity"). Thus, LCRA's UDJA claims do not satisfy its burden to allege a valid waiver of immunity from suit. *See, e.g., IT-Davy, 74 S.W.3d at 855-56, 860* (stating that immunity generally protects a governmental entity from declaratory-judgment suits that seek to establish a contract's validity or enforce performance under the contract "because such suits attempt to control state action").

LCRA's pleadings also fail to establish that *section 271.152 of the Local Government Code* applies to waive the City's immunity from suit: the LCRA expressly states it is not bringing a breach of contract claim for money damages.[1] *See Tex. Loc. Gov't Code §§ 271.151-.160* (waiving immunity of local governmental entities for [*816] breach of contract claims that seek to recover balance owed under a contract for goods or services and limiting recoverable damages); *McCandless, 2010 Tex. App. LEXIS 2383, 2010 WL 1253581, at *3* (concluding "without a properly pleaded breach-of-contract [**32] action, *section 271.152* does not waive governmental immunity"); *cf. Ben Bolt, 212 S.W.3d at 323, 328* (concluding that limited statutory waiver in *section 271.151* applied to insurance coverage dispute in "declaratory judgment action seeking a determination that the loss was a covered occurrence under the insurance

agreement's terms"); *City of San Antonio v. Wheelabrator Air Pollution Control, Inc., 381 S.W.3d 597, 599-600 (Tex. App.--San Antonio 2012, pet. filed)* (plaintiff seeking money damages under a breach of contract claim or, alternatively, a quantum meruit claim). LCRA does not seek to recover the balance owed under a contract. *See Tex. Loc. Gov't Code § 271.153* (listing recoverable damages).

1   In its pleadings, LCRA states: "it merely seeks to construe LCRA's obligations under a state statute and a contract and does not otherwise attempt to control Defendants or establish their liability for money damages.... LCRA does not seek to validate the contract, impose liability on Defendants, or enforce their performance LCRA's declaratory-action does not seek to establish that the City owes LCRA money or that the City previously breached its contractual obligations."

Although a governmental entity waives its immunity from liability by entering into contracts, it was LCRA's burden to allege a valid waiver of immunity from suit. *See Ben Bolt, 212 S.W.3d at 324* ("By entering into a contract, the State waives its immunity from liability [**33] but not its immunity from suit."); *Jones, 8 S.W.3d at 637* (plaintiff's burden to allege valid waiver of immunity). I would conclude that LCRA failed to do so.[2]

2   I also cannot join the majority's analysis of *section 271.152 of the Local Government Code*, the section expressly waiving immunity from suit for certain contract claims. *See Tex. Loc. Gov't Code § 271.152*. *Section 271.151(2)* defines a "contract subject to this subchapter" to mean "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id. §271.151(2)*. Contracts properly executed by a local governmental entity, such as a city, whether in its governmental or proprietary capacity, fall within the plain language of a "contract subject to this subchapter." *See id.*

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Filed: August 23, 2013

# APPENDIX
# A7

CAUSE NO. CV-14-41722

| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR | § | |
| | § | |
| Defendant. | § | 336th JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S FIRST AMENDED PETITION FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, City of Bonham and files this First Amended Petition against Defendant, Sidney B. Hale, Jr. ("Hale" or "Defendant"), seeking declaratory judgment relief, and in support thereof would show as follows:

### I. DISCOVERY PLAN

1.      This matter shall proceed under a Level 2 Discovery Plan.

### II. JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to the Texas Declaratory Judgment Act. Venue is appropriate in this Court because the subject property is located within the boundaries of Fannin County, Texas.

### III. PARTIES

3.      Plaintiff is the owner of the property which is the subject of this lawsuit.

4.      Defendant is a resident of Fannin County, Texas and may be served at 910 E. 11th Street, Bonham, Fannin County, Texas 75418.

### IV. FACTS

5.      City of Bonham owns a Quonset hangar on the grounds of the City of Bonham Airport (the "Quonset Hangar"). By lease dated on or about June 18, 1984, Hale leased the

24

Quonset Hangar from the City of Bonham ("the Lease"). A true and correct copy of The Lease is attached hereto as Exhibit "A." Paragraph 4 of the lease incorporates into the Lease the terms of the Rules and Regulations of the Bonham Municipal Airport, attached hereto as Exhibit "B."

6. The Lease by its terms expired 5 years after it was first signed. However, both parties continued performing under the Lease on a month-to-month basis.

7. On February 13, 2012, The City Council of the City of Bonham adopted new Airport Rules and Regulations (the "2012 Airport Rules and Regulations"), a true and correct copy of which are attached hereto as Exhibit "C." Section 8 of the Airport Rules and Regulations implies knowledge of them to people using the Bonham Municipal Airport. Section 7-6 contains language eliminating any liability of the City of Bonham for any damage to persons or property.

8. After passage of the 2012 Airport Rules and Regulations, both parties continued to perform under the Lease.

9. On December 6, 2013, a severe ice storm impacted the Bonham Municipal Airport, causing widespread damage (the "Incident"). The roof of the Quonset Hangar collapsed as a result of the Incident. Defendant claims over $400,000.00 in damages from City of Bonham as a result of the collapse, notwithstanding that City of Bonham has pointed out the Hold Harmless language in the 2012 Airport Rules and Regulations eliminating any claim he might have.

10. On June 4, 2014, Hale's counsel sent a demand letter making a claim against Plaintiff under the Texas Tort Claims Act. This letter is attached hereto as Exhibit D.

25

11. Plaintiff has exhausted its attempts to secure Defendant's compliance with the terms of the Lease and 2012 Airport Rules and Regulations, and is without further remedy, save and except the intervention of this Court.

## V. CAUSE OF ACTION – REQUEST FOR DECLARATORY JUDGMENT

12. This action is being brought pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. Section 37.004 of that Chapter states, in relevant part, that "A person interested under a…written contract…or whose rights, status or other legal relations are affected by a …contract…may have determined any question of construction or validity arising under the …contract…and obtain a declaration of rights, status or other legal relations thereunder."

13. In this matter, Defendant takes the position that he is not bound by the terms of the Lease and, specifically, the Hold Harmless provision of the 2012 Airport Rules and Regulations.

14. In contrast, the City of Bonham asserts that the Hold Harmless language does apply either as a part of the Lease under principles of contract construction, under the doctrine of ratification, or under the doctrine of subordination of contractual rights to local rules, laws and ordinances.

15. Sovereign immunity protects governmental entities from lawsuits for money damages. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Political subdivisions of the state, including cities, are entitled to governmental immunity unless it has been waived. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). Sovereign immunity encompasses immunity from suit, which bars a suit unless the governmental entity has consented, and immunity from liability, which protects the entity from

judgments even if it has consented to the suit. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

16. Section 101.021(2) of the Texas Tort Claims Act (The "Act") provides that a governmental unit is liable for "personal injury and death" arising out of the condition or use of tangible personal or real property. Property damage, as Hale claims here, is not recoverable. And while Section 101.0215(10) of the Act does include airports as a governmental function of a municipality, that liability must still arise out of Section 101.021. See, e.g., *City of Kemah v. Vela*, 149 S.W.3d 199, 203-04, n. 1 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

17. Moreover, even if sovereign immunity had been waived, Hale would be limited in his damages. Under the terms of the Lease, he would not be able to maintain a claim for any damages. Moreover, under Section 101.023(d) of the Act, liability for property damages against a municipality is limited to $100,000.

18. This is a live, genuine controversy because the determination of this issue directly affects the ongoing relationship between the parties.

19. Plaintiff requests the Court enter the following judicial declarations:

(a) The Lease adopts the 2012 Airport Rules and Regulations.

(b) By the terms of section 7-6 the 2012 Airport Rules and Regulations, Hale has no claim against City of Bonham as a result of the Incident.

(c) Plaintiff is immune from suit under the concept of sovereign immunity.

## VI. REQUEST FOR ATTORNEY'S FEES

20. Plaintiff requests that this Court award Plaintiff its reasonable costs and attorney's fees pursuant to the Texas Declaratory Judgment Act and Chapter 38 of the Texas Civil Practice and Remedies Code.

27

## VII. CONDITIONS PRECEDENT

21.     All conditions precedent to Plaintiff being entitled to bring this action and recover the relief requested herein have been performed, have occurred or have been waived.

## VIII. PRAYER

WHEREFORE, Premises Considered, Plaintiff respectfully requests that the Court enter the judicial declarations requested hereinabove and award Plaintiff its reasonable and necessary costs and attorneys fees, and for such other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

HELMES & GREENE, LLC

John Reenan
Texas State Bar No. 00789777
jreenan@helmsgreene.com
Christopher S. Kilgore
Texas State Bar No. 11398350
ckilgore@helmsgreene.com
1700 Pacific Ave., Suite 3740
Dallas, Texas 75201
Telephone: (214) 466-7910
Facsimile: (214) 466-7915

**ATTORNEYS FOR PLAINTIFF**
**CITY OF BONHAM**

**EXHIBIT A**

THE STATE OF TEXAS

COUNTY OF FANNIN

THIS LEASE AGREEMENT:

Made and entered into by and between the City of Bonham,
Texas, hereinafter called the Lessor and __Sidney B. Hale, Jr.__
and ~~Charles Mattingly~~ _deceased July 12, 2002_
hereinafter called the Lessee, WITNESSETH:

1.

The Lessor does hereby LEASE, GRANT AND LET unto the Lessee
herein, the following described premises located and situated at
the City of Bonham Municipal Airport; Metal Quonset Hut Hangar

2.

The said Lease shall be for a period of five years,
effective from the date of this instrument. Likewise, the same
shall be renewable at a negotiable lease rate, at the option
of the City of Bonham, Texas, acting by and through its duly
designated representatives.

3.

The consideration for this Lease Agreement is $72.00
monthly with the same being payable on the first business day
of each month or on the date of the execution of the lease,
if the same is on an annual basis. - _First Payment Due - July 15, 1984_

All payments are to be paid to the City Secretary at the
Bonham City Hall.

Failure to pay such rental, when the same shall become due
and owing, shall render this Lease Agreement null and void at
the option of the Lessor and will subject the Lessee to attorney
fees and costs should they fail to surrender such premises to
the said City.

4.

The Lessee herein agrees, obligates and binds himself to
abide by the Rules and Regulations of the Bonham Municipal Air-
port, a copy of which are attached hereto and made a part of this
lease by reference to the same and for all purposes.

30

5.

During the term of the Lease Agreement the Lessee agrees to the following terms and conditions:

(a) The Lessee will not alter, change or remodel the premises or any improvements thereon, without first obtaining the prior consent, in writing, of the Bonham Airport Board.

(b) The Lessee will not sublet, rent or mortgage any part or portion of the above described premises to anyone without first obtaining the written consent of the Bonham Airport Board.

(c) The Lessee shall have the right and privilege to place such items of personal property on the premises, as he desires, provided that it is in compliance with the regulations established by the Bonham Airport Board.

6.

The Lessee shall abide by all FAA Rules and Regulations in the occupancy of the premises and shall also abide by all City Ordinances or Resolutions of the said City.

7.

Either party to this Lease Agreement shall have the right to terminate the same by giving 6 months notice, in writing, of their desire to terminate the lease, and the effective date thereof.

CITY OF BONHAM, TEXAS

_Thomas R. Day_
LESSOR

_Sidney B. Hale Jr._
LESSEE
_Charles E. Mattingley_

**EXHIBIT B**



# cITy of Bonham

BONHAM, TEXAS  75418

301 EAST FIFTH STREET • P.O. BOX 578 • TELEPHONE 583-3541

### RULES FOR AIRPORT HANGER USE

1. The Airport Manager will maintain a list of all aircraft hangered and fees charged. Past due rentals over three months will lose hanger space. Rental fees may be paid in advance.

2. The Airport Manager will maintain a current list of all aircraft owners desiring aircraft space. This list will identify space required for this person's specific aircraft (some types of aircraft will only go into certain stalls).

3. Only operational aircraft will be allowed to utilize hanger space. A reasonable time period for repairing out of commission aircraft will be allowed not to exceed 90 days if there is a waiting list.

4. Hanger space is not transferable with sale of aircraft if there is a waiting list for space. If an aircraft owner with a hanger rented sells his aircraft with intent to purchase another of like size (will fit into same hanger space), he may maintain his hanger for 90 days to complete the sales transaction provided the rent is paid through this period.

The City of Bonham Airport Board passed on the above rules for hanger use effective March 14, 1978.

We believe these few rules for hanger use at the Airport will help the Airport Manager to operate the hanger rentals and hanger priorities in a fair and equitable manner to everyone involved.

If you have any questions on the above, please contact the Airport Manager.

Sincerely,

Charles Smith

33

**EXHIBIT C**

# City of Bonham

## Airport Rules and Regulations

## Resolution No. 021312.3

A resolution providing rules for the efficient and safe operation of the Jones Field Municipal Airport (hereinafter referred to as the "Airport"); and to provide the greatest service for the citizens of Bonham and the aviation public, is adopted by the City Council.

The definition of "Airport", "aircraft", "airplane", and other common terms used herein is as defined in Part 1, Code of Federal Regulations, Title 14, Aeronautics and Space. "Airport" with a capital refers to the specific airport for which these rules are adopted.

### Section 1.    Use of Airport Restricted

No person, partnership, firm, association, corporation or entity, incorporated or otherwise, shall use the Airport for any commercial activity, unless approved by the City Council or its duly authorized agent.

### Section 2.    General Rules and Regulations

The following rules and regulations shall be observed in the use and operation of the Airport:

**Rule 2-1. Federal Air Traffic Rules** of the Federal Aviation Administration (FAA) for aircraft operated within the United States, and presently or hereafter effective, are hereby referred to, adopted, and made a part hereof as though fully set forth and incorporated herein. In the event there is a conflict between this document and Federal Air Traffic Rules, then the latter shall apply.

**Rule 2-2. Safeguard of Persons and Property** – The Director of Public Works shall at all times have authority to take necessary and legal actions to safeguard any person, aircraft, equipment, or property at the Airport. NOTAMS will be issued for actions affecting flight at the airport.

**Rule 2-3. Through-the-Fence Operations Prohibited** – No private individual, partnership, FBO, company, or corporation shall be permitted direct ground access to the Airport by their aircraft, customers' aircraft, or private vehicle from property adjacent to or in the immediate vicinity of the Airport. Furthermore, no private individual, partnership, company, corporate, or customers' aircraft or vehicle shall be permitted direct ground access to property from the Airport – a practice commonly known as a "through-the-fence operation."

**Rule 2-4. Lien for Charges** – To enforce the payment of any charge for repairs, improvements, storage, or care of any personal property by the City in connection with the operation of the Airport, the City may place a lien upon such personal property, which shall be enforceable as provided by law.

**Rule 2-5. Lien Possessory Right**- To enforce the payment of any such charge, the Public Works Director/Airport Manager may retain possession of such personal property until all reasonable, customary, and usual compensation has been paid in full.

Page 1 of 1

021312.3

35

**Rule 2-6. Unauthorized Signs and Equipment** – No signs. non-aeronautical equipment, portable buildings, or trailers may be erected, moved-in, or installed on Airport property, except as may be specifically authorized by the Public Works Direct/Airport Manager.

**Rule 2-7. Surreptitious Activities** – Any person observing suspicious, unauthorized or criminal activities should report such activities immediately to the Director of Public Works, local police, officers of the Texas Department of Public Safety, and the Transportation Security Administration General Aviation Information Hotline at 1-866-GA SECUR(E) or 1-866-427-3287.

**Rule 2-8. Wrecked Aircraft** – Every aircraft owner and his/her pilot or agents, shall be responsible for notifying FAA, or NTSB if applicable; and promptly removing disabled or wrecked aircraft from the operational areas of the Airport. Director of Public Works shall also be notified and may provide additional guidance regarding removal of said aircraft.

**Rule 2-9. Repairs to Aircraft** – All aircraft repairs shall be performed in accordance with applicable FAA regulations. Repairs/maintenance shall be performed in hangars unless operational circumstances make this impractical.

**Rule 2-10. Damage to Airport** – Damage of any kind by any person on the airport premises could result in criminal and/or financial liability to either the city and/or the owner(s) of any personal property damaged.

**Rule 2-11. Injury to Person** – Persons entering the Airport ground side property by automobile, other vehicular conveyance, or on foot (does not include persons in aircraft using approved airside facilities) do so at their own risk and with no liability incurring to the City for any injury or damage to person or property.

**Rule 2-12. Authorized Aircraft** – Aircraft with current and correct FAA Certificates of Registration and Airworthiness. Use of the Airport by ultralight aircraft (FAR 103) in the weight shift control and powered parachute class shall be subject to approval by the City Council and shall be in accordance with FAA Order 5190.6 (latest change) and appropriate FARs Part 61 and 103 and any other rules established by the City.

**Rule 2-13. Registration** – All based aircraft shall provide registration information annually by January 15th to the Public Works Director.

**Rule 2-14. Animals** – All animals on airport premises are regulated by existing ordinances enacted by the City of Bonham. In general, all animals shall be leashed and under control of responsible party at all times.

**Rule 2-15. Living Quarters** - No person may make permanent living quarters on Airport, unless specifically authorized by lease.

**Rule 2-16. Intoxicants and Narcotics Prohibited** – These substances are considered illegal on the airport premises unless authorized by a medical professional.

**Rule 2-17. Foreign Objects** – Care should be taken not to deposit foreign objects on airport premises. If observed, please remove or notify Public Works Director.

**Rule 2-18. Litter** – Do not litter or allow litter to accumulate on the surfaces of the airport. Acceptable hangar conditions are addressed in hangar lease. Offenders may be subject to removal and/or cleanup costs.

021312.3

36

## Section 3.  Ground Operations

Rule 3-1. – No unauthorized vehicles on taxiways or runways. The operator(s) of all authorized vehicles will be familiar with and follow all applicable rules and regulations of city/county/state and/or FAA. All other vehicles will exercise caution while operating on applicable airport surfaces. Vehicles shall be vigilant when in proximity of buildings and provide adequate clearance for safe travel.

Rule 3-2. – All vehicles shall yield right of way to aircraft in motion and emergency vehicles and not approach

Rule 3-2. – Maximum recommended speed for all vehicles is 15MPH unless otherwise posted.

## Section 4.  Airport Security

Rule 4-1. – The Transportation Security Administration publication "Security Guidelines for General Aviation Airports", Information Publication A-001 dated May 2004, is available for reference at their website - www.tsa.gov/.

This document is used by the Airport as a guideline to security on the Airport and is incorporated as a working document.

## Section 5.  Aircraft Operation Rules

### Rule 5-1.  Aircraft Tie Downs

A.  Unoccupied aircraft, that are not hangared, shall be parked on the ramp and tied down. During inclement weather or in the event overnight parking is required the wheels should be chocked and brakes set. In the event ramp tie downs are not available, the grass areas immediately North of the ramp may be used on a temporary basis, however this will be at the pilots risk.

B.  All aircraft owners or their agents are responsible for the tie down or security of their aircraft at all times and particularly during inclement weather.

C.  Ramp parking is limited and any operator who requires their airplane to remain on the ramp over four days should notify the Director of Public Works. Nightly tie down fee may apply.

### Rule 5-2.  Running Aircraft Engines

A.  Pilots shall follow all procedures outlined in the AIM and applicable FARs related to starting of aircraft engines.

B.  No engine shall be started, run up, or warmed up until and unless the aircraft is in such position that the propeller stream or jet blast will clear all buildings, other aircraft, and groups of people.

### Rule 5-3. Damage to Airport Lighting
– Report any airport lighting damage to Director of Public Works immediately. Damage to lighting could result in liability as defined in Rule 2-10.

### Rule 5-4. Taxiing Aircraft
- All aircraft shall be taxied in a safe and responsible manner at a speed suitable to such operation. Departing aircraft yield to landing aircraft. Reckless operation will not be acceptable.

021312.3

37

Rule 5-5. Parking Aircraft

 A. Unattended aircraft shall not be parked within fifty (50) feet of an aircraft fuel pump or fuel service truck parking area.

 B. Aircraft shall not be parked in such a manner as to hinder the normal movement of other aircraft and traffic unless specifically authorized by the Director of Public Works and only as a temporary measure.

 C. It is the responsibility of the pilot in command when leaving a parked aircraft unattended to see that the brakes are set and / or it is properly chocked and / or tied down

Rule 5-6. Authority to Suspend Operations – The Director of Public Works may suspend or restrict any or all operations whenever such action is deemed necessary in the interest of safety. Appropriate NOTAMS will be issued by the Director of Public Works. Any suspensions and restrictions will be temporary in nature unless circumstances require otherwise.

Rule 5-7. Emergency Locator Transmitter (ELT) – All pilots are urged to monitor and report any observed ELT activation.

Rule 5-8. Standard Traffic Pattern and Altitude, Non Towered Airports – All flight activity will adhere to FAA Advisory Circular 90-66 (latest change)

Rule 5-9. Clearing Public Right of Ways – Aircraft operators are expected to be familiar with and comply with regulations and recommendations contained within FAR 77.

Rule 5-10. Takeoffs on Other Than Runways – All takeoffs and landings will be performed only on active runway unless authorized by NOTAM.

Rule 5-11. Agricultural Spraying Operations – Ag operations shall be accomplished in accordance with the standards of the Texas Department of Agriculture in an area so designated by the Director of Public Works. Ag operators are required to secure adequate insurance to cover liability and cleanup costs in the event of a chemical spill.

Rule 5-12. Model Aircraft – Model aircraft not capable of carrying a person shall not be permitted to operate, take off or be launched from, flown over or land at the Airport. Model A/C operations for specific aeronautical events such as fly-ins or air shows may be approved for specific times by the Director of Public Works.

Section 6.  Fueling, Flammable Fluids, and Fire Safety

Rule 6-1.  Fueling Aircraft

 A. All aircraft shall be grounded with engine shut down prior to fueling.

 B. Fuel Storage in hangars is governed by terms of hangar leases.

 C. Persons or businesses wishing to dispense fuel into their privately owned aircraft shall not be denied; however, all Commercial operators and Private use involving over 20 gallon of aviation fuel, must obtain a fuel permit issued by the City.

 D. All fueling facilities require prior approval of the City Council and pertinent conditions will be set on a case by case basis.

021312.3

*38*

Read, passed and adopted by a vote of the City Council of the City of Bonham on the 13th day of February 2012

Members voting Aye; _____7_____ Members voting Nay;___None_____

_____

Roy V. Floyd, Mayor

City of Bonham

Attest:

_____

Janell Jamieson, City Secretary

021312.3

40

**EXHIBIT D**



**C**OATS **&** **E**VANS
ATTORNEYS

P. O. Box 130246
The Woodlands, Texas 77393-0246

A PROFESSIONAL CORPORATION

Office: (281) 367-7732
Facsimile: (281) 367-8003

Gary Linn Evans
E-mail: evans@texasaviationlaw.com

Direct: (832) 541-8037

June 4, 2014

Mr. Bill Shipp
City Manager
City of Bonham, Texas
514 Chestnut
Bonham, Texas 75418

*Via CMRRR No. 7013 1090 0000 2669 1742*
*Via Email: bonhamcitymanager@cableone.net*
*and Via Facsimile No. 903-583-5761*

Re:    **NOTICE, DEMAND, AND PROOF OF CLAIM:** Sydney B. Hale and Stephen Hale, d/b/a H&M Aircraft Service; Hangar Collapse of December 8, 2013 at the City of Bonham Municipal Airport, Bonham Texas.

Dear Mr. Shipp:

The undersigned and this law firm represent Sydney and Stephen Hale, d/b/a H&M Aircraft Service (the "Hales") regarding the above-referenced matters. Please direct all future correspondence regarding this matter to the undersigned at the address, e-mail address, and/or facsimile number stated herein. Hereinafter, "you," "your," "City of Bonham," and/or the "City" shall refer to the City of Bonham, Texas.

As you are certainly aware, on or about December 8, 2013, the hangar in which the Hales were conducting their aircraft repair and maintenance business at the City of Bonham Municipal Airport collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The hangar was used to conduct the Hales' aircraft related business and store multiple aircraft. After several months of correspondence with you and with others, on your behalf, we have been unable to reach an acceptable agreement resolving the damages sustained by the Hales, in whole or in part.

While you have previously received actual notice of the Incident and the Hales' damages caused by the Incident, this correspondence shall serve as formal, written notice of the Hales' claims against the City of Bonham, including, but not limited to, any claims arising under the Texas Tort Claims Act. A preliminary listing of all of the items the Hales claim to be missing, lost, stolen, damaged, or otherwise responsible for the aggregate of the claimed economic losses has previously been provided, and is also attached hereto for your convenience.

Prior to the Incident, the Hales informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed the Hales to immediately vacate the premises and to stay out of the hangar. There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the hangar collapsed. Such action represents and assumption of complete command and control over the premises. The City's failure to reasonably protect the hangar from further collapse caused the damages incurred by the Hales, at least in part.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to the Hales. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

This correspondence additionally serves as a final attempt to reach an acceptable offer of resolution, including, but not limited to, full payment of the damages incurred by the Hales as a result of the City's actions and/or failure to act, as well as the availability of hangar space at the Bonham Airport as to the Hales for and in support of their aircraft maintenance business. The Hales have been conducting their maintenance business at the Airport for many decades. The availability of hangar space to continue their business is a key material aspect to any potential solution to the issues that have arisen as a result of the Incident. However, Airport personnel seem to take particular delight in frustrating and impeding the Hales' attempts at continuing their business, completely unnecessarily so in our view.

We anticipate your prompt cooperation with an attention to these matters. If we fail to receive a response from you within thirty (30) days of the receipt of this notice, we will proceed with all judicial measures available to recover compensation for all of the damages you have caused the Hales, all as allowed and set forth under the Texas Tort Claims Act.

Sincerely,

COATS & EVANS, P.C.

*/s/ Gary L. Evans*

Gary L. Evans

Encl.

Mr. Bill Shipp
City Manager
City of Bonham, Texas
June 4, 2014
Page 3

cc:    Michael Grady, U.S. Specialty Insurance Company (*Via Email:* mgrady@HCC.com)
       Patrick Montgomery, AviationLS (*Via Email:* patrick.montgomery@aviationls.com)

| | | | | | subtotals: | $27,910.50 | $222,608.90 | $418,801.50 |
| BRAND NAME | MODEL # | AGE OF ITEM | QUANTITY | ITEM DESCRIPTION | PURCHASE PRICE | ESTIMATED VALUE | REPLACEMENT VALU |
|---|---|---|---|---|---|---|---|
| Whelen Strobe Tester | B-148-000 | 1 year | 1 | Whelen Strobe System Tester | $128.50 | $128.50 | $128.50 |
| Site Built | | 18 years | 1 | Portable Office | $20,000.00 | $20,000.00 | $22,000.00 |
| Champion | CT-475 | 17 Years | 1 | Spark Plug Tester and Cleaner | $1,000.00 | $1,000.00 | $1,700.00 |
| Cambell Hausfeld | TF000821H | 18 years | 1 | Campbell Hausfeld Commercial Air Compressor ,Attachments &Hose | $3,600.00 | $5,000.00 | $3,600.00 |
| Unknown | Unknown | 15 - 20 years | All | Tables and Cabinets | | $2,000.00 | $2,000.00 |
| Williams | Numerous | 8 Years | 12 | Combination Wrenches 1&1/8" - 2"-12 point | | $8-$900.00 | $1,112.00 |
| Champion | Numerous | New | 48 | Champion Spark Plugs | 850 | $1,332.00 | $1,332.00 |
| Sears | 106,173,781 | 40 years | 1 | Small Air Comlpressor 2 cyl. 2hp. 20 gal.7.0 scfm @ 90 PSI | $1,332.00 | $600.00 | $300.00 |
| TELEDYNE CONTINENTAL | o-200 Series | 40 Years | 1 | Cessna 150-0-200 Series Engine w/All Accessories TCM | | $10,000.00 | $25,000.00 |
| Piper | PA-24-250 | 54 Years | 1 | Piper PA-24-250 Commanche Low Time | | $50,000.00 | $60,000.00 |
| Cessna | 150L | 41 Years | 1 | Cessna 150 N10732 IFR Cert., New Millenium Ed. Engine, Avionics Upgrade | | $30,000.00 | $35,000.00 |
| Wag Aero | Narco | New | 2 | Narco 10 | | | $1,178.00 |
| R&D,Kamas,Kleen-Ez | E330 | 18 Years | 1 | Cleaning VAT and Solution | | $550.00 | $900.00 |
| Buffalo | | 18 Years | 1 | Large Hydraulic Press 12 Ton And Accessories | | $800.00 | $1,000.00 |
| Various Brands | | 3 - 20 years | 8 | Jacks | | $3,500.00 | $3,500.00 |
| Cessna | o-200 Series | Used | 2 | Engine Mounts For 0-200 Engines | | $2,000.00 | $3,200.00 |
| Various | Multiple | 1 - 39 years | Multiple | Regular Tools | | $5,000.00 | $5,000.00 |
| Various | Multiple | New To 5 Year | Multiple | Tool Cabinet Chest and Tools By Office | | $1,500.00 | $3,000.00 |
| Unknown | N/A | 2 Years | 1 | 4 Drawer Tool Cart - Blue | | $800.00 | $800.00 |
| Various, Dell | Multiple | 10 - 16 Years | 2 | Computers and Equipment | | $4,000.00 | $5,500.00 |
| Aeroshell | Multiple | New | 10 | New Cases of Av. Oil Aeroshell | | $700.00 | $960.00 |
| Icom,Vertex | A24, VXA220 | 5 Years | 2 | Portable Aircraft Radios | | $850.00 | $850.00 |
| Av Comm, David Clark | AC-900, H10-66 | 4 - 10 years | 5 | Aircraft Head Sets | | $1,500.00 | $1,718.57 |
| Premier Metals Inc. | Multiple | 25 Years | Multiple | Aircraft Rolls And Sheets Of Aluminum Sheet Metal | | $500.00 | $2,500.00 |
| Home Depot | | 16 Years | 20 | 3 - Shelf 47" W x 35.4 " H x 27.6' D, Shelving | | $3,500.00 | $19,990.00 |
| Champion | Various | New | 6 Boxes | Champion Spark Plugs , Various #'s @ $27,.70 Per Plug | | $1,800.00 | $1,994.40 |
| Lycoming | o-360 | 5 Years | 2 | Aircraft Cylinders | | $1,600.00 | $2,000.00 |
| Garmin | | 4 Years | 1 | Garmin GPS, Accessories,Mount, Full Manual,Software Update | | $3,500.00 | $3,500.00 |
| Slick,Bendix | Various | 8 Years | 2 Sets | Magnetos & Ignition Harnesses | | $2,800.00 | 5,239.90 |
| Delco | Multiple | 5 - 20 Years | 2 | Starters - Delco | | $400.00 | $996.00 |
| Delco | Multiple | 5 - 20 Years | 2 | Generators | | $350.00 | $900.00 |
| Wag Aero, Chief, Aircraft Spruce | Assorted | All | All | AN Bolts and Screws | | $1,000.00 | $6,000.00 |
| Wag Aero,Chief, Aircraft Spruce, Aviall | Assorted | All | All | Fasteners | | $800.00 | $3,000.00 |
| Wag Aero, Chief, Aircraft Spruce , Aviall | Assorted | All | All | Rivets | | $1,500.00 | $3,000.00 |
| Spruce | 15X | 10 Years | 1 | Strut Pump- Pneumatic | | $1,000.00 | $500.00 |
| All Required | Assorted | All Up To Date | All | Aircraft Manuals & All Current Revisions & Subscriptions | $1,000.00 | $10,000.00 | $25,000.00 |
| Aeronca | 7AC | 68 Years | 2 | Magneto Switches | | $1,500.00 | $1,500.00 |
| Simpson | 260 | 20 Years | 1 | Simpson 260 VOM And Case And Lead Attachments | | $350.00 | $450.00 |
| MSC, Import | MSC#04240941 | 25 Years | 1 | Etcher And All Attachments | | $300.00 | $554.33 |
| Unknown | Unknown | 20 Years | 1 | Commercial Wet Dry Vacuum | | $200.00 | $648.00 |
| Local Hardware Store | | 5 years | 1 | Galvanized Parts Wash Container | | $100.00 | $100.00 |
| Aircraft Spruce | 20 Gal, LH/RH | 8 Years | 1 | Aluminum Fuel Tank, LH/RH | | $250.00 | $1,166.75 |
| Aircraft Spruce | Various | 4 Years | All | Gasket Material | | $200.00 | $200.00 |
| Rohne Electric Co.Stay Warm | | 25 Years | 1 | Electric Injector Cleaner Pot 110 Volts | | $150.00 | $300.00 |
| Office Max | 4 Drawer | 28 Years | 5 | File Cabinets 4 Drawer Commercial Vertical Files | | $750.00 | $1,149.95 |
| Multiple | Multiple | All | All | Assorted Used Aircraft Parts | | $2,500.00 | $5,000.00 |
| The Tank Depot | CP872 | 22 Years | 1 | Portable Fuel Tank With Pump , Hose, And Nozzle | | $500.00 | $650.00 |
| Chicago Pneumatic | | 25 Years | 3 | Die Grinder | | $200.00 | $250.00 |
| Sears | Dremel 4000 | 3 Years | 1 | Bench Grinder and Stand W/ Wire Brush | | $100.00 | $250.00 |
| Sears | Devilbiss | 30 years | 2 | Dremel 4000 - 6/50 w/ Rotary Tool Kit | | $600.00 | $170.00 |
| Lowes | 300 -Ft Cart Hose Re | 5 Years | 5 | Aircraft Spray Guns and Equipment | | $150.00 | $823.28 |
| | | | | Water Hose Cart | | | $208.33 |
| Aircraft Spruce | Various | 1 - 10 Years | All | Jumper Cable Sets And Adaptor Power Plugs | | $300.00 | $983.50 |
| Local Business | N/A | 12 Years | 1 | 16'x4' Professional Business Sign | | $600.00 | $800.00 |
| Watson Electric | Various | 1 - 15 Years | All | Space Heaters - Office | | $60.00 | $300.00 |
| Superior | Multiple | 1 - 10 Years | All | All Misc. Gasket O/H Continental & Lycoming Engine Sets | | $3,000.00 | $3,000.00 |
| Walton | | 22 Years | 1 | Bench and Vise | | $150.00 | $300.00 |
| Burroughs | N/A | 22 Years | All | Specialty Aircraft Cylinder Wrenches | | $2,000.00 | $2,500.00 |
| Local Business | N/A | 15 Years | All | Furniture - Desks, Couch, Curtains, Furnishings | | $2,500.00 | $2,500.00 |
| Chief, Wag Aero,Aircraft Spruce | | 1 - 30 Years | All | Multiple Different Solenoid Contactors | | $1,500.00 | $1,800.00 |
| Aviall | Multiple | 1 - 6 Years | Full Rack | Aircraft Tires and Tubes | | $500.00 | $3,000.00 |
| Multiple | Multiple | 1 - 30 Years | Multiple | Electrical Equipment, Aviation Wire,Connectors | | $500.00 | $1,800.00 |
| Brown Tool Co,Yard Store | | 1 - 30 Years | Multiple | Pneumatic Tools | | $500.00 | $1,500.00 |
| Grainger, Other | Multiple | 1 - 10 Years | Multiple | Butane, Kerosene Heaters, Smudge Pots- Shop | | $2,500.00 | $1,500.00 |

45

| Vendor | Part / Model | Age | Qty | Description | Unit Price | Total |
|---|---|---|---|---|---|---|
| Granger | 8500 CFM | 15 years | 2 | Champion Water Coolers- Shop | $300.00 | $3,868.00 |
| Watson Electric | Lights | 13 Years | 2 | Fixed Lights 230 Volt | | $200.00 |
| Local | Various | 15 - 20 Years | All | Electrical Service - Disconnect - Shop Panel - Office Panel and Wiring | $4,000.00 | $4,000.00 |
| McCraw Oil Co. | 10/10 Scale | 22 Years | 1 | Inclinometer | $75.00 | $95.00 |
| Wag Aero | Solvent | New | 5 | 5 Gal. Cans Of Solvent | $100.00 | $200.00 |
| Toolbarn.com | Multiple | 3 - 20 Years | 5 | Floor Creepers & Landing Gear Axle Stand & mechanics Roller Seat | $150.00 | $479.98 |
| Wag Aero | Multiple | 11 Years | Multiple | Greenlee Knockout Set & Fishtape & Self Test Non-Contact Voltage Detector | $150.00 | $1,234.94 |
| Wag Aero | Multiple | 1-30 Years | Multiple | Spark Plug Tools & Oil Filter Cutter & Oil Filter Torque Wrench | $750.00 | $1,006.90 |
| Wag Aero | Rapco | New | 3 | Aircraft Vacuum Pumps | $500.00 | $950.00 |
| Various | Various | 1- 10 Years | Multiple | Welding Rods & Supplies | $2,000.00 | $2,000.00 |
| Wag Aero | SCAT | New | Multiple | Scat Hose | $500.00 | $600.00 |
| Antique | Antique | Antique | 2 | Refrigerator and Antique Coke Box | $200.00 | $377.50 |
| Best Buy | | 3 Years | 1 | Microwave | $100.00 | $300.00 |
| Sears | | 8 Years | 1 | Office A/C Unit | $300.00 | $500.00 |
| Palomar, Sears | Various | 36 Years | 8 | CB Base Stations and Linear AMP and Microphone and Equipment | $1,000.00 | $4,000.00 |
| Milwaukee | 2101-22 | 7 Years | 3 | Cordless Milwaukee Screw Guns, Chargers, Cases | $300.00 | $387.00 |
| Local Vender | Various | 1 - 40 Years | All | Aircraft Electric Wire and Assorted Connectors | $400.00 | $1,500.00 |
| Fluke | 87V | 3 - 9 Years | 2 | Fluke Voms &Leads & Attachments | $750.00 | $1,000.00 |
| MSC Industrial Supply Co. | 190-502 | 3 Years | 1 | 190-502 500 MHz Fluke Scope Meter Test Tool | $1,500.00 | $5,199.95 |
| Local Electric | Multiple | 1 - 12 Years | Multiple | Solder and Soldering Irons and Accessories | $250.00 | $1,250.00 |
| Zoro Tools , Buy Heat Shrink.Com | hg-501-a & Adj. Temp | 19 Years | 2 | Heat Guns | $100.00 | $123.81 |
| Various | Multiple | 1 -40 Years | Multiple | Drill Motors - Bits & Taps | $500.00 | $2,200.00 |
| Various | Multiple | 1 -45 Years | Multiple | Machinest Tooling & Measuring Devices | $600.00 | $5,811.47 |
| Various | Multiple | 1 - 10 Years | Multiple | Multiple Ladders & Scaffolding | $200.00 | $1,079.46 |
| Dawes, western Flyer. Sears | | 35 Years + | Multiple | Several Bicycles | $200.00 | $1,500.00 |
| General Shelters | Port A Cool | 1 Year | 1 | Portable Water and Air Conditioner | $800.00 | $1,595.00 |
| Various | Multiple | 1 - 13 Years | Multiple | Lubricants, Greases, Grease Guns, Paints and Glass Cleaners & Polishes | $400.00 | $2,000.00 |
| Wag Aero | J-100, J-105 | 3 - 7 Years | 4 | Aircraft Jacks, Aircraft Jacks- Piper & Beech | $800.00 | $1,216.50 |
| Multiple | Multiple | 1 - 6 Years | 3 | Battery Chargers | $200.00 | $1,767.45 |
| Aircraft Spruce | Multiple | New | Multiple | Complete Intake Assemblies & Elements & Champion Oil Filters | | $688.25 |
| Draper.Com | NDG-6 | 12 & 15 Years | 2 | Gas Tow Motors | $1,800.00 | $3,190.00 |
| Northern Tool | IP-3060-2 | New | 5 | Roll Around Work Tables | $300.00 | $1,699.95 |
| The Jack House Inc. | | 10 Years | 2 | Tall Wing Jacks | $2,000.00 | $2,000.00 |
| Aviall | 270A | New | 12 | Lord Cowl Mounts 2 $15.91 Ea. | | $190.52 |
| Yard Store.Com | P/N 120 | 6 Years | 2 | Rivet Gun & Regulator | $384.95 | $384.95 |
| Yard Store.Com | P/N 121 | 6 Years | 1 | Rivet Set Mix Straight | $29.95 | $29.95 |
| Yard Store.Com | P/N 181 | 6 Years | 1 | Rivet Set Mix Angled | $29.95 | $29.95 |
| Yard Store.Com | 2470 | 6 Years | 1 | Rivet Set Swivel Flush | $18.95 | $18.95 |
| Yard Store.Com | 5011 - 2K | 6 years | 1 | Back Rivet Set | $21.95 | $21.95 |
| Yard Store.Com | SKT17 | 8years | 1 | Rivet Squeezer | $195.95 | $195.95 |
| Yard Store.Com | P/N 1410 | 7 Years | 1 | Rivet Squeezer Set | $119.95 | $119.95 |
| Yard Store.Com | P/N 1412 | 7 Years | 1 | Air Drill (2600 RPM) | $289.95 | $289.95 |
| Yard Store.Com | P/N 1AM1541 | 7 Years | 1 | Air Drill (3600RPM) | $319.95 | $319.95 |
| Yard Store.Com | P/N 1AM1551 | 7 Years | 1 | Air Drill 45 Degree | $553.95 | $553.95 |
| Yard Store.Com | P/N 4135/4136 | 7 Years | 1 | Air Drill 90 Degree | $571.95 | $571.95 |
| Yard Store.Com | P/N 24606 | 9 Years | 1 | Sheet Metal Shrinker, Stretcher Set | $382.95 | $382.95 |
| Yard Store.Com | AT540A | 10 Years | 1 | Tap & Die Set | $139.95 | $139.95 |
| Yard Store.Com | 04522 | 10 Years | 1 | Screw Removal Tool | $30.95 | $30.95 |
| Yard Store.Com | P/N 131 | 6 Years | 1 | Flameless Heat Gun | $89.95 | $89.95 |
| Yard Store.Com | P/N 24EL | 6 Years | 4 | Cleco Pliers | $23.80 | $23.80 |
| Yard Store.Com | 25CL-1/8 | 6 Years | 50 | Clecos $2.25 ea. | $112.50 | $112.50 |
| Yard Store.Com | 25CL -3/16 | 6 Years | 1 | Clecos 25 pc.'s | $11.95 | $11.95 |
| Yard Store.Com | 25CL-3/32 | 6 Years | 1 | Clecos 25 pc.'s | $11.95 | $11.95 |
| Yard Store.Com | | 6 Years | 1 | Clecos 25 pc.'s | $11.95 | $11.95 |
| Yard Store.Com | HNX -1/8 | 6 Years | 50 | Clecos HNX 1/8 | $197.50 | $197.50 |
| Yard Store.Com | HNX -3/32 | 6 Years | 50 | Clecos HNX 3/32 | $197.50 | $197.50 |
| Yard Store.Com | KWN -1/8 | 6 Years | 50 | Clecos KWN 1/8 | $147.50 | $147.50 |
| Yard Store.Com | KWN -3/32 | 6 Years | 50 | Clecos KWN 3/32 | $147.50 | $147.50 |
| Continental | LRJ3 | 18 years | 1 | 4400 LB. Capacity Shop Hoist 4000 | $3,000.00 | $3,727.00 |
| Cessna | 172 | 5 years | 1 | Rt. Side Elevator | $2,000.00 | $2,000.00 |
| Champion | M41N | New | 25 | Antique Spark Plugs 5 Boxes | | $1,250.00 |
| Continental Red Seal | SA-190 | Antique | 25 | Antique Spark Plugs 5 Boxes | | $500.00 |
| Eismann | Antique | 30 Years | 1 Set | Ignition Leads | | $250.00 |
| Northern Tool | 3103K | 30 Years | 2 | Surface Prep Grinder Kit | | $100.00 |
| Northern Tool | 301B | 15 Years | 1 | Angle Die Grinder 1/4" | | $2,500.00 |
| Northern Tool | WBA-1-3672W | 15 Years | 5 | Workbench, Wood Top 72"W x36"D. | | $2,099.97 |
| Northern Tool | WW-4204 | 21 Years | 3 | Welded Steel Workbench 84" X 42" | | $3,975.00 |
| Portable Partitions | Panels | 1 Year | 25 | Hush Panel Configurable Cubicle Partition | | $34.00 |
| Wal-Mart | Pump Up Sprayer | 5 Years | 2 | Pump Up Sprayer | | $149.94 |
| Home Depot | 100' Water Hose | 6 Years | 3 | Industrial Pro 5/8" x 100' Water Hose | | $125.76 |
| Sears | Amflo | 6 Years | 4 | Amflow Blow Gun Siphon Sprayer | | |

| Manufacturer | Part / Model | Condition / Age | Qty | Description | Amount | Price |
|---|---|---|---|---|---|---|
| Champion | 2612 | New- 3 Years | 5 | Thread Lubricant | | $47.50 |
| Airwolf | W315F | 8 Years | 1 | Piper Air - oil Seperator | | $625.00 |
| LYC | LW13743 | 6 Years | 1 | Oil Screen Conversion Kit | | $719.95 |
| LYC | M2121 | 5 Years | 1 | BDX S6-20/S-200 Ignition Harness | | $529.00 |
| Cont. | M1780 | 4 - 10 Years | 3 | CONT C-75,C85,C90,O-200 Ignition Harnesses | | $1,107.00 |
| Ford | Multiple | 5 - 20 Years | 2 | Ford Alternators | | $960.00 |
| Champion | C26 | New | 12 | Champion Spark Plugs | | $600.00 |
| Aeroquip | Hydraulic | New | Multiple | Assorted Hydraulic Hoses & Fittings | | $2,000.00 |
| Granger | 7426 | 9 Years | 1 | Quartz Halogen Magnifier Light , Clamp On Base | | $209.00 |
| Global Industrial. Com | Bayco | 3 - 14 Years | Multiple | Portable Quartz Halogen Shop Work Lights | | $406.75 |
| Aircraft Spruce | Cessna | 5 Years | 1 | Towbar - Cessna | | $54.95 |
| Aircraft Spruce | | 9 Years | 1 | Ground Support Towbar | | $87.50 |
| Aircraft Spruce | T-100 | 3 Years | 1 | Universal Towbar w/Ring Hitch | | $237.95 |
| Aircraft Spruce | Redline | 8 Years | 1 | Redline BE-4 Towbar | | $389.00 |
| Aircraft Spruce | Piper | 19 Years | 1 | Universal Towbar | | $159.95 |
| Wag Aero | Aeronca 7 AC | New | 1 | Tail Springs D-208-000 | | $153.25 |
| Wag Aero | Aeronca 7AC | New | Set | Replacement Windows | | $500.00 |
| Wag Aero | Amen- King | New | 1 | AK-451 | | $685.00 |
| Wag Aero | 1-912-100,1-912-200 | New | 2 | Engine Baffling Material | | $79.90 |
| Wag Aero | 1-340-000 | New | 1 | Cessna Spinner W/ Back Plates | | $199.50 |
| Aircraft Spruce | | New | 1 | Cleveland Wheel & Brake For Cessna 150 | | $1,800.00 |
| Wag Aero | P-N 66-5D | New | 6 | Drum Style Brake Lining | | $332.40 |
| Wag Aero | Multiple | New | Multiple | Assorted Cleveland & Rapco Brake Linings | | $2,197.00 |
| Wag Aero | Multiple | Used | 2 sets | Harness & Seat Belts | $120.00 | $345.00 |
| Wag Aero | | Used | 1 | Complete Engine Baffling For 1974 Cessna 150 | | $1,000.00 |
| Wag Aero | | Used | 1 | Exhaust System For Cessna 150 | | $1,095.00 |
| Wag Aero | | 24 Years | 1 | Maule Fabric Tester | | $292.50 |
| Wag Aero | Multiple | 1 - 45 Years | Multiple | Safety Wire & Safety Wire Tools | | $198.50 |
| Multiple | Multiple | Used | Multiple | Instrument Components | | $3,841.15 |
| Superior | Multiple | New | Multiple | Engine O/H Gaskets And Seals | | $3,500.00 |
| Jet | JWDS-14CSW | 1 - 30 Years | 1 | Jet Band Saw | | $1,690.00 |
| Jet | JDP-17-MFW | 1 - 30 Years | 1 | Jet Drill Press | | $936.50 |
| Sears | 10" | 35 Years | 1 | Sears Craftsman Table Saw | | $649.99 |
| Singer | 191-D | 6 Years | 1 | Singer 191-D Straight Stitch Upholstery & Fabric Sewing Machine | | $1,489.00 |
| Dewalt | 14" | 5 Years | 1 | Dewalt Sliding Compound Miter Saw | | $619.50 |
| Dewalt | 20-4/5 In L | New & used | 1 | Dewalt Chop Saw 14" | | $637.00 |
| Whelen | Multiple | 1 - 38 Years | Multiple | Assorted Nav Lights, Bulbs, Beacons | | $2,000.00 |
| Various | Multiple | 1 - 40 Years | Multiple | All Office Stationary & Printed Billing Forms & FAA Forms, Metal Desks, Rolodexes, Contact Info.Records | | $2,000.00 |
| Various | Multiple | 8 - 30 Years | Multiple | All CFI Instruction Aids & Related Materials | | $3,500.00 |
| Various | Kool | | 5 | Tool Boxes | | $1,503.95 |
| Wag Aero | RV- 10 | New | 2 | kool Scoop Window Vents | | $57.50 |
| Wag Aero | SAS-440 | Used | 2 Pair | Sun Visor | | $792.00 |
| Wag Aero | Sig SPO22 | New | 1 | Panel Mount Intercom | | $324.00 |
| Wag Aero | Multiple | Used | 1 | Transcom II Portable | | $187.00 |
| Wag Aero | Multiple | New & Used | Multiple | Multiple Aircraft Antennas | | $3,600.00 |
| Wag Aero | Multiple | New & Used | Multiple | Facet Electric Fuel Pumps | | $280.00 |
| Tempest | Multiple | New | Multiple | Tempest Remanufactured Fuel Pumps | | $1,310.00 |
| Aero Classics | Multiple | New | 2 | Aero Classics Oil Coolers | | $1,000.00 |
| Airwolf | | Used | 1 | Airwolf/Air- Oil Seperator- Piper | | $625.00 |
| Ez-Heat, Inc. | Multiple | 1 - 22 Years | 8 | Ez- Heat Engine Heater | | $473.00 |
| Wag Aero | Multiple | 27 Years | 1 | Magneto Timing Tools | | $253.00 |
| Wag Aero | Multiple | New | 1 | Differential Cylinder Tester W/ Hose | | $115.00 |
| Wag Aero | ATI 8701 | New | Multiple | Lord Engine Mount Rubbers | | $680.00 |
| Wag Aero | ATS 212FB | 11 Years | 4 | Saf -T - Stop Seat Rail Stop | | $404.25 |
| Wag Aero | RA716 | 6 Years | 1 | Flaring Tool | | $88.95 |
| Rapco | RA BRT | 1 - 16 Years | 5 | Vacuum Pump Wrench | | $22.95 |
| Rapco | Boq 7 Years | 2 Years | 2 | Brake Rivet Tool | | $140.00 |
| Wag Aero | Grommets | New | Multiple | Boq Jack Pad | | $189.90 |
| Aircraft Spruce | Grommets | New | Multiple | Instrument Pannel Grommets & Regular Misc Size Hole Grommets | | $150.00 |
| Piper | PA- 24-250 | Used | 2 | Pilot & Co-Pilot Seats | | $2,000.00 |

47

# APPENDIX
# A8

| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## DEFENDANT SIDNEY B. HALE, JR.'S VERIFIED ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Sidney B. Hale, Jr. ("Mr. Hale" and/or "Defendant") and files this his Verified Original Answer against Plaintiff, City of Bonham, Texas (the "City" and/or "Plaintiff"), and in support thereof, would respectfully show this Court the following:

### I.    GENERAL DENIAL

Defendant appears and generally denies each and every, all and singularly, the material allegations contained in Plaintiff's Original Petition, and any amendments or supplements thereto, in accordance with Rule 92 of the Texas Rules of Civil Procedure, demands strict proof thereof and says that this is a matter for jury trial.

### II.    VERIFIED DENIALS

1. Defendant denies that conditions precedent have been performed or have occurred.

2. Defendant denies the existence of a valid and enforceable lease agreement between the parties. The originally executed lease agreement has long expired and the parties have not entered into a renewal of said lease.

3. Defendant denies that Plaintiff gave notice and proof of Plaintiff's claims.

1

### III.    AFFIRMATIVE DEFENSES

1.    <u>No causation</u>. Defendant is informed and believes, and based thereon alleges that any injury, damage, loss, or detriment suffered by Plaintiff was directly and proximately caused by persons separate and apart from Defendant whether named or unnamed in this action.

2.    <u>Negligence of Others</u>. Defendant is informed and believes, and based thereon alleges that any injury, damage, loss or detriment suffered by Plaintiff was directly and proximately caused, in whole or in part, by the negligence of persons separate and apart from Defendant whether named or unnamed in this action.

3.    <u>Plaintiff's Negligence</u>. Defendant is informed and believes, and based thereon alleges that any injury, damage, loss, or detriment suffered by Plaintiff was directly and proximately caused, in whole or in part, by the negligence of Plaintiff.

4.    <u>Comparative Responsibility</u>. Defendant is informed and believes, and based thereon alleges that in the event that a finding is made that Defendant was negligent and that said negligence proximately contributed to Plaintiff's damages, which is expressly and specifically denied, and/or that Defendant is otherwise legally responsible for Plaintiff's damages, Plaintiff's amount of recovery from Defendant should be reduced on the basis of Plaintiff's own negligence and/or the negligence of third parties which contributed to the damages for which Plaintiff is seeking recovery in accordance with the doctrine of comparative responsibility and the Texas Civil Practice & Remedies Code.

5.    <u>Assumption of Risk</u>. Defendant is informed and believes, and based thereon alleges that at and before the time and place of the accident which is the basis for the present suit, Plaintiff fully knew of and appreciated any risk of danger of injury, loss, damage or detriment regarding the events and matters alleged in the Original Petition, and having full knowledge and

2

appreciation of such risk and dangers, voluntarily exposed itself to and assumed all risk and dangers of injury, loss, damage or detriment from the events and matters alleged in the Original Petition.

6.      Mitigation of Damages. Defendant is informed and believes, and based thereon alleges that at and before the time and place of the accident which is the basis for the present suit, Plaintiff fully knew of and appreciated any risk of danger of injury, loss, damage or detriment regarding the events and matters alleged in the Original Petition, and having full knowledge and appreciation of such risk and dangers, failed to take any action to mitigate any damages incurred and voluntarily exposed itself to injury, loss, damage or detriment from the events and matters alleged in the Original Petition.

7.      Right to Amend. Defendant intends to rely upon such other defenses as may become legally available hereafter or become apparent during discovery proceedings in this case and hereby reserves its right to amend its answer to assert any such defenses.

## IV.      SPECIAL EXCEPTIONS

Defendant specially excepts to Plaintiff's original petition because the Declaratory Judgment Act does not expand the trial court's jurisdiction to include determinations of liability. *See Tex. Nat. Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 859-60 (Tex. 2002). Just as a declaratory judgment cannot be used ***against*** a government or governmental official to establish the validity of a contract, enforce the performance of a contract, or ignore contractual liability, *see id*. [emphasis added], a declaratory judgment cannot be used ***by*** a governmental entity for the same purpose.

## V. ATTORNEYS' FEES

The preceding is incorporated by reference as if fully copied and set forth at length. As a result of the events giving rise to this complaint, Defendant has been required to retain the services of counsel to prosecute this action. Defendant additionally sues for reasonable attorneys' fees and legal expenses for the prosecution of this action to judgment and for any appeal therefrom.

## VI. AMEND PLEADINGS

Defendant reserves the right to amend these pleadings.

## VII. JURY DEMAND

Defendant hereby make demand for jury trial, as is his right under the Constitution and laws of the State of Texas, in accordance with Tex. R. Civ. P. 216 (a), and tenders the required jury fee concurrently herewith.

## VIII. REQUEST FOR DISCLOSURE

Under Texas Rule of Civil Procedure Rule 194 *et. seq*., Defendant requests that plaintiff disclose, within thirty (30) days after service of this instrument, the information or material described in Rule 194.2.

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays:

1.     That Plaintiff take nothing by way of this cause of action and that this cause of action be dismissed;

2.     That Defendant be awarded all costs and expenses incurred herein; and

3.     That Defendant be granted such other and further relief, both at law and in equity, to which Robinson may show itself justly entitled.

4

Respectfully submitted,

**COATS & EVANS, P.C.**

*/s/* ***Gary L. Evans***

        Gary Linn Evans
        Texas Bar No. 00795338
        Email: evans@texasaviationlaw.com
        George Andrew Coats
        Texas Bar No. 00783846
        Email: coats@texasaviationlaw.com
        P.O. Box 130246
        The Woodlands, TX 77393-0246
        Telephone:  281-367-7732
        Facsimile:  281-367-8003

        **ATTORNEYS FOR DEFENDANT**
        **SIDNEY B. HALE, JR.**

**CERTIFICATE OF SERVICE**

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 7TH day of July, 2014.

*s/* ***Gary L. Evans***

        Gary L. Evans

Mr. John Reenan               *Via Electronic Filing and/or*
jreenan@helmesgreene.com       *Facsimile No. 214-466-7915*
Mr. Christopher S. Kilgore
ckilgore@helmesgreene.com
**HELMES & GREENE, LLC**
1700 Pacific Ave., Suite 3740
Dallas, Texas 75201
Telephone: 214-466-7910
Facsimile: 214-466-7915

## VERIFICATION OF SIDNEY B. HALE, JR.

Before me, the undersigned, Sidney B. Hale, Jr., personally appeared, was sworn and declared under penalty of perjury that he read the foregoing Verified Original Answer, and that the facts alleged therein are true and correct to the best of his knowledge and belief.

FURTHER AFFIAN SAYETH NAUGHT.

*Sidney B. Hale Jr.*
Sidney B. Hale, Jr.

SUBSCRIBED AND SWORN TO BEFORE ME, to certify which, witness my hand and seal of office on this the 7th day of July, 2014.

ELISHA R. STUFFLEBEME
Notary Public, State of Texas
My Commission Expires
March 13, 2018

[S E A L]

NOTARY PUBLIC

_____
(Notary's Signature)

Elisha Stufflebeme
(Notary's Name Printed or Typed)

March 13, 2018
(Date Notary's Commission Expires)

# APPENDIX
# A9

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## DEFENDANT SIDNEY B. HALE, JR.'S ORIGINAL COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Sidney B. Hale, Jr. ("Mr. Hale" and/or "Defendant" and/or "Counterplaintiff") and files this his Original Counterclaim against the City of Bonham, Texas (the "City" and/or "Plaintiff" and/or "Counterdefendant"), and in support thereof, would respectfully show this Court the following:

### I.     LEVEL TWO CASE

Mr. Hale requests that this case be designated as a Level Two case for discovery purposes pursuant to Tex. R. Civ. P. 190 *et. seq.*

### II.     PARTIES

Defendant/Counterplaintiff is an individual residing in Fannin County, Texas.

Plaintiff/Counterdefendant is located in Fannin County, Texas and is duly organized and acting under the laws of the State of Texas. Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving Counterdefendant's attorney of record, Mr. John Reenan, Helmes & Greene, LLC, 1700 Pacific Ave., Suite 3740, Dallas, Texas 75201.

1

### III.  JURISDICTION

This Court has jurisdiction over this matter pursuant to Sections 101.001 *et. seq.* of the Texas Civil Practice and Remedies Code because the Texas Legislature waived Counterdefendant's sovereign immunity for claims involving negligence and premises defects.

The City is a governmental unit and owner of the premises. The condition of the roof of the Hanger constitutes a premises defect. More specifically, the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use and posed an unreasonable risk of harm. The City knew or should have known of the danger.

The City owed Mr. Hale the duty owed to an invitee under Texas law. The City breached the duty owed to Mr. Hale by not adequately warning Mr. Hale of the condition and not making the condition reasonably safe. The City's breach proximately caused Mr. Hale's injuries. If it were a private person, the City, would be liable under Texas law.

No exception to the wavier of immunity bars the claim because no exception applies or an exception to an exception reinstates the wavier. Notice was provided as required by the Texas Tort Claims Act.

### IV.  VENUE

Venue is appropriate in Fannin County, Texas because the property which is the subject of the present suit is located in Fannin County, Texas and all, or substantially all, of the events giving rise to this litigation occurred in Fannin County, Texas.

### V.  NOTICE

Plaintiff/Counterdefendant was provided with notice of the claim in accordance with Tex. Civ. Prac. & Rem. Code §101.101, and/or received actual notice of the claim prior to this

litigation.

## VI.    BACKGROUND FACTS

Plaintiff/Counterdefendant is the owner of a hangar on the grounds of the City of Bonham Airport (the "Hangar"). On or about June 18, 1984, Mr. Hale entered into a lease agreement with the City for the Hangar (the "Lease"). The Lease, by its own terms, expired after five years.

On or about December 8, 2013, the Hangar roof collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The Hangar was used to conduct Mr. Hale's aircraft repair and maintenance business and to store multiple aircraft.

Prior to the Incident, Mr. Hale informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the Hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the Hangar collapsed. Such action represents and assumption of complete command and control over the premises. The City's failure to reasonably protect the Hangar from further collapse caused the damages incurred by Mr. Hale, at least in part.

Additionally, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to his personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not

3

been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

## VII. CAUSES OF ACTION

Defendants' acts and omissions have given rise to the following:

### Negligence

Mr. Hale will show that the foregoing constitutes negligence as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

As owner of the Hangar, the City owed a duty of reasonable care to Mr. Hale. The City had a duty to maintain the premises in a reasonably safe and habitable condition. The City breached its duties to Mr. Hale. As a result of the City's breach, Mr. Hale incurred damages.

### Premises Defect

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes a premises defect as that term is used and understood by the Courts of this State.

The City is a governmental unit and owner of the premises. The condition of the roof of the Hanger constitutes a premises defect. More specifically, the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been

4

inspected in decades, making the hangar unsafe for occupancy and/or use and posed an unreasonable risk of harm. The City knew or should have known of the danger.

The City owed Mr. Hale the duty owed to an invitee under Texas law. The City breached the duty owed to Mr. Hale by not adequately warning Mr. Hale of the condition and not making the condition reasonably safe. The City's breach proximately caused Mr. Hale's injuries. If it were a private person, the City, would be liable under Texas law.

No exception to the wavier of immunity bars the claim because no exception applies or an exception to an exception reinstates the wavier. Notice was provided as required by the Texas Tort Claims Act.

**Breach of Contract/Promissory Estoppel**

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, to the extent the Court determines there is a valid and enforceable contract between the parties, the foregoing constitutes breach of contract and promissory estoppel as those terms are used and understood by the Courts of this State. In pertinent part, the City claims a lease agreement between the parties for lease of the Hangar.

The City breached the contract(s) described in the preceding paragraph when the City defaulted under the terms of the Agreement and refused to keep the Hangar in a safe condition. Mr. Hale substantially relied upon the promises made by the City to their detriment, which reliance was foreseeable by the City, which represents an action under the theory of promissory estoppel as well. Upon information and belief, the City had no intention of performing under the terms of the agreement at the time the City entered into the contract with Mr. Hale. Consequently, the City should be held liable for its breach of the contract(s).

5

As a result of the City's breach of contract/promissory estoppel, Mr. Hale has suffered damages within the jurisdictional limits of this Court. Additionally, pursuant to Tex. Civ. Prac. & Rem. Code §38.001 *et. seq.*, Mr. Hale requests that this Court, upon trial of this matter, award it the reasonable and necessary attorneys' fees, legal expenses, and costs of court incurred in seeking the recovery for the City's breach of contract.

**Damages Based Upon Unjust Enrichment**

In addition to, and without prejudice to the foregoing, Mr. Hale seeks recovery of its damages pursuant to the theory of unjust enrichment. The preceding is incorporated by reference as if fully copied and set forth at length.

The City agreed to provide a reasonably safe and habitable hangar space to Mr. Hale in exchange for monthly lease payments.

Although the City refused to maintain the premises in a safe and habitable condition, the City continued to avail itself of all of the services, benefits and privileges provided by Mr. Hale. The City has been, and continues to be, unjustly enriched unless the Court requires it to pay for such use and benefits.

Mr. Hale hereby seeks recovery of the reasonable value of the services, benefits and privileges by which the City has been unjustly enriched at least in an amount equal to the damages incurred by Mr. Hale. Mr. Hale additionally seeks recovery of all of its attorneys' fees and legal expenses incurred to recover the value of such services, benefits and privileges by which the City has been unjustly enriched, pursuant to the provisions of Texas Civil Practice and Remedies Code §38.001, et seq.

The events leading up to and amounting to such unjust enrichment are proximately responsible for the damages sustained by Mr. Hale in this matter.

6

## Violations of the Texas Deceptive Trade Practices Act

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes violation of the Texas Deceptive Trade Practices Act (the "DTPA").

The City violated the DTPA when it engaged in false, misleading, or deceptive acts or practices that Mr. Hale relied on to his detriment. Specifically, the City failed to keep the Hanger in which Mr. Hale operated his business reasonably safe and habitability. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use. The City further breached an express and/or implied warranty that the premises would be reasonably safe and fit for occupancy.

The City further violated the DTPA when it engaged in an unconscionable action or course of action that, to Mr. Hale's detriment, took advantage of Mr. Hale's lack of knowledge, ability, expertise, or capacity to a grossly unfair degree. Specifically, the City failed to maintain the premises in a reasonably safe condition. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use.

The City's wrongful conduct was a producing cause of Mr. Hale's damages.

Mr. Hale would also show that the City acted "intentionally" and "knowingly" as those terms are defined in the DTPA. Mr. Hale would show that the City committed unconscionable actions "intentionally" and "knowingly." Mr. Hale seeks recovery of actual damages, economic damages, statutory damages, mental anguish, treble damages, and attorneys' fees for the City's violations of the DTPA.

As a direct and proximate result of these actions, the City has violated the provisions of the Texas Deceptive Trade Practices Act and Mr. Hale has been damaged in the manner and

7

amount as described above.

## Gross Negligence

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes gross negligence as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

As owner of the Hangar, the City owed a duty of reasonable care to Mr. Hale. The City had a duty to maintain the premises in a reasonably safe and habitable condition. The City breached its duties to Mr. Hale. As a result of the City's breach, Mr. Hale incurred damages.

The City failed to keep the Hanger in which Mr. Hale operated his business reasonably safe and habitability. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use. The City's negligence posed an extreme degree of risk and potential harm to others resulting in the likelihood of serious injury to any occupants of the Hangar. The City acted with conscious indifference to the rights, safety or welfare of others.

The wrongful conduct and gross negligence of the City proximately caused the damages incurred by Mr. Hale.

## Bailment

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes bailment as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

Upon notice of the deteriorating condition of the hangar, the City instructed Mr. Hale to

8

immediately vacate the premises and to stay out of the Hangar. Such action represents and assumption of complete command and control over the premises, as well as delivery and acceptance of the personal property within the hangar. Mr. Hale vacated the premises as demanded by the City with the understanding that the structure would be repaired and then returned to the control of t Mr. Hale, with all of its contents intact.

The City exercised control and dominion over the Hanger and its contents, yet failed to return the property, in an undamaged condition, to Mr. Hale. Indeed, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to their personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

The events leading up to and amounting to such bailment are proximately responsible for the damages sustained by Mr. Hale in this matter.

## VIII.   CONDITIONS PRECEDENT

All conditions precedent have been performed or have occurred prior to Mr. Hale bringing suit as required by the Tex. Civ. Prac. & Rem. Code.

## IX.     ATTORNEYS' FEES

The preceding is incorporated by reference as if fully copied and set forth at length. As a result of the events giving rise to this complaint, Mr. Hale has been required to retain the services of counsel to prosecute this action. Mr. Hale additionally sues for reasonable attorneys' fees and legal expenses for the prosecution of this action to judgment and for any appeal therefrom.

## X.      AMEND PLEADINGS

Mr. Hale reserves the right to amend these pleadings.

## XI. DEMAND FOR JURY TRIAL

Mr. Hale hereby makes demand for jury trial, as is his right under the Constitution and laws of the State of Texas, and in accordance with Tex. R. Civ. P. 216(a), and tenders the required jury fee concurrently herewith.

## XII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant/Counterplaintiff, Sidney B. Hale, Jr. respectfully requests that Plaintiff/Counterdefendant, the City of Bonham, Texas, be cited to appear and answer and that, on final trial, Mr. Hale have the following:

1. Judgment against Plaintiff/Counterdefendant for damages in an amount within the jurisdictional limits of this Court, jointly and severally;

2. Judgment against Plaintiff/Counterdefendant in an amount within the jurisdictional limits of this Court as special damages, jointly and severally;

3. Judgment against Plaintiff/Counterdefendant for exemplary and enhanced damages to the maximum extent permitted by law, jointly and severally;

4. Prejudgment interest as provided by law, jointly and severally;

5. Post judgment interest as provided by law, jointly and severally;

6. Costs of suit, jointly and severally;

7. Attorneys' fees and legal expenses to the maximum extent permitted by law, jointly and severally; and

8. All such other and further relief, general or special, at law or in equity, to which Mr. Hale may be justly entitled.

Respectfully submitted,

**COATS & EVANS, P.C.**

*/s/* **Gary L. Evans**

Gary Linn Evans
Texas Bar No. 00795338
Email: evans@texasaviationlaw.com
George Andrew Coats
Texas Bar No. 00783846
Email: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone:  281-367-7732
Facsimile:  281-367-8003

**ATTORNEYS FOR DEFENDANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 12th day of November, 2014.

*/s/* **Gary L. Evans**

Gary L. Evans

Mr. John Reenan
jreenan@helmsgreene.com
Mr. Christopher S. Kilgore
ckilgore@helmsgreene.com
**HELMS & GREENE, LLC**
1700 Pacific Ave., Suite 3740
Dallas, Texas 75201
Telephone: 214-466-7910
Facsimile: 214-466-7915

*Via Electronic Filing and/or
Facsimile No. 214-466-7915*

11

# APPENDIX
# A10

| CITY OF BONHAM, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## PLAINTIFF CITY OF BONHAM'S
## PARTIAL MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Pursuant to Texas Rule of Civil Procedure 166a(c), Plaintiff, City of Bonham ("Plaintiff"), files this its Partial Motion for Summary Judgment and requests that the Court grant Plaintiff's Motion as Defendant, Sidney B. Hale's ("Defendant"), tort claims against Plaintiff are barred by sovereign immunity under the Texas Tort Claims Act ("TTCA"). In support of this Motion, Plaintiff would show the Court the following:

### I.

### PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment pursuant to Texas Rule of Civil Procedure 166a(c) on the ground that there is no genuine issue of material fact that Plaintiff is a governmental unit, and any tort claim brought against it must be brought under the TTCA or it will be precluded by the doctrine of sovereign immunity unless that immunity is waived. Defendant has not plead a tort claim that meets the limited waiver of the TTCA.

#### A.    Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant

Page 1

Plaintiff City of Bonham's Partial Motion for Summary Judgment

is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *see Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301-02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, the evidence and its reasonable inferences are viewed in the light most favorable to the non-movant. *See Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *See Great Am.*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See City of Houston*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to present competent controverting evidence that proves the existence of a genuine issue of material fact on the element challenged by

the defendant. *Centeq Realty*, 899 S.W.2d at 197.

## B.   Background Information

Plaintiff owns a Quonset hangar on the grounds of the City of Bonham Airport (the "Quonset Hangar"). On or about June 18, 1984, Defendant began leasing the Quonset Hangar from the Plaintiff.

On December 6, 2013, a severe ice storm impacted the Bonham Municipal Airport, causing widespread damage (the "Incident"). The roof of the Quonset Hangar collapsed as a result of the Incident. Defendant claims over $400,000.00 in property damages as a result of the collapse. *Exhibit "A."*

On June 4, 2014, Defendant's counsel sent a demand letter making a claim against Plaintiff under the Texas Tort Claims Act. This letter is attached hereto as *Exhibit "B."*

On or about June 12, 2014, Plaintiff filed a First Amended Petition for Declaratory Judgment which, among other requested judicial declarations, requested the Court declare that Plaintiff was immune from claims filed against it by Defendant under the concept of sovereign immunity. *Exhibit "C."*

On or about November 12, 2014, Defendant/Counter-Plaintiff filed his Original Counterclaim against Plaintiff/Counter-Defendant. Defendant/Counter-Plaintiff alleges a cause of action against Plaintiff/Counter-Defendant for negligence, alleging that Plaintiff/Counter-Defendant had a duty to maintain the Quonset Hanger in a reasonably safe and habitable condition but Plaintiff/Counter-Defendant breached it duties causing Defendant/Counter-Plaintiff damages. *Exhibit "D."*

Defendant/Counter-Plaintiff also alleges a cause of action against Plaintiff/Counter-Defendant for premises defect, alleging that the condition of the roof of the Quonset Hanger

Plaintiff City of Bonham's Partial Motion for Summary Judgment

constitutes a premises defect. Defendant/Counter-Plaintiff alleges that the apex bolts that held the top seam of the roof together were corroded, undersized, and allegedly had not been inspected in decades, making the hanger unsafe. Defendant/Counter-Plaintiff alleges he was an invitee and the Plaintiff/Counter-Defendant breached its duty to him by not warning him of the condition and not making the condition reasonably safe which caused Defendant/Counter-Plaintiff injuries.

In addition, Defendant/Counter-Plaintiff filed a breach of contract/promissory estoppel cause of action against Plaintiff/Counter-Defendant, if there is a valid and enforceable contract between the parties, for breaching the lease agreement for the lease of the Quonset Hanger. Defendant/Counter-Plaintiff is also seeking damages based upon unjust enrichment for services, benefits and privileges he provided to Plaintiff/Counter-Defendant.

**C.    Sovereign Immunity protects the Plaintiff/Counter-Defendant from Defendant/Counter-Plaintiff's Tort Counterclaims**

Sovereign immunity protects governmental entities from lawsuits for money damages. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Political subdivisions of the state, including cities, are entitled to governmental immunity unless it has been waived. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). Sovereign immunity encompasses immunity from suit, which bars a suit unless the governmental entity has consented, and immunity from liability, which protects the entity from judgments even if it has consented to the suit. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

Section 101.021 of the TTTCA provides as follows:

GOVERNMENTAL LIABILITY. A governmental unit in the state is liable for:
(1)    property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

Plaintiff City of Bonham's Partial Motion for Summary Judgment

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Based on Section 101.021(2), a governmental unit, such as Plaintiff, is liable for *"personal injury and death"* arising out of the condition or use of tangible personal or real property. Property damage, as Defendant/Counter-Plaintiff claims, is not recoverable. *See Exhibit "A."* And while Section 101.0215, which states that a municipality is liable under this chapter for damages arising from its governmental functions, including but not limited to: airports, including when used for space flight activities as defined by Section 100A.001, that liability must still arise out of Section 101.021. See, e.g., *City of Kemah v. Vela*, 149 S.W.3d 199, 203-04, n. 1 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Moreover, Defendant/Counter-Plaintiff cannot establish a waiver under Section 101.021 of the TTCA that would apply to the facts of this case.

## II. Prayer

For the foregoing reasons, Plaintiff/Counter-Defendant requests the Court to grant it a take nothing final partial summary judgment on Defendant/Counter-Plaintiff's negligence and premises liability claims and award it with and such other and further relief, at law or in equity, to which it may be justly entitled.

Plaintiff City of Bonham's Partial Motion for Summary Judgment

Respectfully submitted,

Respectfully submitted,

**HELMS & KILGORE, P. L.L.C.**

_____
CHRIS KILGORE
State Bar No. 11398350
DOTTIE SHEFFIELD
State Bar No. 24051326
2201 Main Street, Suite 212
Dallas, Texas 75201
(972) 532-6484
(972) 532-6496 (facsimile)
**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT**

## Certificate of Service

In keeping with Rule 21a of the Texas Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument has been served upon the following counsel of record:

Gary Linn Evans
George Andrew Coats
Coats & Evans, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246
Facsimile: 281-367-8003

Via:

_____ CMRRR
___✓___ Facsimile
_____ Federal Express
_____ Courier
_____ Hand Delivery (In Person)
_____ Regular U.S. Mail

DATED:       November 25, 2014

_____
DOTTIE SHEFFIELD

Plaintiff City of Bonham's Partial Motion for Summary Judgment

# EXHIBIT "A"

# INVENTORY LIST FOR H & M AIRCRAFT SERVICE

Bonham, Texas 75418
at Jones Field Airport
Loss from December 8, 2013 Building Collapse

| BRAND NAME | MODEL # | AGE OF ITEM | QUANTITY | ITEM DESCRIPTION | PURCHASE PRICE | ESTIMATED VALUE | REPLACEMENT VALUE |
|---|---|---|---|---|---|---|---|
| | | | | **subtotals** | $27,510.50 | $222,816.90 | $418,801.50 |
| Whelen Strobe Tester | 8-148-000 | 1 year | 1 | Whelen Strobe System Tester | $128.50 | $128.50 | $128.50 |
| Site Built | | 18 years | 1 | Portable Office | $20,000.00 | $20,000.00 | $22,000.00 |
| Champion | CT-475 | 17 Years | 1 | Spark Plug Tester and Cleaner | $1,000.00 | $1,000.00 | $1,700.00 |
| Cambell Hausfeld | TF000821H | 18 years | 1 | Campbell Hausfeld Commercial Air Compressor, Attachments & Hose | $3,600.00 | $5,000.00 | $3,600.00 |
| Unknown | Unknown | 15-20 years | All | Tables and Cabinets | | $2,000.00 | $3,000.00 |
| Williams | Unknown | 0 Years | 12 | Combination Wrenches "&1/2", "2"-12 point | | | $1,112.00 |
| Champion | Numerous | New | 49 | Champion Spark Plugs | $850 | $9,359.00 | $9,359.00 |
| Sears | 105,173,781 | 40 years | 1 | Small Air Compressor 2 cyl, 2h.p, 20 gal 7.0 scfm @ 90 PSI | $1,332.00 | $600.00 | $300.00 |
| TELEDYNE CONTINENTAL | 10-200 Series | 40 Years | 1 | Cessna 150-G-200 Series Engine w/All Accessories TCM | | $10,000.00 | $25,000.00 |
| Piper | PA-24-250 | 54 Years | 1 | Piper PA-24-250 Commanche w/All Accessories TCM | | $50,000.00 | $60,000.00 |
| Cessna | 150L | 41 Years | 1 | Cessna 150 N10732 IFR Cert , New Millenium Ed, Engine, Avionics Upgrade | | $30,000.00 | $35,000.00 |
| Wag Aero | Narco | New | 2 | Narco 10 | | $550.00 | $800.00 |
| R&D, Kansas, Kleen-Ez | E300 | 18 Years | 1 | Cleaning VAT and Solution | | $900.00 | $1,173.00 |
| Various Brands | | 18 Years | 1 | Large Hydraulic Press 12 Ton And Accessories | | $3,500.00 | $1,000.00 |
| Buffalo | o-200 Series | 3-20 years | 8 | Jacks | | $2,000.00 | $3,200.00 |
| Cessna | Multiple | Used | 2 | Engine Mounts For O-200 Engines | | $5,000.00 | $6,000.00 |
| Various | Multiple | 1-39 years | Multiple | Regular Tools | | $1,500.00 | $1,500.00 |
| Various | N/A | New To 5 Year | Multiple | Tool Cabinet Chest and Tools By Office | | $600.00 | $650.00 |
| Unknown | Multiple | 2 Years | 1 | 4 Drawer Tool Cart - Blue | | $4,500.00 | $5,500.00 |
| Various, Dell | Multiple | 10-16 Years | 2 | Computers and Equipment | | $700.00 | $960.00 |
| Aeroshell | A24 VXA220 | New | 10 | New Cases of Av. Oil Aeroshell | | $850.00 | $650.00 |
| Icom, Vertex | AC-900, H10-66 | 5 Years | 2 | Portable Aircraft Radios | | $1,500.00 | $1,716.57 |
| Av Comm, David Clark | Multiple | 4-10 years | 5 | Aircraft Head Sets | | $500.00 | $2,500.00 |
| Premier Metals Inc | Various | 25 Years | Multiple | Aircraft Rolls and Sheets Of Aluminum Sheet Metal | | $3,500.00 | $19,000.00 |
| Home Depot | | 16 Years | 20 | 3 - Shelf 47" W x 35.4" H x 27.6" D, Shelving | | $1,800.00 | $1,994.40 |
| Champion | Various | New | 6 Boxes | Champion Spark Plugs , Various #'s @ $22.70 Per Plug | | $1,600.00 | $2,000.00 |
| Lycoming | o-360 | 5 Years | 1 | Aircraft Cylinders | | $3,500.00 | $3,500.00 |
| Garmin | Various | 4 Years | 1 | Garmin GPS, Accessories, Mount , Full Manual, Software Update | | $2,800.00 | $5,239.99 |
| Slick Bendix | Multiple | 8 Years | 2 Sets | Magnetoes & Ignition Harnesses | | $400.00 | $996.00 |
| Delco | Multiple | 5-20 Years | 2 | Starters - Delco | | $350.00 | $900.00 |
| Delco | Assorted | 5-20 Years | 2 | Generators | | $800.00 | $6,000.00 |
| Wag Aero, Chief, Aircraft Spruce | Assorted | All | All | AN Bolts and Screws | | $1,000.00 | $2,500.00 |
| Wag Aero, Chief, Aircraft Spruce, Avtall | Assorted | All | All | Fasteners | | $800.00 | $500.00 |
| Wag Aero, Chief, Aircraft Spruce, Avtall | Assorted | All | All | Rivets | | $1,500.00 | $25,000.00 |
| Spruce | 15X | 10 Years | 1 | Strut Pump- Pneumatic | | $10,000.00 | $1,500.00 |
| All Required | Assorted | All Up To Date | All | Aircraft Manuals & All Current Revisions & Subscriptions | | $1,500.00 | $450.00 |
| Aeronca | 7AC | 58 Years | 2 | Magneto Switches | | $350.00 | $554.33 |
| Simpson | 280 | 20 Years | 1 | Simpson 280 VOM And Case And Lead Attachments | $1,000.00 | $300.00 | $548.00 |
| MSC, Import | MSC4042409441 | 25 Years | 1 | Etcher And All Attachments | | $100.00 | $160.00 |
| Unknown | Unknown | 20 Years | 1 | Commercial Wet Dry Vacuum | | $250.00 | $1,186.75 |
| Local Hardware Store | | 5 years | 1 | Galvanized Parts Wash Container | | $200.00 | $300.00 |
| Aircraft Spruce | 20 Gal, LH/RH | 8 Years | 1 | Aluminum Fuel Tank, LH/RH | | $150.00 | $300.00 |
| Aircraft Spruce | Various | 4 Years | All | Gasket Material | | $750.00 | $1,149.95 |
| Rohne Electric Co, Stay Warm | 4 Drawer | 25 Years | 1 | Electric Injector Cleaner Pot 110 Volts | | $2,500.00 | $6,500.00 |
| Office Max | Multiple | 26 Years | 5 | File Cabinets 4 Drawer Commercial Vertical Files | | $500.00 | $650.00 |
| Multiple | | All | All | Assorted Used Aircraft Parts | | $200.00 | $250.00 |
| The Paint Depot | | 22 Years | 1 | Portable Fuel Tank With Pump , Hose, And Nozzle | | $100.00 | $250.00 |
| Chicago Pneumatic | CP872 | 25 Years | 3 | Die Grinder | | $100.00 | $170.00 |
| Sears | Dremel 4000 | 35 Years | 1 | Bench Grinder and Stand W/ Wire Brush | | $600.00 | $923.26 |
| Sears | Devilbiss | 3 Years | 2 | Dremel 4000- 6150 w/ Rotary Tool Kit | | $150.00 | $208.33 |
| Lowes | 300-Ft Cam Hose Re | 30 years | 2 | Aircraft Spray Guns and Equipment | | $300.00 | $983.50 |
| Aircraft Spruce | Various | 5 Years | 5 | Water Hose Cart | | $600.00 | $600.00 |
| Local Business | N/A | 1-10 Years | All | Jumper Cable Sets And Adaptor Power Plugs | | $60.00 | $500.00 |
| Watson Electric | Various | 12 Years | 1 | 16'x4' Professional Business Sign | | $9,000.00 | $3,000.00 |
| Superior | Multiple | 1-15 Years | All | Space Heaters - Office | | $150.00 | $300.00 |
| Walton | | 1-10 Years | All | All Misc. Gasket O/H Continental & Lycoming Engine Sets | | $2,500.00 | $2,500.00 |
| Burroughs | N/A | 22 Years | 1 | Bench and Vise | | $1,500.00 | $1,800.00 |
| Local Business | N/A | 22 Years | All | Specialty Aircraft Cylinder Wrenches | | $500.00 | $1,500.00 |
| Chief, Wag Aero, Aircraft Spruce | | 15 Years | All | Furniture - Desks, Couch, Curtains, Furnishings | | $500.00 | $5,000.00 |
| Avtall | Multiple | 1-30 Years | Full Rack | Multiple Different Solenoid Contactors | | $2,500.00 | $1,500.00 |
| Multiple | Multiple | 1-6 Years | Multiple | Aircraft Tires and Tubes | | $1,500.00 | | 
| Brown Tool Co, Yard Store | | 1-30 Years | Multiple | Electrical Equipment, Aviation Wire, Connectors | | $500.00 | $500.00 |
| Grainger, Other | Multiple | 1-30 Years | Multiple | Pneumatic Tools | | $500.00 | $5,000.00 |
| | | 1-0 Years | Multiple | Butane, Kerosene Heaters, Smudge Pots- Shop | | $2,500.00 | $1,500.00 |

| Source | Model/Part | Age | Qty | Description | Unit | Total |
|---|---|---|---|---|---|---|
| Granger | 8500 CFM | 15 years | 2 | Champion Water Coolers- Shop | $300.00 | $3,888.00 |
| Watson Electric | Lights | 13 Years | 2 | Fixed Lights 230 Volt | $200.00 | $200.00 |
| Local | Various | 15 - 20 Years | All | Electrical Service - Disconnect - Shop Panel - Office Panel and Wiring | $4,000.00 | $4,000.00 |
| Wag Aero | 10/10 Scale | 22 Years | 1 | Inclinometer | $75.00 | $95.00 |
| McCraw Oil Co. | Solvent | New | 5 | 5 Gal. Cans Of Solvent | $100.00 | $200.00 |
| Toolbarn.com | Multiple | 3 - 20 Years | 5 | Floor Creepers & Landing Gear Axle Stand & mechanics Roller Seat | $150.00 | $479.98 |
| Wag Aero | Multiple | 11 Years | Multiple | Gremlins Knockout Set & Fishtape & Self Test Non-Contact Voltage Detector | $150.00 | $1,234.94 |
| Wag Aero | Rapco | New | Multiple | Spark Plug Tools & Oil Filter Cutter & Oil Filter Torque Wrench | $730.00 | $730.00 |
| Various | Various | 1-30 Years | 3 | Aircraft Vacuum Pumps | $600.00 | $1,026.90 |
| Wag Aero | SCAT | New | Multiple | Welding Rods & Supplies | | $950.00 |
| Antique | Antique | 1 - 10 Years | Multiple | Seat Hose | $2,000.00 | $2,000.00 |
| Best Buy | | Antique | 1 | Refrigerator and Antique Coke Box | $200.00 | $377.50 |
| Sears | | 3 Years | 2 | Microwave | $500.00 | $600.00 |
| | | 8 Years | 1 | Office A/C Unit | $100.00 | $300.00 |
| Paternal, Sears | Various | 36 Years | 8 | CB Base Stations and Linear AMP and Microphone and Equipment | $300.00 | $500.00 |
| Milwaukee | 2101-22 | 7 Years | 3 | Cordless Milwaukee Screw Guns, Chargers, Cases | $1,000.00 | $4,000.00 |
| Local Vender | Various | 1 - 40 Years | All | Aircraft Electric Wire and Assorted Connectors | $400.00 | $387.00 |
| Fluke | 87V | 3 - 5 Years | 2 | Fluke Volts &Leads & Attachments | $750.00 | $1,500.00 |
| MSC Industrial Supply Co. | 190-502 | 3 Years | 1 | 190-502 500 MHz Fluke Scope Meter Test Tool | $1,000.00 | $1,000.00 |
| Local Electric | Multiple | 1 - 12 Years | Multiple | Solder and Soldering Irons and Accessories | $250.00 | $5,199.95 |
| Zoro Tools , Buy Heat Shrink.Com | hp-501-a & Adj. Temp | 19 Years | 2 | Heat Guns | $100.00 | $1,250.00 |
| Various | Multiple | 1 - 40 Years | Multiple | Drill Motors - Bits & Taps | $500.00 | $123.81 |
| Various | Multiple | 1 - 45 Years | Multiple | Machines Tooling & Measuring Devices | $600.00 | $2,200.00 |
| Dawes western, Flyer, Sears | Multiple | 1 - 10 Years | Multiple | Multiple Ladders & Scaffolding | $200.00 | $5,811.47 |
| General Shelters | | 35 Years + | Multiple | Several Bicycles | | $1,079.46 |
| Various | Port A Cool | 1 Year | 1 | Portable Water and Air Conditioner | $800.00 | $1,595.00 |
| Wag Aero | Multiple | 1 - 13 Years | Multiple | Lubricants, Greases, Grease Guns, Paints and Glass Cleaners & Polishes | $400.00 | $2,000.00 |
| Multiple | J-100, J-105 | 3 - 7 Years | 4 | Aircraft Jacks, Aircraft Jacks- Piper & Beech | $800.00 | $1,216.50 |
| Aircraft Spruce | Multiple | 1 - 5 Years | 5 | Battery Chargers | $200.00 | $1,787.45 |
| Dresser Com | NOC-6 | New | Multiple | Complete Intake Assemblies & Elements & Champion Oil Filters | $668.25 | $668.25 |
| Northern Tool | IF 3050-2 | 12 & 15 Years | 5 | Gas Tow Motors | $1,800.00 | $3,180.00 |
| The Jack House Inc. | | | 5 | Roll Around Work Tables | $300.00 | $1,699.55 |
| Aviall | | 10 Years | 12 | Tall Wing Jacks | $2,000.00 | $2,000.00 |
| Yard Store.Com | 270A | New | 2 | Lord Cowl Mounts 2 $15.91 Ea. | $150.00 | $790.52 |
| Yard Store.Com | P/N 120 | 6 Years | 1 | Rivet Gun & Regulator | $384.95 | $384.95 |
| Yard Store.Com | P/N 121 | 6 Years | 1 | Rivet Set Mix Straight | $29.95 | $29.95 |
| Yard Store.Com | P/N 181 | 6 Years | 1 | Rivet Set Mix Angled | $29.95 | $29.95 |
| Yard Store.Com | 2470 | 6 Years | 1 | Rivet Set Swivel Flush | $18.95 | $18.95 |
| Yard Store.Com | 5011 - 2K | 6 years | 1 | Back Rivet Set | $21.95 | $21.95 |
| Yard Store.Com | SKT17 | 5 years | 1 | Rivet Squeezer Set | $195.95 | $195.95 |
| Yard Store.Com | P/N 1410 | 7 Years | 1 | Air Drill (2500 RPM) | $119.95 | $119.95 |
| Yard Store.Com | P/N 1412 | 7 Years | 1 | Air Drill (3900RPM) | $289.95 | $289.95 |
| Yard Store.Com | P/N 1AM1541 | 7 Years | 1 | Air Drill 45 Degree | $319.95 | $319.95 |
| Yard Store.Com | P/N 1AM1551 | 7 Years | 1 | Air Drill 90 Degree | $553.95 | $553.95 |
| Yard Store.Com | P/N 41354/4136 | 7 Years | 1 | Sheet Metal Shrinker, Stretcher Set | $571.95 | $571.95 |
| Yard Store.Com | P/N 24606 | 9 Years | 1 | Tap & Die Set | $382.95 | $382.95 |
| Yard Store.Com | A1540A | 10 Years | 1 | Screw Removal Tool | $139.95 | $139.95 |
| Yard Store.Com | G4622 | 10 Years | 1 | Flameless Heat Gun | $30.95 | $30.95 |
| Yard Store.Com | P/N 131 | 6 Years | 4 | Cleco Pliers | $89.95 | $89.95 |
| Yard Store.Com | P/N 24EL | 6 Years | 50 | Clecos $2.25 ea. | $23.80 | $23.80 |
| Yard Store.Com | 25CL-1/8 | 8 Years | 1 | Clecos 25 pc's | $112.50 | $112.50 |
| Yard Store.Com | 25CL-3/16 | 6 Years | 1 | Clecos 25 pc's | $11.95 | $11.95 |
| Yard Store.Com | 25CL-3/32 | 6 Years | 1 | Clecos 25 pc's | $11.95 | $11.95 |
| Yard Store.Com | HNX-1/8 | 6 Years | 50 | Clecos HNX 1/8 | $11.95 | $11.95 |
| Yard Store.Com | HNX-3/32 | 6 Years | 50 | Clecos HNX 3/32 | $197.50 | $197.50 |
| Yard Store.Com | KWN-1/8 | 6 Years | 50 | Clecos KWN 1/8 | $197.50 | $197.50 |
| Yard Store.Com | KWN-3/32 | 6 Years | 50 | Clecos KWN 3/32 | $147.50 | $147.50 |
| Centennial | LR33 | 18 Years | 1 | 4400 LB. Capacity Shop Hoist 4000 | $147.50 | $147.50 |
| Cessna | 172 | 5 Years | 1 | Rt. Side Elevator | $3,000.00 | $3,727.00 |
| Champion | M41N | New | 25 | Antique Spark Plugs 5 Boxes | $2,000.00 | $1,250.00 |
| Centennial Red Seal | SA-190 | New | 25 | Antique Spark Plugs 5 Boxes | | $1,250.00 |
| Eismann | Antique | Antique | 1 Set | Ignition Leads | | $500.00 |
| Northern Tool | 3103K | 30 Years | 2 | Surface Prep Grinder Kit | | $250.00 |
| Northern Tool | 301B | 30 Years | 1 | Angle Die Grinder 1/4" | | $100.00 |
| Northern Tool | WB4-1-3672W | 15 Years | 5 | Workbench, Wood Top 72"W x36"D | | $2,500.00 |
| Portable Partitions | WW-4284 | 15 Years | 3 | Welded Steel Workbench 84", X 42' | | $3,975.00 |
| Wal-Mart | Panels | 21 Years | 25 | Hush Panel Configurable Cubicle Partition | | $34.00 |
| Home Depot | Pump Up Sprayer | 1 Year | 3 | Pump Up Sprayer | | $149.94 |
| Sears | 100' Water Hose | 5 Years | 3 | Industrial Pro 5/8" x 100' Water Hose | | $125.78 |
| | Amflo | 6 Years | 4 | Amflow Blow Gun Siphon Sprayer | | |

Aircraft parts & equipment inventory list (faxed spreadsheet — faint, rotated)

| Vendor | Part No. | Age / Condition | Qty | Description | Price |
|---|---|---|---|---|---|
| Champion | 2512 | New- 3 Years | 5 | Thread Lubricant | $347.50 |
| Airwolf | W315F | 8 Years | 1 | Air - Oil Seperator | $625.00 |
| LYC | LW13743 | 6 Years | 1 | Oil Screen Conversion Kit | $719.95 |
| LYC | M2121 | 5 Years | 1 | B2X 86-20/S-200 Ignition Harness | $529.00 |
| Cont | M1780 | 4 - 10 Years | 3 | CONT C-75,C85,C90,O-200 Ignition Harnesses | $1,107.00 |
| Ford | Multiple | 5 - 20 Years | 2 | Ford Alternators | $960.00 |
| Champion | C26 | New | 12 | Champion Spark Plugs | $600.00 |
| Aeroquip | Hydraulic | New | Multiple | Assorted Hydraulic Hoses & Fittings | $2,000.00 |
| Grainger | 7x28 | 5 Years | Multiple | Quartz Halogen Magnifier Light Clamp On Base | $2,109.00 |
| Global Industrial Corp | Bayco | 3 - 14 Years | Multiple | Portable Quartz Halogen Shop Work Lights | $406.75 |
| Aircraft Spruce | Cessna | 5 Years | 1 | Towbar - Cessna | $54.95 |
| Aircraft Spruce | T-100 | 9 Years | 1 | Ground Support Towbar | $387.50 |
| Aircraft Spruce | Redline | 3 Years | 1 | Universal Towbar w/Ring Hitch | $237.95 |
| Aircraft Spruce | Piper | 8 Years | 1 | Redline BK-4 Towbar | $399.00 |
| Aircraft Spruce | Aeronca 7 AC | 19 Years | 1 | Universal Towbar | $159.95 |
| Wag Aero | Aeronca 7AC | New | Set | Tail Springs D-208-000 | $152.25 |
| Wag Aero | 1-912-100,1-912-200 | New | 1 | Replacement Windows | $503.00 |
| Wag Aero | 1-340-000 | New | 2 | AK-451 | $685.00 |
| Aircraft Spruce | P-N 66-50 | New | 6 | Engine Baffling Material | $79.90 |
| Wag Aero | Multiple | New | Multiple | Cessna Spinner W/ Back Plates | $199.50 |
| Wag Aero | Multiple | Used | 2 sets | Cleveland Wheel & Brake For Cessna 150 | $1,800.00 |
| Wag Aero | Multiple | Used | 1 | Drum Style Brake Lining | $332.40 |
| Wag Aero | Multiple | 24 Years | Multiple | Assorted Cleveland & Rapco Brake Linings | $2,197.00 |
| Wag Aero | Multiple | 1 - 45 Years | Multiple | Harness & Seat Belts | $345.00 ($120.00) |
| Multiple | Multiple | Used | Multiple | Complete Engine Baffling For 1974 Cessna 150 | $1,000.00 |
| Superior | Multiple | New | 1 | Exhaust System For Cessna 150 | $1,095.00 |
| Wag Aero | Multiple | 24 Years | 1 | Maule Fabric Tester | $292.50 |
| Multiple | Multiple | 1 - 45 Years | Multiple | Safety Wire & Safety Wire Tools | $196.50 |
| Multiple | Multiple | Used | Multiple | Instrument Components | $3,841.15 |
| Multiple | Multiple | New | 1 | Engine OH'l Gaskets And Seals | $3,500.00 |
| Jet | JYDS-14C-SW | 1 - 30 Years | 1 | Jet Band Saw | $1,690.00 |
| Jet | JOP-17-MFW | 1 - 30 Years | 1 | Jet Drill Press | $936.50 |
| Sears | 10' | 35 Years | 1 | Sears Craftsman Table Saw | $649.99 |
| Singer | 191-D | 8 Years | 1 | Singer 191-D Straight Stitch Upholstery & Fabric Sewing Machine | $619.50 |
| Dewalt | 14" | 5 Years | 1 | Dewalt Chop Saw 14" | $637.00 |
| Dewalt | 20-415 in L | New & used | 1 | Dewalt Sliding Compound Miter Saw | $2,000.00 |
| Whelen | Multiple | 1 - 36 Years | Multiple | Assorted Nav Lights, Bulbs, Beacons | $2,300.00 |
| Various | Multiple | 1 - 40 Years | Multiple | All Office Stationary & Printed Billing Forms & FAA Forms, Metal Desks, Rolodexes, Contact Info Records | $1,310.00 |
| Various | Multiple | 8 - 30 Years | 5 | All CFI Instruction Aids & Related Materials | $1,503.95 |
| Various | Kool | New | 2 | Tool Boxes | $57.50 |
| Wag Aero | RV - 10 | New | 2 Pair | Kool Scoop Window Vents | $792.00 |
| Wag Aero | SAS-440 | New | 1 | Sun Visor | $324.00 |
| Wag Aero | Sig SPG22 | New | 1 | Panel Mount Intercom | $187.00 |
| Wag Aero | Multiple | Used | Multiple | Transcom II Portable | $3,600.00 |
| Wag Aero | Multiple | New & Used | Multiple | Multiple Aircraft Antennas | $280.00 |
| Wag Aero | Multiple | New & Used | Multiple | Facet Electric Fuel Pumps | $660.00 |
| Tempest | Multiple | New | 2 | Tempest Remanufactured Fuel Pumps | $404.25 |
| Aero Classics | Multiple | New | 1 | Aero Classics Oil Coolers | $86.95 |
| Airwolf | Multiple | Used | 8 | Airwolf Air- Oil Seperator- Piper | $22.95 |
| Ez-Heat, Inc. | Multiple | 1 - 22 Years | Multiple | Ez-Heat Engine Heater | $140.00 |
| Wag Aero | Multiple | 27 Years | 1 | Magneto Timing Tools | $188.90 |
| Wag Aero | Multiple | New | Multiple | Differential Cylinder Tester W/ Hose | $150.00 |
| Wag Aero | ATI 6701 | New | 4 | Lord Engine Mount Rubbers | $2,000.00 |
| Wag Aero | ATS 212F8 | 11 Years | 1 | Saf - T - Stop Seat Rail Step | $473.00 |
| Rapco | RA716 | 5 Years | 5 | Piping Tool | $253.00 |
| Rapco | RA BRT | 1 - 15 Years | Multiple | Vacuum Pump Wrench | $115.00 |
| Wag Aero | Sig 7 Years | 2 Years | 1 | Brake Rivet Tool | $660.00 |
| Aircraft Spruce | Grommets | New | Multiple | Bog Jack Pad | $404.25 |
| Piper | PA-24-250 | Used | 2 | Instrument Pannel Grommets & Regular Misc Size Hole Grommets | $86.95 |
| | | | | Pilot & Co- Pilot Seats | $2,000.00 |

# EXHIBIT "B"



P. O. Box 130246
The Woodlands, Texas 77393-0246

A PROFESSIONAL CORPORATION

Office: (281) 367-7732
Facsimile: (281) 367-8003

Gary Linn Evans
E-mail: evans@texasaviationlaw.com

Direct: (832) 541-8037

June 4, 2014

Mr. Bill Shipp
City Manager
City of Bonham, Texas
514 Chestnut
Bonham, Texas 75418

*Via CMRRR No. 7013 1090 0000 2669 1742*
*Via Email: bonhamcitymanager@cableone.net*
*and Via Facsimile No. 903-583-5761*

Re:   **NOTICE, DEMAND, AND PROOF OF CLAIM:** Sydney B. Hale and Stephen Hale, d/b/a H&M Aircraft Service; Hangar Collapse of December 8, 2013 at the City of Bonham Municipal Airport, Bonham Texas.

Dear Mr. Shipp:

The undersigned and this law firm represent Sydney and Stephen Hale, d/b/a H&M Aircraft Service (the "Hales") regarding the above-referenced matters. Please direct all future correspondence regarding this matter to the undersigned at the address, e-mail address, and/or facsimile number stated herein. Hereinafter, "you," "your," "City of Bonham," and/or the "City" shall refer to the City of Bonham, Texas.

As you are certainly aware, on or about December 8, 2013, the hangar in which the Hales were conducting their aircraft repair and maintenance business at the City of Bonham Municipal Airport collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The hangar was used to conduct the Hales' aircraft related business and store multiple aircraft. After several months of correspondence with you and with others, on your behalf, we have been unable to reach an acceptable agreement resolving the damages sustained by the Hales, in whole or in part.

While you have previously received actual notice of the Incident and the Hales' damages caused by the Incident, this correspondence shall serve as formal, written notice of the Hales' claims against the City of Bonham, including, but not limited to, any claims arising under the Texas Tort Claims Act. A preliminary listing of all of the items the Hales claim to be missing, lost, stolen, damaged, or otherwise responsible for the aggregate of the claimed economic losses has previously been provided, and is also attached hereto for your convenience.

Mr. Bill Shipp
City Manager
City of Bonham, Texas
June 4, 2014
Page 2

Prior to the Incident, the Hales informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed the Hales to immediately vacate the premises and to stay out of the hangar. There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the hangar collapsed. Such action represents and assumption of complete command and control over the premises. The City's failure to reasonably protect the hangar from further collapse caused the damages incurred by the Hales, at least in part.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to the Hales. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

This correspondence additionally serves as a final attempt to reach an acceptable offer of resolution, including, but not limited to, full payment of the damages incurred by the Hales as a result of the City's actions and/or failure to act, as well as the availability of hangar space at the Bonham Airport as to the Hales for and in support of their aircraft maintenance business. The Hales have been conducting their maintenance business at the Airport for many decades. The availability of hangar space to continue their business is a key material aspect to any potential solution to the issues that have arisen as a result of the Incident. However, Airport personnel seem to take particular delight in frustrating and impeding the Hales' attempts at continuing their business, completely unnecessarily so in our view.

We anticipate your prompt cooperation with an attention to these matters. If we fail to receive a response from you within thirty (30) days of the receipt of this notice, we will proceed with all judicial measures available to recover compensation for all of the damages you have caused the Hales, all as allowed and set forth under the Texas Tort Claims Act.

Sincerely,

COATS & EVANS, P.C.

*/s/ Gary L. Evans*

Gary L. Evans

Encl.

Mr. Bill Shipp
City Manager
City of Bonham, Texas
June 4, 2014
Page 3

cc:     Michael Grady, U.S. Specialty Insurance Company (*Via Email:* mgrady@HCC.com)
        Patrick Montgomery, AviationLS (*Via Email:* patrick.montgomery@aviationls.com)

EXHIBIT "C"

CAUSE NO. CV-14-41722

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR | § | |
| | § | |
| Defendant. | § | 336th JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S FIRST AMENDED PETITION FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, City of Bonham and files this First Amended Petition against Defendant, Sidney B. Hale, Jr. ("Hale" or "Defendant"), seeking declaratory judgment relief, and in support thereof would show as follows:

### I. DISCOVERY PLAN

1.     This matter shall proceed under a Level 2 Discovery Plan.

### II. JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to the Texas Declaratory Judgment Act. Venue is appropriate in this Court because the subject property is located within the boundaries of Fannin County, Texas.

### III. PARTIES

3.     Plaintiff is the owner of the property which is the subject of this lawsuit.

4.     Defendant is a resident of Fannin County, Texas and may be served at 910 E. 11th Street, Bonham, Fannin County, Texas 75418.

### IV. FACTS

5.     City of Bonham owns a Quonset hangar on the grounds of the City of Bonham Airport (the "Quonset Hangar"). By lease dated on or about June 18, 1984, Hale leased the

From: Sheree Corrales          Fax: (972) 532-6484          To: +12813678003          Fax: +12813678003          Page 18of 36 11/25/2014 3:06

Quonset Hangar from the City of Bonham ("the Lease"). A true and correct copy of The Lease is attached hereto as Exhibit "A." Paragraph 4 of the lease incorporates into the Lease the terms of the Rules and Regulations of the Bonham Municipal Airport, attached hereto as Exhibit "B."

6. The Lease by its terms expired 5 years after it was first signed. However, both parties continued performing under the Lease on a month-to-month basis.

7. On February 13, 2012, The City Council of the City of Bonham adopted new Airport Rules and Regulations (the "2012 Airport Rules and Regulations"), a true and correct copy of which are attached hereto as Exhibit "C." Section 8 of the Airport Rules and Regulations implies knowledge of them to people using the Bonham Municipal Airport. Section 7-6 contains language eliminating any liability of the City of Bonham for any damage to persons or property.

8. After passage of the 2012 Airport Rules and Regulations, both parties continued to perform under the Lease.

9. On December 6, 2013, a severe ice storm impacted the Bonham Municipal Airport, causing widespread damage (the "Incident"). The roof of the Quonset Hangar collapsed as a result of the Incident. Defendant claims over $400,000.00 in damages from City of Bonham as a result of the collapse, notwithstanding that City of Bonham has pointed out the Hold Harmless language in the 2012 Airport Rules and Regulations eliminating any claim he might have.

10. On June 4, 2014, Hale's counsel sent a demand letter making a claim against Plaintiff under the Texas Tort Claims Act. This letter is attached hereto as Exhibit D.

11.    Plaintiff has exhausted its attempts to secure Defendant's compliance with the terms of the Lease and 2012 Airport Rules and Regulations, and is without further remedy, save and except the intervention of this Court.

## V. CAUSE OF ACTION – REQUEST FOR DECLARATORY JUDGMENT

12.    This action is being brought pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.  Section 37.004 of that Chapter states, in relevant part, that "A person interested under a…written contract…or whose rights, status or other legal relations are affected by a …contract…may have determined any question of construction or validity arising under the …contract…and obtain a declaration of rights, status or other legal relations thereunder."

13.    In this matter, Defendant takes the position that he is not bound by the terms of the Lease and, specifically, the Hold Harmless provision of the 2012 Airport Rules and Regulations.

14.    In contrast, the City of Bonham asserts that the Hold Harmless language does apply either as a part of the Lease under principles of contract construction, under the doctrine of ratification, or under the doctrine of subordination of contractual rights to local rules, laws and ordinances.

15.    Sovereign immunity protects governmental entities from lawsuits for money damages. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Political subdivisions of the state, including cities, are entitled to governmental immunity unless it has been waived. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). Sovereign immunity encompasses immunity from suit, which bars a suit unless the governmental entity has consented, and immunity from liability, which protects the entity from

From: Sheree Corrales    Fax: (972) 532-6484                To: +12813678003            Fax: +12813678003        Page 2 of 36 11/25/2014 3:06

judgments even if it has consented to the suit. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

16. Section 101.021(2) of the Texas Tort Claims Act (The "Act") provides that a governmental unit is liable for "personal injury and death" arising out of the condition or use of tangible personal or real property. Property damage, as Hale claims here, is not recoverable. And while Section 101.0215(10) of the Act does include airports as a governmental function of a municipality, that liability must still arise out of Section 101.021. See, e.g., *City of Kemah v. Vela*, 149 S.W.3d 199, 203-04, n. 1 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

17. Moreover, even if sovereign immunity had been waived, Hale would be limited in his damages. Under the terms of the Lease, he would not be able to maintain a claim for any damages. Moreover, under Section 101.023(d) of the Act, liability for property damages against a municipality is limited to $100,000.

18. This is a live, genuine controversy because the determination of this issue directly affects the ongoing relationship between the parties.

19. Plaintiff requests the Court enter the following judicial declarations:

    (a)     The Lease adopts the 2012 Airport Rules and Regulations.

    (b)     By the terms of section 7-6 the 2012 Airport Rules and Regulations, Hale has no claim against City of Bonham as a result of the Incident.

    (c)     Plaintiff is immune from suit under the concept of sovereign immunity.

## VI. REQUEST FOR ATTORNEY'S FEES

20. Plaintiff requests that this Court award Plaintiff its reasonable costs and attorney's fees pursuant to the Texas Declaratory Judgment Act and Chapter 38 of the Texas Civil Practice and Remedies Code.

From: Sheree Corrales     Fax: (972) 532-6484          To: +12813678003          Fax: +12813678003          Page 21 of 36 11/25/2014 3:06

## VII. CONDITIONS PRECEDENT

21.    All conditions precedent to Plaintiff being entitled to bring this action and recover the relief requested herein have been performed, have occurred or have been waived.

## VIII. PRAYER

WHEREFORE, Premises Considered, Plaintiff respectfully requests that the Court enter the judicial declarations requested hereinabove and award Plaintiff its reasonable and necessary costs and attorneys fees, and for such other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

HELMES & GREENE, LLC

John Reenan
Texas State Bar No. 00789777
jreenan@helmsgreene.com
Christopher S. Kilgore
Texas State Bar No. 11398350
ckilgore@helmsgreene.com
1700 Pacific Ave., Suite 3740
Dallas, Texas 75201
Telephone: (214) 466-7910
Facsimile: (214) 466-7915

**ATTORNEYS FOR PLAINTIFF
CITY OF BONHAM**

# EXHIBIT "D"

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## DEFENDANT SIDNEY B. HALE, JR.'S ORIGINAL COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Sidney B. Hale, Jr. ("Mr. Hale" and/or "Defendant" and/or "Counterplaintiff") and files this his Original Counterclaim against the City of Bonham, Texas (the "City" and/or "Plaintiff" and/or "Counterdefendant"), and in support thereof, would respectfully show this Court the following:

### I. LEVEL TWO CASE

Mr. Hale requests that this case be designated as a Level Two case for discovery purposes pursuant to Tex. R. Civ. P. 190 *et. seq.*

### II. PARTIES

Defendant/Counterplaintiff is an individual residing in Fannin County, Texas.

Plaintiff/Counterdefendant is located in Fannin County, Texas and is duly organized and acting under the laws of the State of Texas. Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving Counterdefendant's attorney of record, Mr. John Reenan, Helmes & Greene, LLC, 1700 Pacific Ave., Suite 3740, Dallas, Texas 75201.

1

## III.   JURISDICTION

This Court has jurisdiction over this matter pursuant to Sections 101.001 *et. seq.* of the Texas Civil Practice and Remedies Code because the Texas Legislature waived Counterdefendant's sovereign immunity for claims involving negligence and premises defects.

The City is a governmental unit and owner of the premises. The condition of the roof of the Hanger constitutes a premises defect. More specifically, the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use and posed an unreasonable risk of harm. The City knew or should have known of the danger.

The City owed Mr. Hale the duty owed to an invitee under Texas law. The City breached the duty owed to Mr. Hale by not adequately warning Mr. Hale of the condition and not making the condition reasonably safe. The City's breach proximately caused Mr. Hale's injuries. If it were a private person, the City, would be liable under Texas law.

No exception to the wavier of immunity bars the claim because no exception applies or an exception to an exception reinstates the wavier. Notice was provided as required by the Texas Tort Claims Act.

## IV.   VENUE

Venue is appropriate in Fannin County, Texas because the property which is the subject of the present suit is located in Fannin County, Texas and all, or substantially all, of the events giving rise to this litigation occurred in Fannin County, Texas.

## V.   NOTICE

Plaintiff/Counterdefendant was provided with notice of the claim in accordance with Tex. Civ. Prac. & Rem. Code §101.101, and/or received actual notice of the claim prior to this

2

litigation.

## VI. BACKGROUND FACTS

Plaintiff/Counterdefendant is the owner of a hangar on the grounds of the City of Bonham Airport (the "Hangar"). On or about June 18, 1984, Mr. Hale entered into a lease agreement with the City for the Hangar (the "Lease"). The Lease, by its own terms, expired after five years.

On or about December 8, 2013, the Hangar roof collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The Hangar was used to conduct Mr. Hale's aircraft repair and maintenance business and to store multiple aircraft.

Prior to the Incident, Mr. Hale informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the Hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the Hangar collapsed. Such action represents and assumption of complete command and control over the premises. The City's failure to reasonably protect the Hangar from further collapse caused the damages incurred by Mr. Hale, at least in part.

Additionally, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to his personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not

3

been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

## VII. CAUSES OF ACTION

Defendants' acts and omissions have given rise to the following:

### Negligence

Mr. Hale will show that the foregoing constitutes negligence as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

As owner of the Hangar, the City owed a duty of reasonable care to Mr. Hale. The City had a duty to maintain the premises in a reasonably safe and habitable condition. The City breached its duties to Mr. Hale. As a result of the City's breach, Mr. Hale incurred damages.

### Premises Defect

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes a premises defect as that term is used and understood by the Courts of this State.

The City is a governmental unit and owner of the premises. The condition of the roof of the Hanger constitutes a premises defect. More specifically, the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been

4

inspected in decades, making the hangar unsafe for occupancy and/or use and posed an unreasonable risk of harm. The City knew or should have known of the danger.

The City owed Mr. Hale the duty owed to an invitee under Texas law. The City breached the duty owed to Mr. Hale by not adequately warning Mr. Hale of the condition and not making the condition reasonably safe. The City's breach proximately caused Mr. Hale's injuries. If it were a private person, the City, would be liable under Texas law.

No exception to the wavier of immunity bars the claim because no exception applies or an exception to an exception reinstates the wavier. Notice was provided as required by the Texas Tort Claims Act.

### Breach of Contract/Promissory Estoppel

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, to the extent the Court determines there is a valid and enforceable contract between the parties, the foregoing constitutes breach of contract and promissory estoppel as those terms are used and understood by the Courts of this State. In pertinent part, the City claims a lease agreement between the parties for lease of the Hangar.

The City breached the contract(s) described in the preceding paragraph when the City defaulted under the terms of the Agreement and refused to keep the Hangar in a safe condition. Mr. Hale substantially relied upon the promises made by the City to their detriment, which reliance was foreseeable by the City, which represents an action under the theory of promissory estoppel as well. Upon information and belief, the City had no intention of performing under the terms of the agreement at the time the City entered into the contract with Mr. Hale. Consequently, the City should be held liable for its breach of the contract(s).

5

As a result of the City's breach of contract/promissory estoppel, Mr. Hale has suffered damages within the jurisdictional limits of this Court. Additionally, pursuant to Tex. Civ. Prac. & Rem. Code §38.001 *et. seq.*, Mr. Hale requests that this Court, upon trial of this matter, award it the reasonable and necessary attorneys' fees, legal expenses, and costs of court incurred in seeking the recovery for the City's breach of contract.

## Damages Based Upon Unjust Enrichment

In addition to, and without prejudice to the foregoing, Mr. Hale seeks recovery of its damages pursuant to the theory of unjust enrichment. The preceding is incorporated by reference as if fully copied and set forth at length.

The City agreed to provide a reasonably safe and habitable hangar space to Mr. Hale in exchange for monthly lease payments.

Although the City refused to maintain the premises in a safe and habitable condition, the City continued to avail itself of all of the services, benefits and privileges provided by Mr. Hale. The City has been, and continues to be, unjustly enriched unless the Court requires it to pay for such use and benefits.

Mr. Hale hereby seeks recovery of the reasonable value of the services, benefits and privileges by which the City has been unjustly enriched at least in an amount equal to the damages incurred by Mr. Hale. Mr. Hale additionally seeks recovery of all of its attorneys' fees and legal expenses incurred to recover the value of such services, benefits and privileges by which the City has been unjustly enriched, pursuant to the provisions of Texas Civil Practice and Remedies Code §38.001, et seq.

The events leading up to and amounting to such unjust enrichment are proximately responsible for the damages sustained by Mr. Hale in this matter.

6

## Violations of the Texas Deceptive Trade Practices Act

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes violation of the Texas Deceptive Trade Practices Act (the "DTPA").

The City violated the DTPA when it engaged in false, misleading, or deceptive acts or practices that Mr. Hale relied on to his detriment. Specifically, the City failed to keep the Hanger in which Mr. Hale operated his business reasonably safe and habitability. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use. The City further breached an express and/or implied warranty that the premises would be reasonably safe and fit for occupancy.

The City further violated the DTPA when it engaged in an unconscionable action or course of action that, to Mr. Hale's detriment, took advantage of Mr. Hale's lack of knowledge, ability, expertise, or capacity to a grossly unfair degree. Specifically, the City failed to maintain the premises in a reasonably safe condition. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use.

The City's wrongful conduct was a producing cause of Mr. Hale's damages.

Mr. Hale would also show that the City acted "intentionally" and "knowingly" as those terms are defined in the DTPA. Mr. Hale would show that the City committed unconscionable actions "intentionally" and "knowingly." Mr. Hale seeks recovery of actual damages, economic damages, statutory damages, mental anguish, treble damages, and attorneys' fees for the City's violations of the DTPA.

As a direct and proximate result of these actions, the City has violated the provisions of the Texas Deceptive Trade Practices Act and Mr. Hale has been damaged in the manner and

7

amount as described above.

## Gross Negligence

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes gross negligence as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

As owner of the Hangar, the City owed a duty of reasonable care to Mr. Hale. The City had a duty to maintain the premises in a reasonably safe and habitable condition. The City breached its duties to Mr. Hale. As a result of the City's breach, Mr. Hale incurred damages.

The City failed to keep the Hanger in which Mr. Hale operated his business reasonably safe and habitability. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use. The City's negligence posed an extreme degree of risk and potential harm to others resulting in the likelihood of serious injury to any occupants of the Hangar. The City acted with conscious indifference to the rights, safety or welfare of others.

The wrongful conduct and gross negligence of the City proximately caused the damages incurred by Mr. Hale.

## Bailment

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes bailment as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

Upon notice of the deteriorating condition of the hangar, the City instructed Mr. Hale to

8

From: Sheree Corrales    Fax: (972) 532-6484    To: +12813678003    Fax: +12813678003    Page 31 of 36 11/25/2014 3:06

immediately vacate the premises and to stay out of the Hangar. Such action represents and assumption of complete command and control over the premises, as well as delivery and acceptance of the personal property within the hangar. Mr. Hale vacated the premises as demanded by the City with the understanding that the structure would be repaired and then returned to the control of t Mr. Hale, with all of its contents intact.

The City exercised control and dominion over the Hanger and its contents, yet failed to return the property, in an undamaged condition, to Mr. Hale. Indeed, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to their personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

The events leading up to and amounting to such bailment are proximately responsible for the damages sustained by Mr. Hale in this matter.

## VIII. CONDITIONS PRECEDENT

All conditions precedent have been performed or have occurred prior to Mr. Hale bringing suit as required by the Tex. Civ. Prac. & Rem. Code.

## IX. ATTORNEYS' FEES

The preceding is incorporated by reference as if fully copied and set forth at length. As a result of the events giving rise to this complaint, Mr. Hale has been required to retain the services of counsel to prosecute this action. Mr. Hale additionally sues for reasonable attorneys' fees and legal expenses for the prosecution of this action to judgment and for any appeal therefrom.

## X. AMEND PLEADINGS

Mr. Hale reserves the right to amend these pleadings.

9

## XI. DEMAND FOR JURY TRIAL

Mr. Hale hereby makes demand for jury trial, as is his right under the Constitution and laws of the State of Texas, and in accordance with Tex. R. Civ. P. 216(a), and tenders the required jury fee concurrently herewith.

## XII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant/Counterplaintiff, Sidney B. Hale, Jr. respectfully requests that Plaintiff/Counterdefendant, the City of Bonham, Texas, be cited to appear and answer and that, on final trial, Mr. Hale have the following:

1. Judgment against Plaintiff/Counterdefendant for damages in an amount within the jurisdictional limits of this Court, jointly and severally;

2. Judgment against Plaintiff/Counterdefendant in an amount within the jurisdictional limits of this Court as special damages, jointly and severally;

3. Judgment against Plaintiff/Counterdefendant for exemplary and enhanced damages to the maximum extent permitted by law, jointly and severally;

4. Prejudgment interest as provided by law, jointly and severally;

5. Post judgment interest as provided by law, jointly and severally;

6. Costs of suit, jointly and severally;

7. Attorneys' fees and legal expenses to the maximum extent permitted by law, jointly and severally; and

8. All such other and further relief, general or special, at law or in equity, to which Mr. Hale may be justly entitled.

10

Respectfully submitted,

COATS & EVANS, P.C.

*/s/ Gary L. Evans*
_____

Gary Linn Evans
Texas Bar No. 00795338
Email: evans@texasaviationlaw.com
George Andrew Coats
Texas Bar No. 00783846
Email: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone: 281-367-7732
Facsimile: 281-367-8003

**ATTORNEYS FOR DEFENDANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 12th day of November, 2014.

*/s/ Gary L. Evans*
_____

Gary L. Evans

Mr. John Reenan
jreenan@helmsgreene.com
Mr. Christopher S. Kilgore
ckilgore@helmsgreene.com
HELMS & GREENE, LLC
1700 Pacific Ave., Suite 3740
Dallas, Texas 75201
Telephone: 214-466-7910
Facsimile: 214-466-7915

*Via Electronic Filing and/or
Facsimile No. 214-466-7915*

11

# HELMS & KILGORE, PLLC

2201 Main Street, Suite 212
Dallas, Texas 75201
972.532.6484 T
972.532.6496 F

Dottie Sheffield
*dsheffield@helmskilgore.com*

November 25, 2014

***Via Electronic Filing***
Fannin County District Clerk
101 E. Sam Rayburn Drive, Suite 201
Bonham, Texas 75418

> Re:  Cause No. CV-14-41722
> *City of Bonham v. Sidney B. Hale, Jr.*
> In the 336th District Court, Fannin County, Texas

Dear Clerk:

Attached please find a Fiat to set Plaintiff's Partial Motion for Summary Judgment for hearing with regard to the above-referenced matter for signature by the Judge. Plaintiff's Partial Motion for Summary Judgment has been filed contemporaneously herewith.

Feel free to call if you should have any questions. Thank you for your assistance in this regard.

Sincerely,

Dottie Sheffield

DS/sc
Attachment

CC:

***Via Facsimile:  281-367-8003***
Gary Lynn Evans
George Andrew Coats
Coats & Evans, PC
P.O. Box 130246
The Woodlands, TX   77393

Texas - Georgia

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR | § | |
| | § | |
| Defendant. | § | 336th JUDICIAL DISTRICT |
| | § | |

## FIAT

It is hereby ordered that a hearing on Plaintiff City of Bonham's Partial Motion for Summary Judgment be set on the _____ day of _____, 201____ at

_____.

SIGNED this _____ day of _____, 201____.


_____
**JUDGE PRESIDING**

# APPENDIX
# A11

CAUSE NO. CV-14-41722

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## DEFENDANT SIDNEY B. HALE, JR.'S RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Sidney B. Hale, Jr. ("Mr. Hale" and/or "Defendant") and files this his Response to Plaintiff City of Bonham's (the "City" and/or "Plaintiff") Partial Motion for Summary Judgment, and in support thereof, would respectfully show this Court the following:

## I.
## JURISDICTIONAL FACTS

This Court has jurisdiction over this matter pursuant to Sections 101.001 *et. seq.* of the Texas Civil Practice and Remedies Code because the Texas Legislature waived Plaintiff's sovereign immunity for claims involving negligence and premises defects.

The City is a governmental unit and owner of the premises. The condition of the roof of the Hanger constitutes a premises defect. More specifically, the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use and posed an unreasonable risk of harm. The City knew or should have known of the danger.

The City owed Mr. Hale the duty owed to an invitee under Texas law. The City breached the duty owed to Mr. Hale by not adequately warning Mr. Hale of the condition and not making

1

the condition reasonably safe. The City's breach proximately caused Mr. Hale's injuries. If it were a private person, the City, would be liable under Texas law.

No exception to the wavier of immunity bars the claim because no exception applies or an exception to an exception reinstates the wavier. Notice was provided as required by the Texas Tort Claims Act.

## II.
## BACKGROUND FACTS

Plaintiff is the owner of a hangar on the grounds of the City of Bonham Airport (the "Hangar"). On or about June 18, 1984, Mr. Hale entered into a lease agreement with the City for the Hangar (the "Lease"). The Lease, by its own terms, expired after five years.

On or about December 8, 2013, the Hangar roof collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The Hangar was used to conduct Mr. Hale's aircraft repair and maintenance business and to store multiple aircraft.

Prior to the Incident, Mr. Hale informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the Hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the Hangar collapsed. Such action represents an assumption of complete command and control over the premises, to the complete and total exclusion of all other persons and entities. The City's failure to reasonably protect the Hangar from further collapse caused the damages incurred by Mr. Hale, at least in part.

2

Additionally, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to his personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

### III.
### ARGUMENT AND AUTHORITIES

Sovereign immunity protects the State, its agencies and officials, and political subdivisions of the State from suit, unless immunity from suit has been waived. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). The sovereign immunity of the State inures to the benefit of a municipality insofar as the municipality engages in the exercise of governmental functions, except when that immunity has been waived. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000); *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997); *see also City of Houston v. Rushing*, 39 S.W.3d 685, 686 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (stating, "The City of Houston, as a home-rule municipality, is generally immune from both suit and liability in its governmental functions.").

The Texas Tort Claims Act ("TCA") establishes certain waivers of governmental immunity. *Likes*, 962 S.W.2d at 494. The entity remains immune unless waived by the TCA. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004). If the City was performing a proprietary function, however, the TCA does not apply. *See City of Corpus Christi v. Absolute Industries*, 120 S.W.3d 1, 4 (Tex.App.—Corpus Christi 2001, pet. denied); *City of El Paso v. Morales*, No. 08-02-00484-CV, 2004 Tex. App. LEXIS 7806, *26-27 (Tex. App.—El Paso Aug. 20, 2004, pet. denied). When a municipality commits a tort while engaged in proprietary functions, it is liable to the same extent as a private entity or individual. *Texas River Barges v. City of San Antonio*, 21 S.W.3d 347, 356 (Tex. App.—San Antonio 2000, pet. denied).

Under Section 101.0215 of the TCA, certain municipal functions are defined as governmental and others as proprietary. *See* Tex. Civ. Prac. & Rem. Code §101.0215. The Texas legislature has defined governmental functions as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public . . . ." Tex. Civ. Prac. & Rem. Code §101.0215(a). Proprietary functions are "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality . . . ." Tex. Civ. Prac. & Rem. Code §101.0215(b); *see also City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex. 1987) (proprietary function is one performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for use by the general public). A municipality retains its immunity for activities which the legislature has defined as governmental, except to the extent immunity is waived by acts, omissions, and conditions as specified in the TCA. *See Williams v. City of Midland*, 932 S.W.2d 679, 682 (Tex. App.—El Paso 1996, no writ); *Morales*, 2004 Tex. App. LEXIS 7806 at *14-15.

Under Texas common law, determining whether a city is performed a proprietary or governmental function has generally been evaluated by examining whether the act performed by the city as the agent of the State in furtherance of general law for the interest of the public at large, or whether it is performed by the city, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for the use by the general public. *See Gladewater*, 727 S.W.2d at 519; *Bailey v. City of Austin*, 972 S.W.2d 180, 192-93 (Tex. App.—Austin 1998, pet. denied). The key difference between a proprietary and governmental function is that the city functions in its governmental capacity when it performs functions mandated by the State. *Truong v. City of Houston*, 99 S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Under the TCA, a municipality is liable for damages arising under certain specified governmental functions, including airports, including when used for space flight activities as defined by Section 100A.001. Tex. Civ. Prac. & Rem. Code § 101.0215(a). Moreover, the TCA states that the proprietary functions of a municipality do not include those governmental activities listed under Subsection (a). Tex. Civ. Prac. & Rem. Code § 101.0215(c). Section 101.0215 lists numerous functions of a city that are designated as governmental. Many courts have held that all activities associated with the operation of one of the government functions listed in section 101.0215(a) are governmental and cannot be considered proprietary, regardless of the city's motive for engaging in the activity. *See e.g., Texas River Barges*, 21 S.W.3d at 356-57) (city's removal of barge company from marina is included within government function of operating a marina and park even if removal was motivated by desire to protect city's profit by exclusive contract with another barge company); *City of Dallas v. Reata Constr. Corp.*, 83 S.W.3d 392, 395 (Tex. App.—Dallas 2002, pet. filed) (marking the location of water main is

encompassed by government function of "waterworks" and water services); *Mitchell v. City of Dallas*, 855 S.W.2d 741, 744 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994) (refusing to consider that some activities related to the operation of a city park might be proprietary where TTCA lists "parks and zoos" as government function). Consequently, all activities related to the City of Bonham's operation of the airport are considered governmental.

The Tort Claims Act provides a limited waiver of immunity for injuries caused by (1) use of publicly owned automobiles, (2) premises defects, and (3) injuries arising out of conditions or use of property. *Miranda*, 133 S.W.3d 217, 225 (Tex. 2004) [emphasis added]; *see also* Tex. Civ. Prac. & Rem. Code § 101.021. The TCA also waives immunity from suit for all claims for which it waives liability. *See id*. at § 101.025; *Morales*, 2004 Tex. App. LEXIS 7806 at *14-15. Liability for premises defects is implied under Section 101.021(2) because a premises defect arises from a condition existing on real property. *City of Midland v. Sullivan*, 33 S.W.3d 1, 6 (Tex. App.—El Paso 2000, pet. dism'd w.o.j.); *Lamar Univ. v. Doe*, 971 S.W.2d 191, 195 (Tex. App.—Beaumont 1998, no pet.); *Perez v. City of Dallas*, 180 S.W.3d 906, 910 (Tex. App.—Dallas 2005, no pet.).

If a claim arises from a premise defect, the governmental unit generally owes the claimant the same duty that a private person owes to a licensee on private property. *See* Tex. Civ. Prac. & Rem. Code § 101.022(a); *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992); *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974). However, the governmental entity owes the claimant the duty owed to an invitee, if the claimant pays for the use of the premises, as is the case here. *See Payne*, 838 S.W.2d at 237; *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 69-70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). If a plaintiff is an invitee, an owner is required to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a

6

premises condition of which the owner is or reasonably should be aware. *Payne*, 838 S.W.2d at 237; *City of Galveston v. Albright*, NO. 14-04-00072-CV, 2004 Tex. App. LEXIS 9693, *8-9 (Tex. App.—Houston [14th Dist.] Nov. 2, 2004, no pet.). In other words, the premises owner or occupier has a duty to keep the premises in a reasonably safe condition and to inspect the premises to discover any latent defects and to make safe any defect or give adequate warning. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983); *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex. 1972). An invitee need only prove that the owner or occupier knew or should have known of the condition. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *City of Houston v. Cogburn*, No. 01-11-00318-CV, 2013 Tex. App. LEXIS 2827, *8 (Tex. App.—Houston [1st Dist.] Mar. 19, 2013, no pet.).

In a premises liability case, the plaintiff must establish (1) a legal duty owed to the plaintiff, (2) breach of that duty, and (3) damages (4) proximately caused by the breach. *See Perez v. DNT Global Star, L.L.C.*, 339 S.W.3d 692, 700 (Tex. App.—Houston [1st Dist.] 2011, no pet.). As with any other negligence action, a defendant in a premises liability case is liable only to the extent it owes the plaintiff a legal duty. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008). As a rule, to prevail on a premises liability claim, a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises. *See Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999) (emphasis added). Moreover, an invitee must establish the following elements to prevail on his premises liability claim: (1) the premise owner or occupier had actual or constructive knowledge of a condition; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately

7

caused the plaintiff's injury. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In the case of a premises liability claim, to establish a waiver of immunity a plaintiff must comply with both §101.021 and §101.022(a). *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.022(a); *see e.g. Tennison*, 509 S.W.2d at 561; *City of Del Rio v. Felton*, No. 04-06-00091-CV, 2007 Tex. App. LEXIS 660, *8 (Tex. App.—San Antonio 2007, no pet.). Under Section 101.021(a), a governmental unit is liable for damages proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if (a) the damages arise from the operation or use of a motor vehicle or equipment; and (b) the employee would be personally liable to the claimant according to Texas law. Tex. Civ. Prac. & Rem. Code §101.021(a). A governmental unit is also liable for damages caused by a condition or use of tangible personal or real property *if the governmental unit would, were it a private person, be liable to the claimant* according to Texas law. Tex. Civ. Prac. & Rem. Code §101.021(b) [emphasis added]. Here, provided all elements of the claim were established at trial, the City would absolutely be liable to Mr. Hale under the facts of this case.

Mr. Hale's status as an invitee carries with it a greater duty of care by the City. Indeed, the City is required to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware. *Payne*, 838 S.W.2d at 237. When Mr. Hale informed the City of the unreasonable unsafe condition of the hangar, the City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. Not only did the City prevent Mr. Hale from taking any action to protect his property from the unreasonable risk of

8

harm posed by the deteriorated roof, the City did absolutely nothing to reduce or eliminate the risk of harm to Mr. Hale. The City assumed complete command and control over the property when they ejected Mr. Hale and all other occupants from the property. The City then barred Mr. Hale from re-entering the property for weeks, allowing all sorts of aircraft grade equipment and tools to be exposed to the elements, either damaging it or losing it completely. To allow the City to avoid liability for such egregious conduct goes against the spirit and intent of the Texas Tort Claims Act. In other words, a City should not be allowed to voluntarily take on proprietary functions, such as the management and leasing of property, operate with conscious indifference to the rights, safety, or welfare of others, then escape all responsibility and liability for its responsibilities and duties to its tenants (and the public). Consequently, the City's Partial Motion for Summary Judgment should be in all respects denied.

## IV.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, Sidney B. Hale, Jr. respectfully requests that Plaintiff, the City of Bonham's Partial Motion for Summary Judgment be in all respects denied. Defendant further requests all such other and further relief, general or special, at law or in equity, to which he may be justly entitled.

9

Respectfully submitted,

**COATS & EVANS, P.C.**

**/s/ *Gary L. Evans***

Gary Linn Evans
Texas Bar No. 00795338
Email: evans@texasaviationlaw.com
George Andrew Coats
Texas Bar No. 00783846
Email: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone:  281-367-7732
Facsimile:  281-367-8003

**ATTORNEYS FOR DEFENDANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 30th day of December, 2014.

**/s/ *Gary L. Evans***

Gary L. Evans

Mr. Christopher S. Kilgore                     *Via Electronic Filing and/or*
Dottie Sheffield                                      *Facsimile No. 972-532-6496*
**HELMS & KILGORE, PLLC**
2201 Main Street, Suite 212
Dallas, Texas 75201
Telephone: 972-532-6484
Facsimile: 972-532-6496

**ATTORNEYS FOR PLAINTIFF
CITY OF BONHAM**

# APPENDIX
# A12

| | | |
|---|---|---|
| CITY OF BONHAM, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## PLAINTIFF CITY OF BONHAM'S
## MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Pursuant to Texas Rule of Civil Procedure 166a(c), Plaintiff, the City of Bonham, files this its Motion for Summary Judgment and requests that the Court grant the City of Bonham's Motion as Sidney B. Hale's ("Defendant/Counter-Plaintiff" and/or "Mr. Hale" and/or "Claimant") claims against the City of Bonham are barred by governmental immunity. In support of this Motion, the City of Bonham would show the Court the following:

### I.
### MOTION FOR SUMMARY JUDGMENT

The City of Bonham moves for summary judgment pursuant to Texas Rule of Civil Procedure 166a(c) on the grounds that there is no genuine issue of material fact that it is a governmental unit, and Mr. Hale's counter-claims against the City of Bonham for breach of contract, violations of the Deceptive Trade Practices Act, bailment, and unjust enrichment are precluded by governmental immunity unless that immunity is waived. Under the facts of this case, governmental immunity has not been waived.

Plaintiff's Motion for Summary Judgment

## A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *see Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301-02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, the evidence and its reasonable inferences are viewed in the light most favorable to the non-movant. *See Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *See Great Am.*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See City of Houston*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant movant

Plaintiff's Motion for Summary Judgment

must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to present competent controverting evidence that proves the existence of a genuine issue of material fact on the element challenged by the defendant. *Centeq Realty*, 899 S.W.2d at 197.

## B.    Background Information

The City of Bonham owns a Quonset hangar on the grounds of the City of Bonham Airport (the "Quonset Hangar"). On or about June 18, 1984, Mr. Hale entered into a contract to lease the Quonset Hangar from the City of Bonham (the "Lease"). A true and correct copy of the Lease is attached hereto as *Exhibit "A."*

On December 6, 2013, a severe ice storm impacted the Bonham Municipal Airport causing widespread damage (the "Incident"). The roof of the Quonset Hangar collapsed as a result of the Incident. Mr. Hale claims over $400,000.00 in property damages from the City of Bonham as a result of the collapse.

On or about June 12, 2014, the City of Bonham filed a First Amended Petition for Declaratory Judgment which requested the Court declare that the Lease adopted the 2012 Airport Rules and Regulations which contains a Hold Harmless provision. *Exhibit "B."*

On or about November 12, 2014, Mr. Hale filed counterclaims against the City of Bonham for a breach of contract/promissory estoppel cause of action, for allegedly defaulting under the terms of the Lease of the Quonset Hanger and refusing to keep the hangar in a safe condition. Mr. Hale alleges he suffered damages within the jurisdictional limits of this Court. Additionally, he seeks attorneys' fees, legal expenses, and costs of court incurred in seeking recovery for the City of Bonham's alleged breach of contract. *Exhibit "C."*

Additionally, Mr. Hale filed a counterclaim against the City of Bonham for violations of the Texas Deceptive Trade Practices Act (the "DTPA"), alleging that the City of Bonham violated the DTPA when it engaged in false, misleading, or deceptive acts or practices that Defendant relied on to his detriment. *Exhibit "C."*

Mr. Hale also alleges that the City of Bonham exercised of control over the hangar and its contents and its alleged failure to return Mr. Hale's property amounts to bailment, making the City of Bonham responsible for the damages allegedly sustained by him. *Exhibit "C."*

Lastly, Mr. Hale is seeking recovery of his damages based upon the theory of unjust enrichment. Mr. Hale alleges that the City of Bonham agreed to provide him a reasonably safe and habitable hangar space in exchange for monthly lease payments. Mr. Hale alleges that the City of Bonham refused to maintain the premises in a safe and habitable condition, but continued to avail itself of all the services, benefits and privileges allegedly provided by Mr. Hale and, therefore, the City of Bonham was unjustly enriched. *Exhibit "C."*

C.    **Governmental Immunity Protects the City of Bonham from Mr. Hale's Breach of Contract Claim**

Political subdivisions of the state, including cities, are entitled to governmental immunity unless it has been waived. *Wichita Falls State Hospital v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Although a governmental unit may waive immunity from liability by entering into a contract with a private party, if the Legislature has not waived immunity from suit, no suit can be maintained. *City of*

Plaintiff's Motion for Summary Judgment

*Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *Texas DOT v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477,484 (Tex. 2002); *Texas Nat. Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). When the legislature provides for a waiver of immunity from suit, it must do so with clear and unambiguous language, and any ambiguity must be resolved in favor of retaining immunity. TEX. LOC. GOV'T CODE ANN. §311.034(Vernon Supp. 2007)("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of governmental immunity unless the waiver is effected by clear and unambiguous language."); *Kirby Lake Dev., Ltd. v. Clear Lake City Water*, 320 S.W.3d 829, 837 (Tex. 2010); *Tooke* at 328-29; *Wichita Falls State Hosp.* at 697.

The legislature has authorized cities to enter into contracts, including leases of real property. TEX. LOC. GOV'T CODE ANN. §§51.014, 51.015 (West 2005). But, a governmental entity does not waive immunity from suit simply by contracting with a private party. *Travis Cnty. v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 248 (Tex. 2002). The legislature has waived governmental immunity only in certain types of contract suits. *City of Dallas v. Albert*, 354 S.W.3d 368, 377 (Tex. 2011); see also *Lower Color. River Auth. v. City of Boerne, Tex.*, 422 S.W.3d 60, 65 (Tex. App.—San Antonio 2014, pet. filed)(citing *City of San Antonio ex rel. City Pub. Serv. Bd. v. Wheelabrator Air Pollution Control, Inc.* 381 S.W.3d 597, 605 (Tex. App.—San Antonio 2012, pet. denied).

Claimant bears the burden to prove facts that demonstrate that governmental immunity has been waived and that the court has subject matter jurisdiction. *City of Dallas v. Turley*, 316 S.W. 3d 762, 767 (Tex. App.—Dallas 2010, pet. denied). In order for Mr. Hale to have a valid breach of contract claim against the City of Bonham, the Lease must fall within the limited statutory

Plaintiff's Motion for Summary Judgment

definitions and wavier provisions of Subchapter I of Chapter 271 of the Texas Government Code. Specifically, Section 271.152 of the Texas Government code provides as follows:

> [a] local governmental entity that is authorized by statute or the constitution to enter into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.
>
> TEX. LOC. GOV'T CODE ANN. §271.152 (West 2005).
>
> A "contract subject to this subchapter" is defined as:
>
> "a written contract stating the essential terms of the agreement **for providing goods or services to the local governmental entity** that is properly executed on behalf of the local governmental entity. *Id.* §271.151(2).

The City of Bonham did not waive immunity from suit by entering into the Lease with Mr. Hale. The written Lease entered into between the parties is for a lease of the premises located and situated at the City of Bonham Municipal Airport: Metal Quonset Hut Hangar. *Exhibit "A."* The Lease does not require Mr. Hale **"to provide goods or services to the local government entity (the City of Bonham),"** therefore, governmental immunity has not been waived. Lease contracts, contracts for the sale of real estate, easement agreements are not contracts of "goods and services" and, therefore, the governmental entity retains immunity. *City of Paris v. Abbott*, 360 S.W.3d 567, 576 (Tex. App.—Texarkana 2011, pet. denied) (citing *Kirby Lake Dev., Ltd.,* 320 S.W.3d at 839); see also *Lubbock County Water Control and Improvement District et al. v. Church & Akin,* __S.W.3d__, 2014 WL2994645 at *6 (Tex. 2014) (concluding that a lease agreement with a governmental unit does not waive immunity unless the agreement requires that the claimant provide goods or services to the governmental unit).

Plaintiff's Motion for Summary Judgment

In conclusion, the Lease does not constitute a contract stating the essential terms of the agreement for providing goods or services to the City of Bonham, therefore, governmental immunity has not been waived.

**D.      Governmental Immunity protects the City of Bonham from Mr. Hale's for Violations of the Deceptive Trade Practices Act ("DTPA")**

The DTPA allows a plaintiff to bring an action against any person who uses or employs false, misleading, or deceptive acts or practices. Tex. Bus. & Com. Code §17.50(a)(1). To prove an action for violation of the DTPA, the plaintiff must establish the defendant can be sued under the DTPA. The plaintiff may bring an action against "any person." Tex. Bus. & Com. Code §17.50(a)(1). The DTPA defines "person" as an individual, partnership, corporation, association, or other group, however organized. Tex. Bus. & Com. Code §17.45(3); *Miller v. Keyser*, 90 S.W.3d 712, 715 (Tex. 2002); *Kerrville HRH v. City of Kerrville*, 803 S.W.2d 377 (Tex. App.—San Antonio 1990) (the use of the phrase "other group" does not evidence a clear and unambiguous legislative intent to include cities within the range of possible DTPA defendants).

As a governmental entity, the City of Bonham is presumed to be immune from suit, which immunity can only be waived by "clear and unambiguous legislative consent." *Dallas Cnty. v. Rischon Dev. Corp.*, 242 S.W.3d 90, 94 (Tex. App.—Dallas 2007, no. pet.); *Wichita Falls State Hosp.* at 697-98. Moreover, the Texas Supreme Court generally resolves ambiguities by upholding immunity. *Wichita Falls State Hosp.* at 697-98; *Travis Cnty. V. Pelzel & Assocs., Inc.* at 249-50.

The Legislature failed to include governmental entities in the DTPA's definition of "person." *Rischon Dev. Corp.* at 95 (citing TEX. BUS. & COM. CODE ANN. §17.45(3) (West 2002)); *City of Wylie v. Taylor*, 362 S.W.3d 855, 864-65(Tex. App.—Dallas 2012); *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 382 (Tex. App.—San Antonio 1990, writ denied). Since

Plaintiff's Motion for Summary Judgment

the legislature has not expressed "a clear and unambiguous waiver of governmental immunity" as to DTPA claims, Mr. Hale's claims for violation of the DTPA against the City of Bonham are barred by governmental immunity.

### E. Governmental Immunity protects the City of Bonham from Mr. Hale's Claim of Bailment

Mr. Hale alleges that the City of Bonham demanded that he vacate the premises and stay out of the Hangar and that such action represents complete command and control over the premises. He alleges that the City of Bonham barred him from his property and failed to return it in an undamaged condition. Mr. Hales alleges such actions amount to bailment.

For a bailment to occur, there must usually be an express or implied contract, delivery of the property to the bailee, and acceptance of the property by the bailee, and consideration must be present for a bailment to exist. *See Jack Boles Servs., Inc. v. Stavely,* 906 S.W.2d 185, 188 (Tex. App.--Austin 1995, writ denied). Mr. Hale's bailment claim against the City of Bonham sounds in breach of contract and is, therefore, barred by governmental immunity as explained in Section C above.

There is no statute which expressly waives governmental immunity for a claim of bailment. *Kirby Lake Dev., Ltd.,* 320 S.W.3d at 836. Thus, the City of Bonham has immunity from suit for Mr. Hale's alleged bailment claim.

### F. Governmental Immunity protects the City of Bonham from Mr. Hale's Theory of Unjust Enrichment

The term, unjust enrichment, "characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay." *Walker v. Cotter Properties, Inc.,* 181 S.W.3d 895, 900 (Tex. App.--Dallas 2006, no pet.); *Oxford Fin. Cos. v. Velez,* 807 S.W.2d 460, 465 (Tex. App.-

Plaintiff's Motion for Summary Judgment

Austin 1991, writ denied); see also *Richardson Hospital Authority v. Duru,* 387 S.W.3d 109, 114 (Tex. App.--Dallas 2012). The unjust enrichment doctrine applies principles of restitution to disputes in which no actual contract exists. *In re Guardianship of Fortenberry,* 261 S.W.3d 904, 915 (Tex. App.--Dallas 2008, no pet.). It is based on the equitable principle that one who receives benefits that would be unjust to retain should make restitution of those benefits. *Id.*

Mr. Hale has attempted to make an equitable claim for recovery of his services, benefits and privileges which he alleges the City of Bonham was unjustly enriched, of which the amount equals his property damages alleged. However, the Texas Legislature has not created a waiver of governmental immunity for equitable claims that seek money damages. *Richardson Hospital Authority v. Duru,* 387 S.W.3d at 114.

The primary purpose of governmental immunity from suit is to protect governmental entities from lawsuits for damages." *Anderson v. City of McKinney,* 236 S.W.3d 481, 482 (Tex. App.--Dallas 2007, no pet.). Thus, regardless of the nature of the equitable claim, if money damages are the remedy sought, then the claim is barred by governmental immunity. *See, e.g., Harris County Flood Control Dist. v. Great Am. Ins. Co.,* 309 S.W.3d 614, 617 (Tex. App.--Houston [14th Dist.] 2010, no pet.) (quantum meruit); *Bell v. City of Grand Prairie,* 221 S.W.3d 317, 325 (Tex. App.--Dallas 2007, no pet.) (injunction). Thus, even if the City of Bonham retained the benefit of Mr. Hale's services without paying for them, which the City of Bonham denies, his claim would sound in equity, and it would be barred by immunity. *See Harris County Flood Control Dist.,* 309 S.W.3d at 617. However, Mr. Hale seeks money damages from the City of Bonham and, therefore, his claim for damages based upon unjust enrichment is barred.

Plaintiff's Motion for Summary Judgment

## II.
## PRAYER

For the foregoing reasons, the City of Bonham requests the Court to grant it a take nothing final summary judgment on Mr. Hale's counter-claims against the City of Bonham for breach of contract, violations of the Deceptive Trade Practices Act, bailment, and unjust enrichment as those counter-claims are precluded by governmental immunity and award it with and such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

**HELMS & KILGORE, P. L.L.C.**

CHRIS KILGORE
State Bar No. 11398350
DOTTIE SHEFFIELD
State Bar No. 24051326
2201 Main Street, Suite 212
Dallas, Texas 75201
(972) 532-6484
(972) 532-6496 (facsimile)
**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT**

### Certificate of Service

In keeping with Rule 21a of the Texas Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument has been served upon the following counsel of record:

Gary Linn Evans
George Andrew Coats
Coats & Evans, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246
Facsimile: 281-367-8003

DATED:    January 16 , 2015.

Via:

_____ CMRRR
___✓___ Facsimile
_____ Federal Express
_____ Courier
_____ Hand Delivery (In Person)
_____ Regular U.S. Mail

CHRIS KILGORE

Page 10

Plaintiff's Motion for Summary Judgment

EXHIBIT "A"

THE STATE OF TEXAS

COUNTY OF FANNIN

THIS LEASE AGREEMENT:

Made and entered into by and between the City of Bonham, Texas, hereinafter called the Lessor and _Sidney B. Hale, Jr._ and ~~Charles Matthews~~ _aimed July 12, 2002_ hereinafter called the Lessee, WITNESSETH:

1.

The Lessor does hereby LEASE, GRANT AND LET unto the Lessee herein, the following described premises located and situated at the City of Bonham Municipal Airport: Metal Quonset Hut Hangar

2.

The said Lease shall be for a period of five years, effective from the date of this instrument. Likewise, the same shall be renewable at a negotiable lease rate, at the option of the City of Bonham, Texas, acting by and through its duly designated representatives.

3.

The consideration for this Lease Agreement is $72.00 monthly with the same being payable on the first business day of each month or on the date of the execution of the lease, if the same is on an annual basis. _First Payment Due - July 15, 1984_

All payments are to be paid to the City Secretary at the Bonham City Hall.

Failure to pay such rental, when the same shall become due and owing, shall render this Lease Agreement null and void at the option of the Lessor and will subject the Lessee to attorney fees and costs should they fail to surrender such premises to the said City.

4.

The Lessee herein agrees, obligates and binds himself to abide by the Rules and Regulations of the Bonham Municipal Airport, a copy of which are attached hereto and made a part of this lease by reference to the same and for all purposes.

5.

During the term of the Lease Agreement the Lessee agrees to the following terms and conditions:

(a)  The Lessee will not alter, change or remodel the premises or any improvements thereon, without first obtaining the prior consent, in writing, of the Bonham Airport Board.

(b)  The Lessee will not sublet, rent or mortgage any part or portion of the above described premises to anyone without first obtaining the written consent of the Bonham Airport Board.

(c)  The Lessee shall have the right and privilege to place such items of personal property on the premises, as he desires, provided that it is in compliance with the regulations established by the Bonham Airport Board.

6.

The Lessee shall abide by all FAA Rules and Regulations in the occupancy of the premises and shall also abide by all City Ordinances or Resolutions of the said City.

7.

Either party to this Lease Agreement shall have the right to terminate the same by giving 6 months notice, in writing, of their desire to terminate the lease, and the effective date thereof.

CITY OF BONHAM, TEXAS

_Ahmo R. Dey_
LESSOR

_Sidney B. Hale Jr._
LESSEE
_Charles E. Mattingly_

COPY
COPY
COPY

# EXHIBIT "B"

CAUSE NO. CV-14-41722

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR | § | |
| | § | |
| Defendant. | § | 336th JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S FIRST AMENDED PETITION FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, City of Bonham and files this First Amended Petition against Defendant, Sidney B. Hale, Jr. ("Hale" or "Defendant"), seeking declaratory judgment relief, and in support thereof would show as follows:

### I. DISCOVERY PLAN

1. This matter shall proceed under a Level 2 Discovery Plan.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to the Texas Declaratory Judgment Act. Venue is appropriate in this Court because the subject property is located within the boundaries of Fannin County, Texas.

### III. PARTIES

3. Plaintiff is the owner of the property which is the subject of this lawsuit.

4. Defendant is a resident of Fannin County, Texas and may be served at 910 E. 11th Street, Bonham, Fannin County, Texas 75418.

### IV. FACTS

5. City of Bonham owns a Quonset hangar on the grounds of the City of Bonham Airport (the "Quonset Hangar"). By lease dated on or about June 18, 1984, Hale leased the

From: Sheree Corrales    Fax: (972) 532-6484    To: +12813678003    Fax: +12813678003    Page 16 of 51 01/16/2015 4:14

Quonset Hangar from the City of Bonham ("the Lease"). A true and correct copy of The Lease is attached hereto as Exhibit "A." Paragraph 4 of the lease incorporates into the Lease the terms of the Rules and Regulations of the Bonham Municipal Airport, attached hereto as Exhibit "B."

6. The Lease by its terms expired 5 years after it was first signed. However, both parties continued performing under the Lease on a month-to-month basis.

7. On February 13, 2012, The City Council of the City of Bonham adopted new Airport Rules and Regulations (the "2012 Airport Rules and Regulations"), a true and correct copy of which are attached hereto as Exhibit "C." Section 8 of the Airport Rules and Regulations implies knowledge of them to people using the Bonham Municipal Airport. Section 7-6 contains language eliminating any liability of the City of Bonham for any damage to persons or property.

8. After passage of the 2012 Airport Rules and Regulations, both parties continued to perform under the Lease.

9. On December 6, 2013, a severe ice storm impacted the Bonham Municipal Airport, causing widespread damage (the "Incident"). The roof of the Quonset Hangar collapsed as a result of the Incident. Defendant claims over $400,000.00 in damages from City of Bonham as a result of the collapse, notwithstanding that City of Bonham has pointed out the Hold Harmless language in the 2012 Airport Rules and Regulations eliminating any claim he might have.

10. On June 4, 2014, Hale's counsel sent a demand letter making a claim against Plaintiff under the Texas Tort Claims Act. This letter is attached hereto as Exhibit D.

11.     Plaintiff has exhausted its attempts to secure Defendant's compliance with the terms of the Lease and 2012 Airport Rules and Regulations, and is without further remedy, save and except the intervention of this Court.

## V. CAUSE OF ACTION – REQUEST FOR DECLARATORY JUDGMENT

12.     This action is being brought pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. Section 37.004 of that Chapter states, in relevant part, that "A person interested under a...written contract...or whose rights, status or other legal relations are affected by a ...contract...may have determined any question of construction or validity arising under the ...contract...and obtain a declaration of rights, status or other legal relations thereunder."

13.     In this matter, Defendant takes the position that he is not bound by the terms of the Lease and, specifically, the Hold Harmless provision of the 2012 Airport Rules and Regulations.

14.     In contrast, the City of Bonham asserts that the Hold Harmless language does apply either as a part of the Lease under principles of contract construction, under the doctrine of ratification, or under the doctrine of subordination of contractual rights to local rules, laws and ordinances.

15.     Sovereign immunity protects governmental entities from lawsuits for money damages. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Political subdivisions of the state, including cities, are entitled to governmental immunity unless it has been waived. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex. 2003). Sovereign immunity encompasses immunity from suit, which bars a suit unless the governmental entity has consented, and immunity from liability, which protects the entity from

judgments even if it has consented to the suit. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

16. Section 101.021(2) of the Texas Tort Claims Act (The "Act") provides that a governmental unit is liable for "personal injury and death" arising out of the condition or use of tangible personal or real property. Property damage, as Hale claims here, is not recoverable. And while Section 101.0215(10) of the Act does include airports as a governmental function of a municipality, that liability must still arise out of Section 101.021. See, e.g., *City of Kemah v. Vela*, 149 S.W.3d 199, 203-04, n. 1 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

17. Moreover, even if sovereign immunity had been waived, Hale would be limited in his damages. Under the terms of the Lease, he would not be able to maintain a claim for any damages. Moreover, under Section 101.023(d) of the Act, liability for property damages against a municipality is limited to $100,000.

18. This is a live, genuine controversy because the determination of this issue directly affects the ongoing relationship between the parties.

19. Plaintiff requests the Court enter the following judicial declarations:

    (a)    The Lease adopts the 2012 Airport Rules and Regulations.

    (b)    By the terms of section 7-6 the 2012 Airport Rules and Regulations, Hale has no claim against City of Bonham as a result of the Incident.

    (c)    Plaintiff is immune from suit under the concept of sovereign immunity.

## VI. REQUEST FOR ATTORNEY'S FEES

20. Plaintiff requests that this Court award Plaintiff its reasonable costs and attorney's fees pursuant to the Texas Declaratory Judgment Act and Chapter 38 of the Texas Civil Practice and Remedies Code.

From: Sheree Corrales    Fax: (972) 532-6484    To: +12813678003    Fax: +12813678003    Page 5 of 51 01/16/2015 4:14

## VII.  CONDITIONS PRECEDENT

21.     All conditions precedent to Plaintiff being entitled to bring this action and recover the relief requested herein have been performed, have occurred or have been waived.

## VIII.  PRAYER

WHEREFORE, Premises Considered, Plaintiff respectfully requests that the Court enter the judicial declarations requested hereinabove and award Plaintiff its reasonable and necessary costs and attorneys fees, and for such other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

HELMES & GREENE, LLC

John Reenan
Texas State Bar No. 00789777
jreenan@helmsgreene.com
Christopher S. Kilgore
Texas State Bar No. 11398350
ckilgore@helmsgreene.com
1700 Pacific Ave., Suite 3740
Dallas, Texas 75201
Telephone: (214) 466-7910
Facsimile:  (214) 466-7915

**ATTORNEYS FOR PLAINTIFF**
**CITY OF BONHAM**

From: Sheree Corrales    Fax: (972) 532-6484    To: +12813678003    Fax: +12813678003    Page 2 of 5 1 01/16/2015 4:14

# EXHIBIT A

THE STATE OF TEXAS

COUNTY OF FANNIN

THIS LEASE AGREEMENT:

Made and entered into by and between the City of Bonham,
Texas, hereinafter called the Lessor and _Sidney B. Hale, Jr._
and ~~Charles Mattingly~~ _deceased July 12, 2002_
hereinafter called the Lessee, WITNESSETH:

1.

The Lessor does hereby LEASE, GRANT AND LET unto the Lessee
herein, the following described premises located and situated at
the City of Bonham Municipal Airport; Metal Quonset Hut Hangar

2.

The said Lease shall be for a period of five years,
effective from the date of this instrument. Likewise, the same
shall be renewable at a negotiable lease rate, at the option
of the City of Bonham, Texas, acting by and through its duly
designated representatives.

3.

The consideration for this Lease Agreement is $72.00
monthly with the same being payable on the first business day
of each month or on the date of the execution of the lease,
if the same is on an annual basis. _First Payment Due — July 15, 1984_

All payments are to be paid to the City Secretary at the
Bonham City Hall.

Failure to pay such rental, when the same shall become due
and owing, shall render this Lease Agreement null and void at
the option of the Lessor and will subject the Lessee to attorney
fees and costs should they fail to surrender such premises to
the said City.

4.

The Lessee herein agrees, obligates and binds himself to
abide by the Rules and Regulations of the Bonham Municipal Air-
port, a copy of which are attached hereto and made a part of this
lease by reference to the same and for all purposes.

COPY
COPY
COPY
Spearman
01-16-2015

5.

During the term of the Lease Agreement the Lessee agrees to the following terms and conditions:

(a) The Lessee will not alter, change or remodel the premises or any improvements thereon, without first obtaining the prior consent, in writing, of the Bonham Airport Board.

(b) The Lessee will not sublet, rent or mortgage any part or portion of the above described premises to anyone without first obtaining the written consent of the Bonham Airport Board.

(c) The Lessee shall have the right and privilege to place such items of personal property on the premises, as he desires, provided that it is in compliance with the regulations established by the Bonham Airport Board.

6.

The Lessee shall abide by all FAA Rules and Regulations in the occupancy of the premises and shall also abide by all City Ordinances or Resolutions of the said City.

7.

Either party to this Lease Agreement shall have the right to terminate the same by giving 6 months notice, in writing, of their desire to terminate the lease, and the effective date thereof.

CITY OF BONHAM, TEXAS

_____
LESSOR

_____
LESSEE

COPY

COPY

# EXHIBIT B



# cITY of BONHAM

BONHAM, TEXAS 75418

301 EAST FIFTH STREET • P.O. BOX 578 • TELEPHONE 583-3541

## RULES FOR AIRPORT HANGER USE

1. The Airport Manager will maintain a list of all aircraft hangered and fees charged. Past due rentals over three months will lose hanger space. Rental fees may be paid in advance.

2. The Airport Manager will maintain a current list of all aircraft owners desiring aircraft space. This list will identify space required for this person's specific aircraft (some types of aircraft will only go into certain stalls).

3. Only operational aircraft will be allowed to utilize hanger space. A reasonable time period for repairing out of commission aircraft will be allowed not to exceed 90 days if there is a waiting list.

4. Hanger space is not transferable with sale of aircraft if there is a waiting list for space. If an aircraft owner with a hanger rented sells his aircraft with intent to purchase another of like size (will fit into same hanger space), he may maintain his hanger for 90 days to complete the sales transaction provided the rent is paid through this period.

The City of Bonham Airport Board passed on the above rules for hanger use effective March 14, 1978.

We believe these few rules for hanger use at the Airport will help the Airport Manager to operate the hanger rentals and hanger priorities in a fair and equitable manner to everyone involved.

If you have any questions on the above, please contact the Airport Manager.

Sincerely,

Charles Smith

**EXHIBIT C**

# City of Bonham

## Airport Rules and Regulations

## Resolution No. 021312.3

A resolution providing rules for the efficient and safe operation of the Jones Field Municipal Airport (hereinafter referred to as the "Airport"), and to provide the greatest service for the citizens of Bonham and the aviation public, is adopted by the City Council.

The definition of "Airport", "aircraft", "airplane", and other common terms used herein is as defined in Part 1, Code of Federal Regulations, Title 14, Aeronautics and Space. "Airport" with a capital refers to the specific airport for which these rules are adopted.

### Section 1.    Use of Airport Restricted

No person, partnership, firm, association, corporation or entity, incorporated or otherwise, shall use the Airport for any commercial activity, unless approved by the City Council or its duly authorized agent.

### Section 2.    General Rules and Regulations

The following rules and regulations shall be observed in the use and operation of the Airport:

Rule 2-1. Federal Air Traffic Rules of the Federal Aviation Administration (FAA) for aircraft operated within the United States, and presently or hereafter effective, are hereby referred to, adopted, and made a part hereof as though fully set forth and incorporated herein. In the event there is a conflict between this document and Federal Air Traffic Rules, then the latter shall apply.

Rule 2-2. Safeguard of Persons and Property – The Director of Public Works shall at all times have authority to take necessary and legal actions to safeguard any person, aircraft, equipment, or property at the Airport. NOTAMS will be issued for actions affecting flight at the airport.

Rule 2-3. Through-the-Fence Operations Prohibited – No private individual, partnership, FBO, company, or corporation shall be permitted direct ground access to the Airport by their aircraft, customers' aircraft, or private vehicle from property adjacent to or in the immediate vicinity of the Airport. Furthermore, no private individual, partnership, company, corporate, or customers' aircraft or vehicle shall be permitted direct ground access to property from the Airport – a practice commonly known as a "through-the-fence operation."

Rule 2-4. Lien for Charges – To enforce the payment of any charge for repairs, improvements, storage, or care of any personal property by the City in connection with the operation of the Airport, the City may place a lien upon such personal property, which shall be enforceable as provided by law.

Rule 2-5. Lien Possessory Right- To enforce the payment of any such charge, the Public Works Director/Airport Manager may retain possession of such personal property until all reasonable, customary, and usual compensation has been paid in full.

Page 1 of 1

021312.3

Rule 2-6. Unauthorized Signs and Equipment – No signs, non-aeronautical equipment, portable buildings, or trailers may be erected, moved-in, or installed on Airport property, except as may be specifically authorized by the Public Works Direct/Airport Manager.

Rule 2-7. Surreptitious Activities – Any person observing suspicious, unauthorized or criminal activities should report such activities immediately to the Director of Public Works, local police, officers of the Texas Department of Public Safety, and the Transportation Security Administration General Aviation Information Hotline at 1-866-GA SECUR(E) or 1-866-427-3287.

Rule 2-8. Wrecked Aircraft – Every aircraft owner and his/her pilot or agents, shall be responsible for notifying FAA, or NTSB if applicable; and promptly removing disabled or wrecked aircraft from the operational areas of the Airport. Director of Public Works shall also be notified and may provide additional guidance regarding removal of said aircraft.

Rule 2-9. Repairs to Aircraft – All aircraft repairs shall be performed in accordance with applicable FAA regulations. Repairs/maintenance shall be performed in hangars unless operational circumstances make this impractical.

Rule 2-10. Damage to Airport – Damage of any kind by any person on the airport premises could result in criminal and/or financial liability to either the city and/or the owner(s) of any personal property damaged.

Rule 2-11. Injury to Person – Persons entering the Airport ground side property by automobile, other vehicular conveyance, or on foot (does not include persons in aircraft using approved airside facilities) do so at their own risk and with no liability incurring to the City for any injury or damage to person or property

Rule 2-12. Authorized Aircraft – Aircraft with current and correct FAA Certificates of Registration and Airworthiness. Use of the Airport by ultralight aircraft (FAR 103) in the weight shift control and powered parachute class shall be subject to approval by the City Council and shall be in accordance with FAA Order 5190.6 (latest change) and appropriate FARs Part 61 and 103 and any other rules established by the City.

Rule 2-13. Registration – All based aircraft shall provide registration information annually by January 15th to the Public Works Director.

Rule 2-14. Animals – All animals on airport premises are regulated by existing ordinances enacted by the City of Bonham. In general, all animals shall be leashed and under control of responsible party at all times.

Rule 2-15. Living Quarters - No person may make permanent living quarters on Airport, unless specifically authorized by lease.

Rule 2-16. Intoxicants and Narcotics Prohibited – These substances are considered illegal on the airport premises unless authorized by a medical professional.

Rule 2-17. Foreign Objects – Care should be taken not to deposit foreign objects on airport premises. If observed, please remove or notify Public Works Director.

Rule 2-18. Litter – Do not litter or allow litter to accumulate on the surfaces of the airport. Acceptable hangar conditions are addressed in hangar lease. Offenders may be subject to removal and/or cleanup costs

021312.3

## Section 3.   Ground Operations

Rule 3-1. – No unauthorized vehicles on taxiways or runways. The operator(s) of all authorized vehicles will be familiar with and follow all applicable rules and regulations of city/county/state and/or FAA. All other vehicles will exercise caution while operating on applicable airport surfaces. Vehicles shall be vigilant when in proximity of buildings and provide adequate clearance for safe travel.

Rule 3-2. – All vehicles shall yield right of way to aircraft in motion and emergency vehicles and not approach

Rule 3-2. – Maximum recommended speed for all vehicles is 15MPH unless otherwise posted.

## Section 4.  Airport Security

Rule 4-1. – The Transportation Security Administration publication "Security Guidelines for General Aviation Airports", Information Publication A-001 dated May 2004, is available for reference at their website - www.tsa.gov/.

This document is used by the Airport as a guideline to security on the Airport and is incorporated as a working document.

## Section 5.  Aircraft Operation Rules

### Rule 5-1.  Aircraft Tie Downs

A.  Unoccupied aircraft, that are not hangared, shall be parked on the ramp and tied down. During inclement weather or in the event overnight parking is required the wheels should be chocked and brakes set. In the event ramp tie downs are not available, the grass areas immediately North of the ramp may be used on a temporary basis, however this will be at the pilots risk.

B.  All aircraft owners or their agents are responsible for the tie down or security of their aircraft at all times and particularly during inclement weather.

C.  Ramp parking is limited and any operator who requires their airplane to remain on the ramp over four days should notify the Director of Public Works. Nightly tie down fee may apply.

### Rule 5-2. Running Aircraft Engines

A.  Pilots shall follow all procedures outlined in the AIM and applicable FARs related to starting of aircraft engines.

B.  No engine shall be started, run up, or warmed up until and unless the aircraft is in such position that the propeller stream or jet blast will clear all buildings, other aircraft, and groups of people.

Rule 5-3. Damage to Airport Lighting – Report any airport lighting damage to Director of Public Works immediately. Damage to lighting could result in liability as defined in Rule 2-10.

Rule 5-4. Taxiing Aircraft - All aircraft shall be taxied in a safe and responsible manner at a speed suitable to such operation. Departing aircraft yield to landing aircraft. Reckless operation will not be acceptable.

021312.3

From: Sheree Corrales      Fax: (972) 532-6484      To: +12813678003      Fax: +12813678003      Page 29of 51 01/16/2015 4:14

Rule 5-5. Parking Aircraft

A. Unattended aircraft shall not be parked within fifty (50) feet of an aircraft fuel pump or fuel service truck parking area.

B. Aircraft shall not be parked in such a manner as to hinder the normal movement of other aircraft and traffic unless specifically authorized by the Director of Public Works and only as a temporary measure.

C. It is the responsibility of the pilot in command when leaving a parked aircraft unattended to see that the brakes are set and / or it is properly chocked and / or tied down.

Rule 5-6. Authority to Suspend Operations – The Director of Public Works may suspend or restrict any or all operations whenever such action is deemed necessary in the interest of safety. Appropriate NOTAMS will be issued by the Director of Public Works. Any suspensions and restrictions will be temporary in nature unless circumstances require otherwise.

Rule 5-7. Emergency Locator Transmitter (ELT) – All pilots are urged to monitor and report any observed ELT activation.

Rule 5-8. Standard Traffic Pattern and Altitude, Non Towered Airports – All flight activity will adhere to FAA Advisory Circular 90-66 (latest change)

Rule 5-9. Clearing Public Right of Ways – Aircraft operators are expected to be familiar with and comply with regulations and recommendations contained within FAR 77.

Rule 5-10. Takeoffs on Other Than Runways – All takeoffs and landings will be performed only on active runway unless authorized by NOTAM.

Rule 5-11. Agricultural Spraying Operations – Ag operations shall be accomplished in accordance with the standards of the Texas Department of Agriculture in an area so designated by the Director of Public Works. Ag operators are required to secure adequate insurance to cover liability and cleanup costs in the event of a chemical spill.

Rule 5-12. Model Aircraft – Model aircraft not capable of carrying a person shall not be permitted to operate, take off or be launched from, flown over or land at the Airport. Model A/C operations for specific aeronautical events such as fly-ins or air shows may be approved for specific times by the Director of Public Works.

Section 6. Fueling, Flammable Fluids, and Fire Safety

Rule 6-1. Fueling Aircraft

A. All aircraft shall be grounded with engine shut down prior to fueling.

B. Fuel Storage in hangers is governed by terms of hangar leases.

C. Persons or businesses wishing to dispense fuel into their privately owned aircraft shall not be denied; however, all Commercial operators and Private use involving over 20 gallon of aviation fuel, must obtain a fuel permit issued by the City

D. All fueling facilities require prior approval of the City Council and pertinent conditions will be set on a case by case basis.

Page 4 of 4

021312.3

Rule 6-2.    Fire Safety

   A. Every person using the Airport or its facilities in any manner shall exercise the greatest care and caution to avoid and prevent fire. Notify the Fire Department (911) in the event of any fire or dangerous condition.

   B. Smoking or open flame within fifty (50) feet of any fuel tank, fuel pump, or fuel truck is prohibited.

   C. Compressed flammable gas shall not be kept or stored upon the Airport, except at such place as may be designated by the Director of Public Works.

   D. Fire Safety in the hangars is addressed within the hangar lease.

Rule 7-1.    Environmental Issues and Indemnification - Any tenant of the Airport, its agents, employees, independent contractors, or sub lessee shall not install, store, use, treat, transport or dispose of any substances that are regulated by any state or federal law, unless said laws allow for such disposal and then only with approval of Director of Public Works.

Rule 7-2. Environmental Notices – An Airport tenant shall promptly supply the City Council with copies of any notices, correspondence and submissions made or received from any governmental authorities of the United States Environmental Protection Agency, the United States Occupational Safety and Health Administration, or any other local, state or federal authority that requires submission of any information concerning environmental matters or Hazardous Materials.

Rule 7-3. Environmental Survival – An Airport tenant's liability pursuant to any environmental issue shall survive the expiration or earlier termination of their lease.

Rule 7-4. No Discrimination Allowed – All providers of services located on Airport Property shall not discriminate based on basis of race, color, sex, or national origin. All airport users shall be allowed use of facilities and not be excluded from participation in, denied benefits of, or otherwise be subjected to discrimination.

Rule 7-5. Insurance – All airport tenants and operators are encouraged to secure insurance providing suitable coverage for their aircraft and personal belongings. In the event they choose not to do so, they are hereby notified that they accept all liability for failure to do so. In no event will the City of Bonham be liable for any damages and/or injuries incurred by any airport operations.

Rule 7-6. Hold Harmless – The City shall not be liable to an Airport tenant's employees, agents, servants, customers, invitees, or to any other person whomsoever, for any injury to persons or damages to property on or about the leased premises or any adjacent area owned by the City

## Section 8.    Knowledge of Rules Implied

By publication and adoption of this resolution, all persons shall be deemed to have knowledge of its contents. However, the Public Works Director is directed to have copies of the resolution posted in paper or electronically, where appropriate. Copies shall be available at all times at the Bonham City Hall and Jones Field Terminal Building, and copies shall be furnished to all owners and operators of aircraft based at the airport

Page 5 of 5

021312.3

From: Sheree Corrales    Fax: (972) 532-6484    To: +12813678003    Fax: +12813678003    Page 31 of 51 01/16/2015 4:14

Read, passed and adopted by a vote of the City Council of the City of Bonham on the 13ᵗʰ day of February 2012

Members voting Aye: _____7_____ Members voting Nay: ___None_____

_____
Roy V. Floyd, Mayor

City of Bonham

Attest:

_____
Janell Jamieson, City Secretary

021312.3

From: Sheree Corrales    Fax: (972) 532-6484    To: +12813678003    Fax: +12813678003    Page 32of 51 01/16/2015 4:14

# EXHIBIT D



COATS
EVANS
ATTORNEYS
A PROFESSIONAL CORPORATION

P. O. Box 130246
The Woodlands, Texas 77393-0246

Office: (281) 367-7732
Facsimile: (281) 367-8003

Gary Linn Evans
E-mail: evans@texasaviationlaw.com

Direct: (832) 541-8037

June 4, 2014

Mr. Bill Shipp
City Manager
City of Bonham, Texas
514 Chestnut
Bonham, Texas 75418

*Via CMRRR No. 7013 1090 0000 2669 1742*
*Via Email: bonhamcitymanager@cableone.net*
*and Via Facsimile No. 903-583-5761*

Re:   **NOTICE, DEMAND, AND PROOF OF CLAIM:** Sydney B. Hale and Stephen Hale, d/b/a H&M Aircraft Service; Hangar Collapse of December 8, 2013 at the City of Bonham Municipal Airport, Bonham Texas.

Dear Mr. Shipp:

The undersigned and this law firm represent Sydney and Stephen Hale, d/b/a H&M Aircraft Service (the "Hales") regarding the above-referenced matters. Please direct all future correspondence regarding this matter to the undersigned at the address, e-mail address, and/or facsimile number stated herein. Hereinafter, "you," "your," "City of Bonham," and/or the "City" shall refer to the City of Bonham, Texas.

As you are certainly aware, on or about December 8, 2013, the hangar in which the Hales were conducting their aircraft repair and maintenance business at the City of Bonham Municipal Airport collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The hangar was used to conduct the Hales' aircraft related business and store multiple aircraft. After several months of correspondence with you and with others, on your behalf, we have been unable to reach an acceptable agreement resolving the damages sustained by the Hales, in whole or in part.

While you have previously received actual notice of the Incident and the Hales' damages caused by the Incident, this correspondence shall serve as formal, written notice of the Hales' claims against the City of Bonham, including, but not limited to, any claims arising under the Texas Tort Claims Act. A preliminary listing of all of the items the Hales claim to be missing, lost, stolen, damaged, or otherwise responsible for the aggregate of the claimed economic losses has previously been provided, and is also attached hereto for your convenience.

From: Sheree Corrales    Fax: (972) 532-6484    To: +12813678003    Fax: +12813678003    Page 34 of 51 01/16/2015 4:14

Prior to the Incident, the Hales informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed the Hales to immediately vacate the premises and to stay out of the hangar. There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the hangar collapsed. Such action represents and assumption of complete command and control over the premises. The City's failure to reasonably protect the hangar from further collapse caused the damages incurred by the Hales, at least in part.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to the Hales. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

This correspondence additionally serves as a final attempt to reach an acceptable offer of resolution, including, but not limited to, full payment of the damages incurred by the Hales as a result of the City's actions and/or failure to act, as well as the availability of hangar space at the Bonham Airport as to the Hales for and in support of their aircraft maintenance business. The Hales have been conducting their maintenance business at the Airport for many decades. The availability of hangar space to continue their business is a key material aspect to any potential solution to the issues that have arisen as a result of the Incident. However, Airport personnel seem to take particular delight in frustrating and impeding the Hales' attempts at continuing their business, completely unnecessarily so in our view.

We anticipate your prompt cooperation with an attention to these matters. If we fail to receive a response from you within thirty (30) days of the receipt of this notice, we will proceed with all judicial measures available to recover compensation for all of the damages you have caused the Hales, all as allowed and set forth under the Texas Tort Claims Act.

Sincerely,

COATS & EVANS, P.C.

*/s/ Gary L. Evans*

Gary L. Evans

Encl.

Mr. Bill Shipp
City Manager
City of Bonham, Texas
June 4, 2014
Page 3

cc:     Michael Grady, U.S. Specialty Insurance Company (*Via Email:* mgrady@HCC.com)
        Patrick Montgomery, AviationLS (*Via Email:* patrick.montgomery@aviationls.com)

# INVENTORY LIST FOR H & M AIRCRAFT SERVICE
### Bonham, Texas 75418
### at Jones Field Airport
### Loss from December 8, 2013 Building Collapse

Subtotals: $27,910.50 | $222,608.90 | $418,801.50

| BRAND NAME | MODEL # | AGE OF ITEM | QUANTITY | ITEM DESCRIPTION | PURCHASE PRICE | ESTIMATED VALUE | REPLACEMENT VALUE |
|---|---|---|---|---|---|---|---|
| Whelen Strobe Tester | B-148-000 | 1 year | 1 | Whelen Strobe System Tester | | $128.50 | $128.50 |
| Sie Buili | CT-475 | 12 years | 1 | Portable Office | $20,000.00 | $20,000.00 | $22,000.00 |
| Champion | | 17 Years | 1 | Spark Plug Tester and Cleaner | $1,000.00 | $1,000.00 | $1,700.00 |
| Campbell Hausfeld | TF0006271H | 18 years | 1 | Campbell Hausfeld Commercial Air Compressor Attachments &Hose | $3,600.00 | $3,600.00 | $3,600.00 |
| Unknown | Unknown | 15 - 20 years | All | Tables and Cabinets | | $2,000.00 | $3,000.00 |
| Williams | Unknown | 5 Years | 12 | Combination Wrenches 1&1/8" - 2 1/2 both | | $5,000.00 | $3,000.00 |
| Champion | Numerous | New | 49 | Champion Spark Plugs | 650 | $8,500.00 | $1,112.00 |
| Sears | 106,173,781 | 40 years | 1 | Small Air Compressor 2 cyl 2h p 20 gal 7.0 scfm @ 90 PSI | $1,332.00 | $1,332.00 | $1,332.00 |
| TELEDYNE CONTINENTAL | o-200 Series | 40 years | 1 | Cessna 150 o-200 Series Engine w/All Accessories TCM | | $600.00 | $900.00 |
| Piper | PA-24-250 | 54 years | 1 | Piper PA-24-250 Commanche Low Time | | $10,000.00 | $25,000.00 |
| Cessna | 150L | 41 Years | 1 | Cessna 150 N10732 IFR Cert , New Millenium Ed. Engine, Avionics Upgrade | | $50,000.00 | $60,000.00 |
| Wag Aero | Narco | New | 2 | Cleaning VAT and Solution | | $30,000.00 | $35,000.00 |
| R&D,Kamas,Kitsen-Ez | E530 | 18 Years | 1 | Large Hydraulic Press 12 Ton And Accessories | | $550.00 | $1,175.00 |
| Buffalo | | 3 - 20 years | 2 | Jacks | | $800.00 | $900.00 |
| Various Brands | | Used | 8 | Engine Mounts For O-200 Engines | | $3,500.00 | $1,000.00 |
| Cessna | o-200 Series | 1 - 30 years | 2 | Regular Tools | | $2,000.00 | $3,500.00 |
| Various | Multiple | New To 5 Year | Multiple | Tool Cabinet Chest and Tools By Office | | $5,000.00 | $3,200.00 |
| Various | Multiple | 2 Years | 1 | 4 Drawer Tool Cart - Blue | | $1,500.00 | $3,000.00 |
| Unknown | N/A | 10 - 15 Years | 2 | Computers and Equipment | | $800.00 | $800.00 |
| Various, Dell | Multiple | New | 10 | New Cases of Av Oil Aeroshell | | $4,000.00 | $5,500.00 |
| Aeroshell | Multiple | 5 Years | 2 | Portable Aircraft Radios | | $700.00 | $990.00 |
| Acorn, Vertex | A24, V50220 | 4 - 10 years | 5 | Aircraft Head Sets | | $850.00 | $850.00 |
| Av Comm, David Clark | AC-900, H10-66 | 25 Years | Multiple | Aircraft Rolls And Sheets Of Aluminum Sheet Metal | | $1,500.00 | $1,715.57 |
| Premier Metals Inc | Multiple | 16 Years | 20 | 3 - Shelf 47" W x 35.4 "H x 27.6" D. Shelving | | $500.00 | $1,500.00 |
| Home Depot | | New | 1 | Champion Spark Plugs - Various #'s @ $27.70 Per Plug | | $3,500.00 | $19,000.00 |
| Champion | Various | 5 Years | 1 | Aircraft Cylinders | | $1,800.00 | $3,500.00 |
| Lycoming | o-360 | 4 Years | 6 Boxes | Garmin GPS, Accessories,Mount, Full Manual, Software Update | | $1,600.00 | $1,994.40 |
| Garmin | | 8 Years | 1 | Magnetoes & Ignition Harnesses | | $2,800.00 | $2,000.00 |
| Slick,Bendix | Various | 5 - 20 Years | 2 Sets | Starters - Delco | | $3,500.00 | $3,500.00 |
| Delco | Multiple | 5 - 20 Years | 2 | Generators | | $400.00 | $5,239.90 |
| Delco | Multiple | All | All | AN Bolts and Screws | | $350.00 | $996.00 |
| Wag Aero,Chief, Aircraft Spruce | Assorted | All | All | Fasteners | | $1,000.00 | $900.00 |
| Wag Aero,Chief, Aircraft Spruce, Aviall | Assorted | All | All | Rivets | | $800.00 | $6,000.00 |
| Wag Aero, Chief, Aircraft Spruce , Aviall | Assorted | 10 Years | 1 | Strut Pump- Pneumatic | | $1,500.00 | $3,000.00 |
| Spruce | 15X | All Up To Date | All | Aircraft Manuals & All Current Revisions & Subscriptions | $10,000.00 | $10,000.00 | $2,500.00 |
| All Required | Assorted | 65 Years | 1 | Magneto Switches | | $1,500.00 | $520.00 |
| Aeronca | 7AC | 20 Years | 1 | Simpson 260 VOM And Case And Lead Attachments | $1,000.00 | $350.00 | $25,000.00 |
| Simpson | 250 | 25 Years | 1 | Either And All Attachments | | $300.00 | $1,500.00 |
| MSC, Import | MSCMO4240941 | 20 Years | 1 | Commercial Wet Dry Vacuum | | $200.00 | $450.00 |
| Unknown | Unknown | 5 years | 1 | Galvanized Parts Wash Container | | $100.00 | $554.33 |
| Local Hardware Store | 20 Gal, LH/RH | 8 Years | 1 | Aluminum Fuel Tank, LH/RH | | $250.00 | $648.00 |
| Aircraft Spruce | Various | 4 Years | All | Gasket Material | | $200.00 | $100.00 |
| Aircraft Spruce | | 25 Years | 1 | Electric Injector Cleaner Pot 110 Volts | | $150.00 | $1,156.75 |
| Rohme Electric Co.,Stay Warm | 4 Drawer | 28 Years | 5 | File Cabinets 4 Drawer Commercial Vertical Files | | $750.00 | $200.00 |
| Office Max | Multiple | All | All | Assorted Used Aircraft Parts | | $2,500.00 | $300.00 |
| Multiple | CP872 | 22 Years | 1 | Portable Fuel Tank With Pump , Hose, And Nozzle | | $500.00 | $1,149.65 |
| The Tank Depot | Dremel 4000 | 25 Years | 1 | Die Grinder | | $100.00 | $5,000.00 |
| Chicago Pneumatic | Devilbliss | 35 Years | 1 | Bench Grinder and Stand W/ Wire Brush | | $100.00 | $650.00 |
| Sears | 300 #1 Cart Hose Re | 3 Years | 2 | Dremel 4000 - 5150 w/ Rotary Tool Kit | | $600.00 | $250.00 |
| Sears | Various | 30 Years | 5 | Aircraft Spray Guns and Equipment | | $150.00 | $170.00 |
| Lorens | N/A | 5 Years | All | Water Hose Cart | | $300.00 | $823.28 |
| Aircraft Spruce | Various | 1 - 10 Years | 1 | Jumper Cable Sets And Adaptor Power Plugs | | $600.00 | $208.33 |
| Local Business | N/A | 12 Years | 2 | 16'x4' Professional Business Sign | | $92.00 | $963.50 |
| Watson Electric | Various | 1 - 15 Years | All | Spare Heaters - Office | | $3,000.00 | $800.00 |
| Superior | Multiple | 1 - 10 Years | All | All Misc. Gasket O/H Continental & Lycoming Engine Sets | | $150.00 | $300.00 |
| Walton | | 22 Years | 1 | Bench and Vise | | $2,000.00 | $300.00 |
| Burroughs | N/A | 22 Years | All | Specialty Aircraft Cylinder Wrenches | | $2,500.00 | $2,500.00 |
| Local Business | N/A | 15 Years | All | Furniture - Desks, Couch, Curtains, Furnishings | | $1,500.00 | $2,500.00 |
| Chief, Wag Aero,Aircraft Spruce | | 1 - 30 Years | All | Multiple Different Solenoid Contactors | | $500.00 | $3,000.00 |
| Aviall | Multiple | 1 - 6 Years | Full Rack | Aircraft Tires and Tubes | | $500.00 | $1,600.00 |
| Multiple | Multiple | 1 - 30 Years | Multiple | Electrical Equipment, Aviation Wire,Connectors | | $2,500.00 | $1,500.00 |
| Brown Tool Co,Yard Store | Multiple | 1 - 30 Years | Multiple | Pneumatic Tools | | $500.00 | $5,000.00 |
| Grainger, Other | Multiple | 1 - 10 Years | Multiple | Butane, Kerosene Heaters, Smudge Pots- Shop | | $2,500.00 | $1,500.00 |

| Vendor | Part / Model | Age | Qty | Description | Price | Value |
|---|---|---|---|---|---|---|
| Grainger | 8500 CFM | 15 years | 2 | Champion Water Coolers- Shop | $300.00 | $3,868.00 |
| Watson Electric | Lights | 13 Years | 2 | Fixed Lights 230 Volt | | $200.00 |
| Local | Various | 15 - 20 Years | All | Electrical Service - Disconnect - Shop Panel - Office Panel and Wiring | $4,000.00 | $4,000.00 |
| Wag Aero | 1010 Scale | 22 Years | 1 | Inclinometer | $75.00 | $95.00 |
| McCraw Oil Co. | Solvent | New | 5 | 5 Gal. Cans Of Solvent | $100.00 | $200.00 |
| Wag Aero | Multiple | 3 - 20 Years | 5 | Floor Creepers & Landing Gear Axle Stand & mechanics Roller Seat | $150.00 | $479.98 |
| Toolbarn.com | Multiple | 11 Years | Multiple | Greenlee Knockout Set & Flashlape & Self Test Non-Contact Voltage Detector | $150.00 | $1,234.94 |
| Wag Aero | Multiple | 1-30 Years | Multiple | Spark Plug Tools & Oil Filter Cutter & Oil Filter Torque Wrench | | $1,006.90 |
| Various | Rapco | New | 3 | Aircraft Vacuum Pumps | $750.00 | $750.00 |
| Various | Various | 1-10 Years | Multiple | Welding Rods & Supplies | $500.00 | $350.00 |
| Antique | SCAT | New | | Seat Hose | $2,000.00 | $2,000.00 |
| Antique | Antique | Antique | 2 | Refrigerator and Antique Coke Box | $200.00 | $377.50 |
| Best Buy | | 3 Years | 1 | Microwave | $500.00 | $600.00 |
| Sears | | 8 Years | 1 | Office A/C Unit | $100.00 | $300.00 |
| Paloman, Sears | Various | 36 Years | 8 | CB Base Stations and Linear AMP and Microphone and Equipment | $300.00 | $500.00 |
| Milwaukee | Various | 7 Years | 3 | Cordless Milwaukee Screw Guns, Chargers, Cases | $1,000.00 | $4,000.00 |
| Local Vender | 2101-22 | 1 - 40 Years | All | Aircraft Electric Wire and Assorted Connectors | $100.00 | $387.00 |
| Fluke | 87V | 3 - 8 Years | 2 | Fluke Vom5 6Leads & Attachments | $400.00 | $1,500.00 |
| MSC Industrial Supply Co. | 190-502 | 3 Years | 1 | 190-502 500 MHz Fluke Scope Meter Test Tool | $750.00 | $1,000.00 |
| Local Electric | Multiple | 1 - 12 Years | Multiple | Solder and Soldering Irons and Accessories | $1,500.00 | $6,199.95 |
| Zero Tools, Buy Heat Shrink.Com | hp-501-a & Adj. Temp | 19 Years | 2 | Heat Guns | $350.00 | $1,250.00 |
| Various | Multiple | 1-40 Years | Multiple | Drill Motors - Bits & Taps | $100.00 | $123.51 |
| Various | Multiple | 1-45 Years | Multiple | Machines Tooling & Measuring Devices | $500.00 | $2,200.00 |
| Various | Multiple | 1-10 Years | Multiple | Multiple Ladders & Scaffolding | $600.00 | $5,811.47 |
| Daves,western Flyer Sears | | 35 Years + | Multiple | Several Bicycles | $200.00 | $1,079.46 |
| General Shelters | Port A Cool | 1 Year | | Portable Water and Air Conditioner | $200.00 | $1,500.00 |
| Various | Mutiple | 1 - 13 Years | Multiple | Lubricants, Greases, Grease Guns, Paints and Glass Cleaners & Polishes | $800.00 | $1,596.00 |
| Wag Aero | J-100, J-105 | 3 - 7 Years | 4 | Aircraft Jacks, Aircraft Jacks- Piper & Beech | $400.00 | $2,000.00 |
| Multiple | Multiple | 1 - 6 Years | 5 | Battery Chargers | $800.00 | $1,216.50 |
| Aircraft Spruce | Multiple | New | Multiple | Complete Intake Assemblies & Elements & Champion Oil Filters | $200.00 | $1,787.45 |
| Draeper Corn | NDG-6 | 12 & 15 Years | 5 | Gas Tow Motors | | $688.25 |
| Northern Tool | IP-3060-2 | | 5 | Roll Around Work Tables | $1,600.00 | $3,190.00 |
| The Jack House Inc. | | | 2 | Tail Wing Jacks | $300.00 | $1,699.95 |
| Aviall | 270A | 10 Years | 12 | Lord Cowl Mounts 2 $15.91 Ea. | $2,000.00 | $2,000.00 |
| Yard Store.Com | P/N 120 | New | 2 | Rivet Gun & Regulator | $150.00 | $190.52 |
| Yard Store.Com | P/N121 | 6 Years | 2 | Rivet Set Max Straight | $384.95 | $384.95 |
| Yard Store.Com | P/N 181 | 5 Years | 1 | Rivet Set Max Angled | $29.95 | $29.95 |
| Yard Store.Com | 2470 | 6 Years | 1 | Rivet Set Swivel Flush | $29.95 | $29.95 |
| Yard Store.Com | SDT1 - 2K | 6 Years | 1 | Back Rivet Set | $18.95 | $18.95 |
| Yard Store.Com | SKT17 | 6 years | 1 | Rivet Squeezer | $21.95 | $21.95 |
| Yard Store.Com | P/N 1410 | 6years | 1 | Rivet Squeezer Set | $195.95 | $195.95 |
| Yard Store.Com | P/N1412 | 7 Years | 1 | Air Drill (2600 RPM) | $119.95 | $119.95 |
| Yard Store.Com | P/N 1AM1541 | 7 Years | 1 | Air Drill (3500RPM) | $289.95 | $289.95 |
| Yard Store.Com | P/N 1AM1551 | 7 Years | 1 | Air Drill 43 Degree | $319.95 | $319.95 |
| Yard Store.Com | P/N 4135/4135 | 7 Years | 1 | Air Drill 90 Degree | $553.95 | $553.95 |
| Yard Store.Com | P/N24605 | 7 Years | 1 | Sheet Metal Shrinker, Stretches Set | $571.95 | $571.95 |
| Yard Store.Com | ATS40A | 9 Years | 1 | Tap & Die Set | $382.95 | $382.95 |
| Yard Store.Com | C4522 | 10 Years | 1 | Screw Removal Tool | $139.95 | $139.95 |
| Yard Store.Com | P/N 131 | 10 Years | 4 | Flameless Heat Gun | $30.95 | $30.95 |
| Yard Store.Com | P/N24EL | 6 Years | 50 | Cleco Pliers | $89.95 | $89.95 |
| Yard Store.Com | 25CL-1/8 | 6 Years | 1 | Clecos $2.25 ea | $23.80 | $23.80 |
| Yard Store.Com | 25CL-3/16 | 6 Years | 1 | Clecos 25 pc's | $112.50 | $112.50 |
| Yard Store.Com | 25CL-332 | 6 Years | 1 | Clecos 25 pc's | $11.95 | $11.95 |
| Yard Store.Com | HNX-1/8 | 6 years | 50 | Clecos 25 pc's | $11.95 | $11.95 |
| Yard Store.Com | HNX -332 | 6 Years | 50 | Clecos HNX 1/8 | $11.95 | $11.95 |
| Yard Store.Com | KWN -1/8 | 8 Years | 50 | Clecos HNX 3/32 | $197.50 | $197.50 |
| Yard Store.Com | KWN -332 | 8 Years | 50 | Clecos KWN 1/8 | $197.50 | $197.50 |
| Yard Store.Com | LRJ3 | 8 Years | 50 | Clecos KWN 3/32 | $147.50 | $147.50 |
| Continental | 172 | 18 years | 1 | 4400 LB. Capacity Shop Hoist 4400 | $147.50 | $147.50 |
| Champion | M41N | 5 Years | 1 | Rt. Side Elevator | $2,000.00 | $3,727.00 |
| Continental Red Seat | SA-150 | New | 25 | Antique Spark Plugs 5 Boxes | $1,250.00 | $1,250.00 |
| Eisemann | Antique | New | 25 | Antique Spark Plugs 5 Boxes | $1,250.00 | $1,250.00 |
| Northern Tool | 3103K | Antique | 1 Set | Ignition Leads | $500.00 | $500.00 |
| Northern Tool | 301B | 30 Years | 1 | Surface Prep Grinder Kit | $100.00 | $100.00 |
| Northern Tool | WBA-1-36772W | 15 Years | 5 | Angle Die Grinder 1/4 " | $2,500.00 | $2,500.00 |
| Northern Tool | WW-284 | 15 Years | 3 | Workbench, Wood Top 72"W x36"D | $2,099.97 | $3,975.00 |
| Portable Partitions | Panels | 21 Years | 25 | Welded Steel Workbench 84" X 42" | $34.00 | $34.00 |
| Wal-Mart | Pump Up Sprayer | 1 Year | 2 | Hush Panel Configurable Cubicle Partition | $149.94 | $148.94 |
| Home Depot | 100' Water Hose | 5 Years | 3 | Pump Up Sprayer | $125.76 | $125.76 |
| Sears | Amflo | 6 Years | 4 | Industrial Pro 5/8" x 100' Water Hose / Amflow Blow Gun Siphon Sprayer | | |

| Vendor | Part No. | Age | Qty | Description | Price |
|---|---|---|---|---|---|
| Champion | 2612 | New- 3 Years | 5 | Thread Lubricant | $47.50 |
| Airwolf | W315F | 8 Years | 1 | Piper Air - oil Separator | $625.00 |
| LYC. | LW13743 | 5 Years | 1 | Oil Screen Conversion Kit | $719.95 |
| LYC. | M2121 | 4 - 10 Years | 1 | BDX S5-20/S-200 Ignition Harness | $529.00 |
| Ford | M1780 | 5 - 30 Years | 3 | CONT.C-75,C85,C90,O-200 Ignition Harnesses | $1,107.00 |
| Champion | Multiple | New | 12 | Ford Alternators | $950.00 |
| Aeroquip | C26 | New | 12 | Champion Spark Plugs | $600.00 |
| Grainger | Hydraulic | 9 Years | Multiple | Assorted Hydraulic Hoses & Fittings | $2,000.00 |
| Global Industrial Corp | 7426 | 3 - 14 Years | Multiple | Quartz Halogen Magnifier Light, Clamp On Base | $209.00 |
| Aircraft Spruce | Bayco | 5 Years | 1 | Portable Quartz Halogen Shop Work Lights | $406.75 |
| Aircraft Spruce | Cessna | 9 Years | 1 | Towbar - Cessna | $54.95 |
| Aircraft Spruce | | 3 Years | 1 | Ground Support Towbar | $87.50 |
| Aircraft Spruce | T-100 | 8 Years | 1 | Universal Towbar w/Ring Hitch | $237.95 |
| Aircraft Spruce | Redline | 19 Years | 1 | Redline BE-4 Towbar | $309.00 |
| Wag Aero | Piper | New | 1 | Universal Towbar | $159.95 |
| Wag Aero | Aeronca 7 AC | New | 1 | Tail Springs D-205-000 | $163.25 |
| Wag Aero | Aeronca 7AC | New | 1 | Replacement Windows | $690.00 |
| Wag Aero | Amers-Klng | New | Set | AK-451 | $668.00 |
| Aircraft Spruce | 1-912-100,1-912-200 | New | 1 | Engine Baffling Material | $79.90 |
| Wag Aero | 1-340-000 | New | 2 | Cessna Spinner W/ Back Plates | $199.50 |
| Wag Aero | P-N 68-50 | New | | Cleveland Wheel & Brake For Cessna 150 | $1,600.00 |
| Wag Aero | Multiple | New | 8 | Drum Style Brake Lining | $332.40 |
| Wag Aero | Multiple | Used | Multiple | Assorted Cleveland & Rapco Brake Linings | $2,197.00 |
| Wag Aero | | Used | 2 sets | Harness & Seat Belts | $345.00 |
| Wag Aero | | Used | 1 | Complete Engine Baffling For 1974 Cessna 150 | $120.00 $1,000.00 |
| Wag Aero | | 24 Years | | Exhaust System For Cessna 150 | $1,095.00 |
| Multiple | Multiple | 1 - 45 Years | Multiple | Mafie Fabric Tester | $299.50 |
| Multiple | Multiple | Used | Multiple | Safety Wire & Safety Wire Tools | $198.50 |
| Superior | Multiple | New | Multiple | Instrument Components | $2,841.15 |
| Jet | JWDS-14CSW | 1 - 30 Years | 1 | Engine O/H Gaskets And Seals | $3,500.00 |
| Sears | JDP-17-MFW | 1 - 30 Years | 1 | Jet Bend Saw | $1,690.50 |
| Singer | 10" | 35 Years | 1 | Jet Drill Press | $849.99 |
| Dewalt | 191-D | 9 Years | 1 | Sears Craftsman Table Saw | $1,499.00 |
| Whelen | 14" | 5 Years | 1 | Singer 191-D Straight Stitch Upholstery & Fabric Sewing Machine | $619.50 |
| Various | 20-4/5 in 1 | New & Used | 1 | Dewalt Chop Saw 14" | $637.00 |
| Various | Multiple | 1 - 38 Years | Multiple | Assorted New Lights, Bulbs, Beacons | $2,000.00 |
| Various | Multiple | 1 - 40 Years | Multiple | All Office Stationery & Printed Billing Forms & FAA Forms, Metal Desks, Rolodexes, Contact Info.Records | $2,000.00 |
| Airwolf | Multiple | 3 - 30 Years | 5 | All CFI Instruction Aids & Related Materials | $3,500.00 |
| Wag Aero | tool | New | 2 | Tool Boxes | $1,503.95 |
| Wag Aero | RV - 10 | New | 2 Pair | Kool Scoop Window Vents | $57.50 |
| Wag Aero | SAS-440 | New | 1 | Sun Visor | $792.00 |
| Wag Aero | Sig SPC02 | New | 1 | Panel Mount Intercom | $534.00 |
| Wag Aero | Multiple | Used | Multiple | Transcom II Portable | $187.00 |
| Tempest | Multiple | New & Used | Multiple | Multiple Aircraft Antennas | $33,600.00 |
| Aero Classics | Multiple | New & Used | Multiple | Facet Electric Fuel Pumps | $290.00 |
| Airwolf | Multiple | New | 2 | Tempest Remanufactured Fuel Pumps | $1,310.00 |
| Ez-Heat, Inc. | | New | | Aero Classics Oil Coolers | $1,000.00 |
| Wag Aero | Multiple | Used | 8 | Airwolf/Air Oil Separator- Piper | $625.00 |
| Wag Aero | Multiple | 1 - 22 Years | Multiple | Ez- Heat Engine Heater | $473.00 |
| Wag Aero | Multiple | 27 Years | 1 | Magneto Timing Tools | $253.00 |
| Wag Aero | Multiple | New | Multiple | Differential Cylinder Tester W/ Hose | $115.00 |
| Wag Aero | AT1 8701 | New | 4 | Lord Engine Mount Rubbers | $660.00 |
| Rapco | ATS 212FB | 11 Years | 1 | Saf -T - Stop Steel Rail Stop | $404.25 |
| Rapco | RA718 | 8 Years | 1 | Flaring Tool | $68.85 |
| Wag Aero | RA BRT | 1 - 16 Years | 5 | Vacuum Pump Wrench | $22.95 |
| Aircraft Spruce | Bag 7 Years | 2 Years | | Brake Rivet Tool | $140.00 |
| Piper | Grommets | New | Multiple | Bag Jack Pad | $189.90 |
| | PA-24-250 | Used | 2 | Instrument Pannel Grommets & Regular Misc. Size Hole Grommets | $150.00 |
| | | | | Pilot & Co-Pilot Seats | $2,300.00 |

# EXHIBIT "C"

| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

## DEFENDANT SIDNEY B. HALE, JR.'S ORIGINAL COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Sidney B. Hale, Jr. ("Mr. Hale" and/or "Defendant" and/or "Counterplaintiff") and files this his Original Counterclaim against the City of Bonham, Texas (the "City" and/or "Plaintiff" and/or "Counterdefendant"), and in support thereof, would respectfully show this Court the following:

### I.    LEVEL TWO CASE

Mr. Hale requests that this case be designated as a Level Two case for discovery purposes pursuant to Tex. R. Civ. P. 190 *et. seq.*

### II.    PARTIES

Defendant/Counterplaintiff is an individual residing in Fannin County, Texas.

Plaintiff/Counterdefendant is located in Fannin County, Texas and is duly organized and acting under the laws of the State of Texas. Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving Counterdefendant's attorney of record, Mr. John Reenan, Helmes & Greene, LLC, 1700 Pacific Ave., Suite 3740, Dallas, Texas 75201.

1

### III.  JURISDICTION

This Court has jurisdiction over this matter pursuant to Sections 101.001 *et. seq.* of the Texas Civil Practice and Remedies Code because the Texas Legislature waived Counterdefendant's sovereign immunity for claims involving negligence and premises defects.

The City is a governmental unit and owner of the premises. The condition of the roof of the Hanger constitutes a premises defect. More specifically, the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use and posed an unreasonable risk of harm. The City knew or should have known of the danger.

The City owed Mr. Hale the duty owed to an invitee under Texas law. The City breached the duty owed to Mr. Hale by not adequately warning Mr. Hale of the condition and not making the condition reasonably safe. The City's breach proximately caused Mr. Hale's injuries. If it were a private person, the City, would be liable under Texas law.

No exception to the wavier of immunity bars the claim because no exception applies or an exception to an exception reinstates the wavier. Notice was provided as required by the Texas Tort Claims Act.

### IV.  VENUE

Venue is appropriate in Fannin County, Texas because the property which is the subject of the present suit is located in Fannin County, Texas and all, or substantially all, of the events giving rise to this litigation occurred in Fannin County, Texas.

### V.  NOTICE

Plaintiff/Counterdefendant was provided with notice of the claim in accordance with Tex. Civ. Prac. & Rem. Code §101.101, and/or received actual notice of the claim prior to this

2

litigation.

## VI. BACKGROUND FACTS

Plaintiff/Counterdefendant is the owner of a hangar on the grounds of the City of Bonham Airport (the "Hangar"). On or about June 18, 1984, Mr. Hale entered into a lease agreement with the City for the Hangar (the "Lease"). The Lease, by its own terms, expired after five years.

On or about December 8, 2013, the Hangar roof collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The Hangar was used to conduct Mr. Hale's aircraft repair and maintenance business and to store multiple aircraft.

Prior to the Incident, Mr. Hale informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the Hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the Hangar collapsed. Such action represents and assumption of complete command and control over the premises. The City's failure to reasonably protect the Hangar from further collapse caused the damages incurred by Mr. Hale, at least in part.

Additionally, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to his personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not

3

been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

## VII.   CAUSES OF ACTION

Defendants' acts and omissions have given rise to the following:

### Negligence

Mr. Hale will show that the foregoing constitutes negligence as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

As owner of the Hangar, the City owed a duty of reasonable care to Mr. Hale. The City had a duty to maintain the premises in a reasonably safe and habitable condition. The City breached its duties to Mr. Hale. As a result of the City's breach, Mr. Hale incurred damages.

### Premises Defect

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes a premises defect as that term is used and understood by the Courts of this State.

The City is a governmental unit and owner of the premises. The condition of the roof of the Hanger constitutes a premises defect. More specifically, the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been

4

inspected in decades, making the hangar unsafe for occupancy and/or use and posed an unreasonable risk of harm. The City knew or should have known of the danger.

The City owed Mr. Hale the duty owed to an invitee under Texas law. The City breached the duty owed to Mr. Hale by not adequately warning Mr. Hale of the condition and not making the condition reasonably safe. The City's breach proximately caused Mr. Hale's injuries. If it were a private person, the City, would be liable under Texas law.

No exception to the wavier of immunity bars the claim because no exception applies or an exception to an exception reinstates the wavier. Notice was provided as required by the Texas Tort Claims Act.

### Breach of Contract/Promissory Estoppel

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, to the extent the Court determines there is a valid and enforceable contract between the parties, the foregoing constitutes breach of contract and promissory estoppel as those terms are used and understood by the Courts of this State. In pertinent part, the City claims a lease agreement between the parties for lease of the Hangar.

The City breached the contract(s) described in the preceding paragraph when the City defaulted under the terms of the Agreement and refused to keep the Hangar in a safe condition. Mr. Hale substantially relied upon the promises made by the City to their detriment, which reliance was foreseeable by the City, which represents an action under the theory of promissory estoppel as well. Upon information and belief, the City had no intention of performing under the terms of the agreement at the time the City entered into the contract with Mr. Hale. Consequently, the City should be held liable for its breach of the contract(s).

5

As a result of the City's breach of contract/promissory estoppel, Mr. Hale has suffered damages within the jurisdictional limits of this Court. Additionally, pursuant to Tex. Civ. Prac. & Rem. Code §38.001 *et. seq.*, Mr. Hale requests that this Court, upon trial of this matter, award it the reasonable and necessary attorneys' fees, legal expenses, and costs of court incurred in seeking the recovery for the City's breach of contract.

### Damages Based Upon Unjust Enrichment

In addition to, and without prejudice to the foregoing, Mr. Hale seeks recovery of its damages pursuant to the theory of unjust enrichment. The preceding is incorporated by reference as if fully copied and set forth at length.

The City agreed to provide a reasonably safe and habitable hangar space to Mr. Hale in exchange for monthly lease payments.

Although the City refused to maintain the premises in a safe and habitable condition, the City continued to avail itself of all of the services, benefits and privileges provided by Mr. Hale. The City has been, and continues to be, unjustly enriched unless the Court requires it to pay for such use and benefits.

Mr. Hale hereby seeks recovery of the reasonable value of the services, benefits and privileges by which the City has been unjustly enriched at least in an amount equal to the damages incurred by Mr. Hale. Mr. Hale additionally seeks recovery of all of its attorneys' fees and legal expenses incurred to recover the value of such services, benefits and privileges by which the City has been unjustly enriched, pursuant to the provisions of Texas Civil Practice and Remedies Code §38.001, et seq.

The events leading up to and amounting to such unjust enrichment are proximately responsible for the damages sustained by Mr. Hale in this matter.

6

## Violations of the Texas Deceptive Trade Practices Act

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes violation of the Texas Deceptive Trade Practices Act (the "DTPA").

The City violated the DTPA when it engaged in false, misleading, or deceptive acts or practices that Mr. Hale relied on to his detriment. Specifically, the City failed to keep the Hanger in which Mr. Hale operated his business reasonably safe and habitability. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use. The City further breached an express and/or implied warranty that the premises would be reasonably safe and fit for occupancy.

The City further violated the DTPA when it engaged in an unconscionable action or course of action that, to Mr. Hale's detriment, took advantage of Mr. Hale's lack of knowledge, ability, expertise, or capacity to a grossly unfair degree. Specifically, the City failed to maintain the premises in a reasonably safe condition. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use.

The City's wrongful conduct was a producing cause of Mr. Hale's damages.

Mr. Hale would also show that the City acted "intentionally" and "knowingly" as those terms are defined in the DTPA. Mr. Hale would show that the City committed unconscionable actions "intentionally" and "knowingly." Mr. Hale seeks recovery of actual damages, economic damages, statutory damages, mental anguish, treble damages, and attorneys' fees for the City's violations of the DTPA.

As a direct and proximate result of these actions, the City has violated the provisions of the Texas Deceptive Trade Practices Act and Mr. Hale has been damaged in the manner and

7

amount as described above.

## Gross Negligence

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes gross negligence as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

As owner of the Hangar, the City owed a duty of reasonable care to Mr. Hale. The City had a duty to maintain the premises in a reasonably safe and habitable condition. The City breached its duties to Mr. Hale. As a result of the City's breach, Mr. Hale incurred damages.

The City failed to keep the Hanger in which Mr. Hale operated his business reasonably safe and habitability. The condition of the Hangar posed an unreasonable risk of harm to its occupants, making the hangar unsafe for occupancy and/or use. The City's negligence posed an extreme degree of risk and potential harm to others resulting in the likelihood of serious injury to any occupants of the Hangar. The City acted with conscious indifference to the rights, safety or welfare of others.

The wrongful conduct and gross negligence of the City proximately caused the damages incurred by Mr. Hale.

## Bailment

The preceding is incorporated by reference as if fully copied and set forth at length. In addition to, and without prejudice to any other cause of action described herein, the foregoing constitutes bailment as that term is used and understood by the Courts of this State. The preceding is incorporated by reference the same as if fully copied and set forth at length.

Upon notice of the deteriorating condition of the hangar, the City instructed Mr. Hale to

8

immediately vacate the premises and to stay out of the Hangar. Such action represents and assumption of complete command and control over the premises, as well as delivery and acceptance of the personal property within the hangar. Mr. Hale vacated the premises as demanded by the City with the understanding that the structure would be repaired and then returned to the control of t Mr. Hale, with all of its contents intact.

The City exercised control and dominion over the Hanger and its contents, yet failed to return the property, in an undamaged condition, to Mr. Hale. Indeed, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to their personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

The events leading up to and amounting to such bailment are proximately responsible for the damages sustained by Mr. Hale in this matter.

## VIII.  CONDITIONS PRECEDENT

All conditions precedent have been performed or have occurred prior to Mr. Hale bringing suit as required by the Tex. Civ. Prac. & Rem. Code.

## IX.   ATTORNEYS' FEES

The preceding is incorporated by reference as if fully copied and set forth at length. As a result of the events giving rise to this complaint, Mr. Hale has been required to retain the services of counsel to prosecute this action. Mr. Hale additionally sues for reasonable attorneys' fees and legal expenses for the prosecution of this action to judgment and for any appeal therefrom.

## X.    AMEND PLEADINGS

Mr. Hale reserves the right to amend these pleadings.

9

## XI.    DEMAND FOR JURY TRIAL

Mr. Hale hereby makes demand for jury trial, as is his right under the Constitution and laws of the State of Texas, and in accordance with Tex. R. Civ. P. 216(a), and tenders the required jury fee concurrently herewith.

## XII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant/Counterplaintiff, Sidney B. Hale, Jr. respectfully requests that Plaintiff/Counterdefendant, the City of Bonham, Texas, be cited to appear and answer and that, on final trial, Mr. Hale have the following:

1.    Judgment against Plaintiff/Counterdefendant for damages in an amount within the jurisdictional limits of this Court, jointly and severally;

2.    Judgment against Plaintiff/Counterdefendant in an amount within the jurisdictional limits of this Court as special damages, jointly and severally;

3.    Judgment against Plaintiff/Counterdefendant for exemplary and enhanced damages to the maximum extent permitted by law, jointly and severally;

4.    Prejudgment interest as provided by law, jointly and severally;

5.    Post judgment interest as provided by law, jointly and severally;

6.    Costs of suit, jointly and severally;

7.    Attorneys' fees and legal expenses to the maximum extent permitted by law, jointly and severally; and

8.    All such other and further relief, general or special, at law or in equity, to which Mr. Hale may be justly entitled.

10

Respectfully submitted,

COATS & EVANS, P.C.

*/s/ Gary L. Evans*

Gary Linn Evans
Texas Bar No. 00795338
Email: evans@texasaviationlaw.com
George Andrew Coats
Texas Bar No. 00783846
Email: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone: 281-367-7732
Facsimile: 281-367-8003

**ATTORNEYS FOR DEFENDANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 12th day of November, 2014.

*/s/ Gary L. Evans*

Gary L. Evans

Mr. John Reenan
jreenan@helmsgreene.com
Mr. Christopher S. Kilgore
ckilgore@helmsgreene.com
HELMS & GREENE, LLC
1700 Pacific Ave., Suite 3740
Dallas, Texas 75201
Telephone: 214-466-7910
Facsimile: 214-466-7915

*Via Electronic Filing and/or
Facsimile No. 214-466-7915*

11

# APPENDIX
# A13

CAUSE NO. CV-14-41722

| | | |
|---|---|---|
| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

**DEFENDANT SIDNEY B. HALE, JR.'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Sidney B. Hale, Jr. ("Mr. Hale" and/or "Defendant") and files this his Response to Plaintiff City of Bonham's (the "City" and/or "Plaintiff") Partial Motion for Summary Judgment, and in support thereof, would respectfully show this Court the following:

**I.**
**BACKGROUND FACTS**

Plaintiff is the owner of a hangar on the grounds of the City of Bonham Airport (the "Hangar"). On or about June 18, 1984, Mr. Hale entered into a lease agreement with the City for the Hangar (the "Lease"). The Lease, by its own terms, expired after five years.

On or about December 8, 2013, the Hangar roof collapsed, causing extensive damages to the hangar and the property contained therein (the "Incident"). The Hangar was used to conduct Mr. Hale's aircraft repair and maintenance business and to store multiple aircraft.

Prior to the Incident, Mr. Hale informed the City of the observed and deteriorating condition of the hangar. The City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the

1

Hangar.[1] There was a significant likelihood that had the center section of the structure been supplementally supported at that time, the Hangar would not have collapsed. Indeed, it was not until several hours later, after the City's failure to act that the Hangar collapsed. Such action represents an assumption of complete command and control over the premises, to the complete and total exclusion of all other persons and entities. The City's failure to reasonably protect the Hangar from further collapse caused the damages incurred by Mr. Hale, at least in part.

Additionally, the City barred Mr. Hale from the property, which was saturated with ice and water, for many weeks, during which all sorts of damage was done to his personal property, including sensitive aviation tools, parts, gauges, servicing equipment, inventory, and tooling.

Following the Incident, an examination of the debris revealed that the apex bolts that held the top seam of the roof together were extensively corroded, undersized, and apparently had not been inspected in decades, making the hangar unsafe for occupancy and/or use. This presented an unreasonably dangerous condition which posed an unreasonable risk of harm to Mr. Hale. The City was aware of this condition, yet did nothing to make the premises safe. Further discovery will be required to more fully determine what other and further duties the City breached in connection with the Hangar, including any inspections that might be required under the City's statutes.

**II.**
**ARGUMENT AND AUTHORITIES**

The Motion for Summary Judgment filed by the City is essentially a plea to the jurisdiction, claiming that Defendant's claims are barred by sovereign immunity. Indeed, a plea to the jurisdiction is the proper vehicle by which a party contests a trial court's authority to determine the subject matter of a cause of action. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex.

---

[1] There are no disagreements or fact issues regarding Mr. Ford's conduct, which is uncontroverted.

2009); *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). A governmental unit may properly challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction since absent the state's consent to suit a trial court has no subject matter jurisdiction. *Tex. Dep't. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

A trial court must not weigh the merits of the case, but instead consider only the pleadings and evidence pertinent to the jurisdictional question. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3df 547, 554 (Tex. 2000). In doing so, the trial court must construe the pleadings liberally in favor of jurisdiction, *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex. 1989), and must take all factual allegations plead as true, unless the governmental unit pleads and proves that the allegations were fraudulently made in order to confer jurisdiction. *Cont. Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996). If a party pleads facts that affirmatively demonstrate an absence of jurisdiction and such defect is incurable, immediate dismissal of the case is proper. *Peek*, 779 S.W.2d at 804-805. However, if the pleadings are insufficient to demonstrate the court's jurisdiction, but do not affirmatively show incurable defects in jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend before dismissing. *Id*.

1. **The City is not Immune From Claims Arising out of its Proprietary Functions.**

The City of Bonham is a home rule municipal corporation. As such it has broad powers of self-government. *City of Corpus Christi v. Continental Bus Systems, Inc.*, 445 S.W.2d 12, 16 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.). Municipal corporations exercise their broad powers through two different roles; proprietary and governmental. The governmental functions of a municipal corporation have been defined as those acts which are public in nature and performed by the municipality "as the agent of the State in furtherance of general law for the

interest of the public at large." *City of Crystal City v. Crystal City Country Club*, 486 S.W.2d 887, 889 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.). Proprietary functions are those functions performed by a city, in its discretion, primarily for the benefit of those within the corporate limit of the municipality. *Id*.

Under Texas common law, determining whether a city is performed a proprietary or governmental function has generally been evaluated by examining whether the act performed by the city as the agent of the State in furtherance of general law for the interest of the public at large, or whether it is performed by the city, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for the use by the general public. *See Gladewater*, 727 S.W.2d at 519; *Bailey v. City of Austin*, 972 S.W.2d 180, 192-93 (Tex. App.—Austin 1998, pet. denied). The key difference between a proprietary and governmental function is that the city functions in its governmental capacity when it performs functions mandated by the State. *Truong v. City of Houston*, 99 S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Here, the City voluntarily engaged in the business of owning and leasing real estate in and around the Airport. This "real estate" aspect of the City is not a necessary component to the operation of the Airport and is not a function mandated by the State, and thus, is a proprietary function.

Unlike governmental functions, for which municipal corporations have traditionally been afforded some degree of governmental immunity, proprietary functions have subjected municipal corporations to the same duties and liabilities as those incurred by private persons and corporations. *See Turvey v. City of Houston*, 602 S.W.2d 517 (Tex. 1980). While the doctrine of governmental immunity protects municipalities from being sued for matters arising from the performance of their governmental functions, no such protection exists for municipalities

4

performing their proprietary functions. *City of Texarkana v. City of New Boston*, 141 S.W.3d 778, 783 (Tex. App.—Texarkana 2004, pet. denied). Indeed, contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals. *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986). Consequently, in the present case, because the City was engaged in a proprietary function in the ownership and leasing of real estate, governmental immunity does not apply to Defendant's claims for breach of contract and bailment.

## 2. No Waiver of Immunity is Necessary when No Immunity Exists

When the City entered into the lease agreement with Mr. Hale, the City was engaged in a proprietary function, and thus no immunity against Defendant's claims exists. In 2005, the Legislature enacted Subchapter I of Chapter 271 of the Texas Local Government Code "to loosen the immunity bar" by waiving immunity to suit for certain claims arising under written contracts with governmental entities. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 326 (Tex. 2006). Indeed, Section 271.152's waiver of immunity was intended to broaden, not narrow, the scope of contract claims that could be filed against cities. The statutory waiver scheme is inapplicable in contract cases in which no immunity exists in the first place, i.e., when a city engages in a proprietary function. In the present case, the City was engaged in a proprietary function in the ownership and leasing of real estate, and thus, governmental immunity does not apply. Moreover, it was not necessary for the Legislature to provide a waiver of immunity for contract and/or quasi-contractual claims where the governmental unit is acting in a proprietary capacity, because there was no immunity to waive. Because the City was engaged in proprietary

5

functions, i.e. the ownership and leasing of real estate, there is no governmental immunity applicable to Mr. Hale's breach of contract and bailment claims.

When Mr. Hale informed the City of the unreasonable unsafe condition of the hangar, the City, specifically Mr. Ronnie Ford, on behalf of the City, unequivocally instructed Mr. Hale to immediately vacate the premises and to stay out of the Hangar. Not only did the City prevent Mr. Hale from taking any action to protect his property from the unreasonable risk of harm posed by the deteriorated roof, the City did absolutely nothing to reduce or eliminate the risk of harm to Mr. Hale. The City assumed complete command and control over the property when they ejected Mr. Hale and all other occupants from the property. The City then barred Mr. Hale from re-entering the property for weeks, allowing all sorts of aircraft grade equipment and tools to be exposed to the elements, either damaging it or losing it completely.

To allow the City to avoid liability for the egregious conduct demonstrated in the present case goes against the spirit and intent of the doctrine of immunity. A City should not be allowed to voluntarily take on proprietary functions, operate with conscious indifference to the rights, safety, or welfare of others, then escape all responsibility and liability due to its tenants (and the public) under the guise of immunity. Indeed, the doctrine of governmental immunity does not give the City, or any other governmental unit, a "free pass" to ignore its duties and obligations under the law and escape all responsibility for its actions. Consequently, the City's Motion for Summary Judgment should be in all respects denied.

## IV.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, Sidney B. Hale, Jr. respectfully requests that Plaintiff, the City of Bonham's Motion for Summary Judgment be in all respects

6

denied. Defendant further requests all such other and further relief, general or special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

**COATS & EVANS, P.C.**

*/s/* ***Gary L. Evans***

Gary Linn Evans
Texas Bar No. 00795338
Email: evans@texasaviationlaw.com
George Andrew Coats
Texas Bar No. 00783846
Email: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone: 281-367-7732
Facsimile: 281-367-8003

**ATTORNEYS FOR DEFENDANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 5th day of February, 2015.

*/s/* ***Gary L. Evans***

Gary L. Evans

Mr. Christopher S. Kilgore
Dottie Sheffield
**HELMS & KILGORE, PLLC**
2201 Main Street, Suite 212
Dallas, Texas 75201
Telephone: 972-532-6484
Facsimile: 972-532-6496

*Via Electronic Filing and/or*
*Facsimile No. 972-532-6496*

7

**ATTORNEYS FOR PLAINTIFF**
**CITY OF BONHAM**

# APPENDIX
# A14

CAUSE NO. CV-14-41722

| | | |
|---|---|---|
| **CITY OF BONHAM,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **FANNIN COUNTY** |
| | § | |
| **SIDNEY B. HALE, JR.** | § | |
| | § | |
| **Defendant.** | § | **336ᵀᴴ JUDICIAL DISTRICT** |

**PLAINTIFF CITY OF BONHAM'S**
**REPLY TO DEFENDANT SIDNEY B. HALE'S RESPONSE**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff, City of Bonham ("City of Bonham"), files this its Reply to Defendant, Sidney

B. Hale, Jr.'s ("Mr. Hale" or "Sidney Hale" or "Defendant"), Response to the City of

Bonham's Motion for Summary Judgment. The City of Bonham would show the Court the

following:

**I.**
**BACKGROUND FACTS DISPUTED**

The facts, as represented by Defendant Sidney Hale, are contrary to the City of Bonham's

assertions and are controverted. However, those facts are germane to the instant issue. The City

of Bonham would note an omission in the background facts that is important for context. After

the ice storm hit on December 8, 2013, causing the roof of the hangar Mr. Hale was leasing to

collapse, the City immediately provided Mr. Hale with another hangar, for which he received

rent free for three months. Mr. Hale continues to lease hangar #404 from the City in which he

conducts his aircraft repair and maintenance business.

## II.
## REPLY ARGUMENTS

### 1. THE SUPREME COURT HAS NEVER HELD THAT THE PROPRIETARY/GOVERNMENTAL DISTINCTION APPLIES TO IMMUNITY FROM SUIT FOR BREACH OF CONTRACT CLAIMS

Mr. Hale contends that the City's actions in this matter were proprietary in nature and, therefore, immunity was waived. Mr. Hale alleges that the City of Bonham's act of leasing real estate is not a necessary component to the operation of the Airport and is not a function mandated by the State and, thus, is a proprietary function.

Mr. Hale's argument is misplaced for two reasons: first, this Court has already found that the City's activity in question is, in fact, a governmental function and not a propriety function; and second, Defendant's argument is simply legally incorrect.

The proprietary-governmental dichotomy has been used to determine a municipality's immunity from suit for tortious conduct. *Tooke v. City of Mexia*, 197 S.W.3d, 325, 343 (Tex. 2006). However, the Texas Supreme Court *has never held* that the same distinction determines whether immunity from suit is waived for breach of contract claims. *Tooke* at 343. The Texas Supreme Court has consistently deferred to the Legislature because doing so allows the Legislature to protect the complex policymaking function surrounding suits against governmental entities. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The Texas Legislature adopted Section 271.152 of the Local Government Code to deal with the waiver of governmental immunity in the context of a breach of contract claim. See TEX. LOCAL GOV'T CODE ANN §271.152 (West 2005). The Supreme Court has specifically held that "legislature control over sovereign immunity allows the Legislature to respond to changing

Page 2

PLAINTIFF CITY OF BONHAM'S
REPLY TO DEFENDANT SIDNEY B. HALE'S RESPONSE
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

conditions and revise existing agreements if doing so would benefit the public." *Tooke* at 332 (quoting *IT-Davy*, 74 S.W.3d at 854).

## 2. DEFENDANT'S ARGUMENT IS NO LONGER VALID

In arguing for the application of proprietary/governmental dichotomy in the context of a breach of contract claim, Mr. Hale argues that a municipality is not immune from claims arising out of its proprietary acts because under common law, when a municipality engages in a proprietary function, it is subject to the same rules as contracts between individuals. Mr. Hale relies on *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986) for the carte blanche proposition that governmental immunity does not apply to the City when it engaged in a proprietary function.

However, the common law principle Mr. Hale relies upon pre-dates the adoption of both the Texas Tort Claims Act and the 2005 legislature enactment of Section 271.152 of the Local Government Code, which unambiguously waives immunity for certain contractual claims against governmental entities. See TEX. LOCAL GOV'T CODE ANN §271.152 (West 2005) and TEX. CIV. PRAC. & REM. CODE ANN. § §101.021-029 (West 2011). In the *City of San Antonio ex. Rel. City Pub. Serv. Bd. v. Wheelabrator Air Pollution Control, Inc.*, 381 S.W.3d 597 (Tex. App.—San Antonio 2012, pet. denied), the court held that the Legislature's failure to include the proprietary/governmental dichotomy to contracts in Section 271.152 of the Texas Local Government Code meant the dichotomy did not apply, thereby holding the City of San Antonio was immune from suit on Wheelabrator's quasi-contractual claim. The court held that, unlike the Texas Tort Claims Act which specifically incorporates the dichotomy into its framework, Chapter 271 does not. The court observed that the Legislature "easily could have included the

Page 3

proprietary/governmental dichotomy it used in the tort-claims context in the contract-claims scheme, but chose not to do so." *Wheelabrator*, 381 S.W.3d at 605.

Mr. Hale relies on *Gates v. City of Dallas* for the carte blanche proposition that governmental immunity does not apply to the City when it engaged in a proprietary function. However, *Gates* predates both the Supreme Court opinion in *Tooke v. City of Mexia* and Section 271.152. The Supreme Court clarified in *Tooke* that it has never held the proprietary/governmental dichotomy to be determinative of immunity from suit in contractual claims. *Tooke* at 343. While *Tooke* did not detail the reasons for its dissociation from *Gates*, it is clear that the Texas Supreme Court did not endorse application of the proprietary/governmental dichotomy as the first step in determining a municipality's entitlement to immunity from contract-based claims.

### III.
### CONCLUSION

In conclusion, if the Legislature intended to have the proprietary/governmental dichotomy continue to be the first step in determining a municipality's entitlement to immunity to suit, thereby destroying immunity in the context of proprietary functions, it could have incorporated the dichotomy into Chapter 271. Because it did not, it is clear the Legislature did not intend to eradicate governmental immunity from suit for contract-based claims stemming from proprietary acts. *Wheelabrator* at 599. The Legislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Texas Mutual Insurance Co. v. Ruttiger*, 381 S.W.3d 430, 451 (Tex.2012).

PLAINTIFF CITY OF BONHAM'S
REPLY TO DEFENDANT SIDNEY B. HALE'S RESPONSE
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## IV.
## PRAYER

Based on the foregoing reasons and the reasons set forth in the City of Bonham's Motion for Summary Judgment, the City requests the Court to grant it a take nothing final summary judgment on Mr. Hale's counter-claims against the City for breach of contract, violations of the Deceptive Trade Practices Act, bailment, and unjust enrichment as those counter-claims are precluded by governmental immunity and award it with and such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

**HELMS & KILGORE, P. L.L.C.**

_____
CHRIS KILGORE
State Bar No. 11398350
DOTTIE SHEFFIELD
State Bar No. 24051326
2201 Main Street, Suite 212
Dallas, Texas 75201
(972) 532-6484
(972) 532-6496 (facsimile)
**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT**

## Certificate of Service

In keeping with Rule 21a of the Texas Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument has been served upon the following counsel of record:

Gary Linn Evans
George Andrew Coats
Coats & Evans, P.C.
P.O. Box 130246
The Woodlands, Texas 77393-0246
Facsimile: 281-367-8003

Via:
_____ CMRRR
___✓___ Facsimile
_____ Federal Express
_____ Courier
_____ Hand Delivery (In Person)
_____ Regular U.S. Mail

DATED:      February  9 , 2015.

_____
DOTTIE SHEFFIELD

PLAINTIFF CITY OF BONHAM'S
REPLY TO DEFENDANT SIDNEY B. HALE'S RESPONSE
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# APPENDIX
# A15

CAUSE NO. CV-14-41722

| CITY OF BONHAM | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | FANNIN COUNTY, TEXAS |
| | § | |
| SIDNEY B. HALE, JR. | § | |
| | § | |
| Defendant. | § | 336TH JUDICIAL DISTRICT |

**DEFENDANT SIDNEY B. HALE, JR.'S SURREPLY TO PLAINTIFF'S REPLY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Sidney B. Hale, Jr. ("Mr. Hale" and/or "Defendant") and files this his Response to Plaintiff City of Bonham's (the "City" and/or "Plaintiff") Partial Motion for Summary Judgment, and in support thereof, would respectfully show this Court the following:

**I.**

The Texas Supreme Court in *Tooke v. City of Mexia*, did recognize that a municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its government functions. 197 S.W.3d 325, 343 (Tex. 2006). Additionally, while the Court indicated that they have not held that the same distinction determines whether immunity was waived in suits involving breach of contract claims, the Court also did not indicate that the distinction ***does not*** apply. *Id*. Rather, the Court determined that it was not necessary to make that determination based on the facts presented in *Tooke*. Indeed, the Court held that, "even if the City were not immune from suit for breach of a contract whose subject lies within its proprietary functions, the Tookes' contract does not qualify." *Id*. at 344. This leaves the door open for the Court to make that determination at a later date.

1

The Texas Tort Claims Act was enacted in 1985, well before the decision was entered in *Tooke*. Since the enactment of Section 271.152 of the Local Government Code in 2005, the Supreme Court has not yet revisited whether or not the proprietary-governmental dichotomy applicable in tort cases is also applicable in breach of contract cases. While the Fourth Court of Appeals in San Antonio has held that this distinction does not apply in contract cases, the decisions of that Court are not binding on the present court. Absent a decision to the contrary by the Texas Supreme Court, there is no authority mandating that this Court find that the proprietary-governmental function distinction does not apply in the present case. Indeed, the Gates case, whereby the Texas Supreme Court recognized that contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals, *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986), has not been overturned and still constitutes good law.

Consequently, because the City was engaged in a proprietary function in the ownership and leasing of real estate, governmental immunity does not apply to Defendant's claims for breach of contract and bailment. Thus, Plaintiff's motion for summary judgment should be denied.

## II.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, Sidney B. Hale, Jr. respectfully requests that Plaintiff, the City of Bonham's Motion for Summary Judgment be in all respects denied. Defendant further requests all such other and further relief, general or special, at law or in equity, to which he may be justly entitled.

2

Respectfully submitted,

**COATS & EVANS, P.C.**

**/s/ *Gary L. Evans***

Gary Linn Evans
Texas Bar No. 00795338
Email: evans@texasaviationlaw.com
George Andrew Coats
Texas Bar No. 00783846
Email: coats@texasaviationlaw.com
P.O. Box 130246
The Woodlands, TX 77393-0246
Telephone:  281-367-7732
Facsimile:  281-367-8003

**ATTORNEYS FOR DEFENDANT
SIDNEY B. HALE, JR.**

## CERTIFICATE OF SERVICE

I certify that pursuant to Rule 21a of the Texas Rules of Civil Procedure a true and correct copy of the foregoing instrument has been delivered to all counsel of record on the 11th day of February, 2015.

**/s/ *Gary L. Evans***

Gary L. Evans

Mr. Christopher S. Kilgore
Dottie Sheffield
**HELMS & KILGORE, PLLC**
2201 Main Street, Suite 212
Dallas, Texas 75201
Telephone: 972-532-6484
Facsimile: 972-532-6496

*Via Electronic Filing and/or*
*Facsimile No. 972-532-6496*

**ATTORNEYS FOR PLAINTIFF
CITY OF BONHAM**

3